Jorge Gonzalez SBN 100799
A Professional Corporation
2485 Huntington Dr., Ste. 238
San Marino, CA 91108-2622
t. 626-328-3081
e. jgonzalezlawoffice@gmail.com

Paul Hoffman SBN 71244
Michael D. Seplow SBN 150183
Aidan C. McGlaze SBN 277270
Kristina A. Harootun SBN 308718
John Washington SBN 315991
Schonbrun Seplow Harris,
Hoffman & Zeldes LLP
11543 W. Olympic Blvd.
Los Angeles, California 90064
t. 310-396-0731; f. 310 399-7040
e. hoffpaul@aol.com
e. mseplow@sshhzlaw.com
e. amcglaze@sshhzlaw.com
e. kharootun@sshhzlaw.com
e. jwashington@sshhlaw.com

Carolyn Y. Park SBN 229754
Law Office Of Carolyn Park
595 Lincoln Ave., Suite 200
Pasadena, CA 91103
t. 213-290-0055
e. carolynyoungpark@gmail.com

Arnoldo Casillas SBN 158519
Denisse O. Gastélum SBN 282771
Casillas & Associates
3777 Long Beach Blvd., 3rd Flo,
Long Beach, CA 90807
t. 323-725-0350
e. acasillas@casillaslegal.com
e. dgastelum@casillaslegal.com

Morgan E. Ricketts SBN 268892
Ricketts Law
540 El Dorado Street, Ste. 202
Pasadena, CA 91101
t. 213-995-3935
e. morgan@morganricketts.com

*Attorneys for Plaintiffs.*

## United States District Court

### Central District of California – Western Division

| | |
|---|---|
| KRIZIA BERG, GRACE BRYANT, JAMES BUTLER, NOELANI DEL ROSARIO-SABET, LINDA JIANG, SEBASTIAN MILITANTE, CHRISTIAN MONROE, MATTHEW NIELSEN, EMANUEL PADILLA, SHAKEER RAHMAN, AUSTIN THARPE, TRAVIS WELLS, DEVON YOUNG, individually and on behalf others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, a municipal entity, SHERIFF ALEX VILLANUEVA, and Does 1-10 inclusive,<br><br>Defendants. | Case No.: 2:20-cv-07870-DMG-PD<br>*Assigned to: Honorable Dolly M. Gee*<br><br>**DECLARATION OF CHAD LODER IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

**DECLARATION OF CHAD LODER**

I, CHAD LODER, hereby declare and say as follows:

1. I am over the age of 18 and a resident of the State of California. This declaration is based on facts of which I have personal knowledge. If called to testify to these facts, I could and would do so competently.

2. I reside in Redondo Beach, CA. and I am a 43-year-old, white male, employed in the tech industry. I have been a volunteer and mutual aid organizer in humanitarian crises over the past several years, for example, responding to the hurricanes in Puerto Rico to provide emergency food, water, and sanitation supplies for the island. In the beginning stages of the COVID-19 pandemic, I realized that there would be a shortage of PPE (personal protective equipment) for first line medical responders, so I co-founded a group a group called Masks For Docs. Masks For Docs has provided over 100,000 masks and other PPE to medical workers, first responders, and essential workers worldwide. Masks For Docs has been featured in the Los Angeles Times, KTLA, FOX News, VICE, and others. More recently, our group set up a truck-portable cooling center to help LA's homeless population during the heatwave. I volunteer weekly to provide hygiene kits, food, water, and clothing for homeless people in Los Angeles.

3. On September 7, 2020, I attended a peaceful demonstration across the street from the Los Angeles Sheriff's Department station located on Imperial Blvd. in the South Central area of Los Angeles. There were approximately 50 to 100 people peacefully protesting or observing, including several legal observers and members of the press with large cameras, press badges, and other press gear identifying them as members of the press.

4. I arrived shortly after 8:30 p.m. and left at 10:18 p.m. At no time did I observe anyone throw anything towards the Sheriffs, engage in any violent or assaultive conduct, or attempt to move past the barricade they had erected in front of the Sheriff's station.

5. I had joined this demonstration to exercise my First Amendment Rights to express disapproval for the Los Angeles County Sheriff Department's killing of Dijon Kizzee and others and to call for reformation and transformation of our Sheriff's Department in light of the pattern and practice of unnecessary police use of deadly and other forms of excessive force. There was

significant LASD presence outside the station watching the demonstration, with LASD having closed off Imperial from both the east and west.

6. The demonstration remained non-violent. All the demonstrators stayed behind the barrier. Nobody ever attempted to breach the barrier. No demonstrator appeared to be armed. No orders to disperse were given by LASD.

7. Then, at approximately 10:00 p.m. without any warning whatsoever, the LASD Deputies unloaded a barrage of pepper balls, rubber bullets, and "Stinger" flash bang grenades at the crowd. I was at the front of the protest line and had a small soft plastic shield to protect me. When the shooting started, I began walking away, and while doing so the deputies began targeting me. They struck me several times in the groin, legs, and abdominal area. I saw journalists hiding under trees and bushes and I told them they should also leave the area to avoid further injury. I was hit at least 12 times with rubber bullets causing deep pain and bruising. See photographs of my injuries attached hereto as Exhibit A.

8. In later viewing videos taken by journalists at the time of the incident, I observed the following: The crowd was entirely peaceful. Sheriffs were pointing their weapons at a small group of demonstrators located outside the plaza parking lot to the east. Younger males were pushing a desk up the street along an alley way. There was a small group of people standing at the front of the alley, several feet away from the police line. The Sheriff Deputies began shooting pepper balls at them. When the deputies started shooting in the alley, nearly every Deputy present began to shoot pepper balls, rubber bullets, and "Stinger" flash bang grenades directly into the crowd in the parking lot, which was made up of peaceful demonstrators, journalists, and onlookers. Attached hereto as Exhibit B is a google map of the location and I was standing at the approximate location of the red X in the parking lot.

9. I continued to retreat down Normandie north towards my car, while the Sheriffs continued to fire indiscriminately into the retreating crowd. At no time was an unlawful assembly declared. When I arrived home, I was in severe pain with welts and bruises all over my body. The next day (Tuesday, September 8th), I noticed my urine was a dark brown color even though I was not

dehydrated. Concerned with going to urgent care in the time of a pandemic, I decided to monitor my health before going to a Doctor.

10. When I arrived in the South LA neighborhood on September 7, I was detained by Los Angeles County Sheriff's Deputies while walking to the protest. I informed them I was there to exercise my First Amendment Rights. They asked me why I had a soft plastic shield and a helmet. Prior to September 7th, I learned that the Sheriffs had previously shot rubber bullets at crowds without warning or provocation. I responded to them, "I heard you guys like to shoot people." They told me that I was not allowed to have a shield, and I responded that I believed they were incorrect, and that (a) we were not in the City of Los Angeles, (b) regardless, the shield complied with the City of Los Angeles Municipal Code given the size and materials, and that (c) there was no County ordinance prohibiting it. I informed the Deputies that they had no probable cause to detain me and asked if I was free to go. After approximately twenty minutes with Deputies trying to figure out what to do, they let me go and I proceeded to the protest site. There were several witnesses to this unlawful detention. I felt that this prolonged detention, and inquisition, without probable cause, was done to intimidate me and threaten me with punishment or violence if I exercised my First Amendment Rights.

11. After September 7, I became aware that Los Angeles County Sheriffs did nothing to clean up the mess they made by shooting pepper balls and rubber bullets into peaceful crowds. I reached out to people on social media to assist in a Neighborhood Cleanup Day, to clean up any pepper ball or rubber bullet debris and fragments of exploded flashbang grenades. This is in keeping with my mission to provide humanitarian aid where needed and where I can help. We carefully used a spray bottle with baking soda and water to spray down pepper ball residue to neutralize it, and to keep contaminants from entering the air and into the lungs of neighbors. We spoke with several local residents who were very upset that the LA County Sheriffs shot out car windows and used flash bang grenades frightening everyone, especially children and pets. They thanked us for our clean-up efforts and expressed support for the peaceful protests.

12. At approximately 5 pm, when I and our volunteers were engaged in that clean-up effort on the sidewalk, Sheriffs rushed our group from behind. Before I knew what was happening, a

1 | man ran up behind me and pinned my arms behind my back, saying "Don't move". The man
2 | behind me, who was a Sheriff's Deputy, did not identify himself as a law enforcement officer. I
3 | was confused and frightened, and in pain from being rushed from behind while injured. At least
4 | three Sheriff's SUV's had arrived behind our small volunteer group, with approximately 6-8
5 | deputies.  They handcuffed us, searched our bags despite my clear and repeated statement of
6 | non-consent, took photos of our faces using their mobile phones despite our clear statements of
7 | non-consent, and copied our ID's. They told us there was a call for service but could not identify
8 | anything we were doing unlawfully or even anything that raised suspicion. We asked what crime
9 | we were suspected of and they could not tell us. After keeping us handcuffed in the back of their
10 | cruisers for several minutes, the officers informed us we were not under arrest and were free to
11 | go. The senior Deputy on the scene refused to provide me with his name or a business card when
12 | I asked him, and the other deputies also refused to provide me with business cards when I asked
13 | them. I felt that Deputies were detaining us without any reasonable suspicion, in an attempt to
14 | generate a probable cause. Again, I feel and believe the Deputies engaged in threats, intimidation
15 | and coercion in order to deprive us and deter us from exercising our First Amendment Rights.

16. 13.     At approximately 6:30, I was driving south on Normandie away from the area with two
17 | of the other volunteers, when a large team of Los Angeles County Sheriff Deputies in multiple
18 | SUV's pulled me over. The tags on my car were recently expired so I expected to be given a fix-
19 | it ticket. Instead, I was placed in the back of one patrol car, while my two female passengers were
20 | placed in the back of another. They searched the trunk and interior of my vehicle without my
21 | consent and found the following: a skate helmet, a new first-aid backpack with the tags still on it,
22 | a brand-new belt holder for first-aid equipment, a harness for carrying a camera, cleaning supplies
23 | for the neighborhood cleanup day, a motocross body protection vest, a respirator, six-to-eight
24 | umbrellas, two soft plastic shields, a $150 search and rescue flashlight, and a bag of approximately
25 | 20 brand new ear-loop cloth masks (color white) for COVID protection. None of these items is
26 | illegal. None of these items has been returned to me.

27. 14.     I was sitting in the patrol car for approximately 30 minutes without handcuffs while the
28 | Deputies stood around, talked on their radios and mobile phones, and searched and re-searched

4

**DECLARATION OF CHAD LODER**

my car. I felt and believed that they were looking for some reason, any reason, to arrest me, which was made difficult by the fact that nothing in my car or in my conduct had given a valid reason for arrest. Finally, a Deputy came and handcuffed my hands behind my back and told me I was being placed under arrest. The Officers did not place a seat belt on me and then intentionally drove the vehicle fast, whipping it around tight turns, causing me fly around the back seat and injuring parts of my body as I hit the interior of the vehicle. I repeatedly protested that I was not wearing a seat belt and they were hurting me but they ignored my plea for help. The LASD Manual of Policy and Procedures, section 5-03/165.03 states: *"All prisoners shall wear factory installed, or Department authorized and installed, safety belts when being transported in a County vehicle."*

15.  I was taken to the Los Angeles County Sheriff's South LA Station and booked at approximately 7 pm. I was not given any food until 7 am the next day. While in jail, I noticed my urine was now mixed with blood. Although the charges were bogus, I was given $5000.00 bail. I was able to contact the National Lawyers Guild of Los Angeles, who were prepared to bail me out the same evening. However, the Sheriffs told our lawyer that the station was "shut down" for the night due to the potential for protests, which meant that I was forced to spend the night in jail. When I was being processed, a Deputy told me "The DA won't actually bring any of these charges against you guys", which I took as an admission that the Sheriffs were knowingly conducting false arrests of protesters to interfere with our civil rights. While I was in jail, Deputies told me at different times "If you didn't want to get arrested, you shouldn't have protested in our neighborhood. Stay in your own neighborhood." Even though I was not protesting when I was arrested, I took this as confirmation that I was arrested merely for daring to lawfully exercise my First Amendment rights on the Sheriff's turf. I was able to bail out and I was released at 3pm on Thursday Sep 10th, with the assistance of lawyers with the National Lawyers Guild.

16.  However, my belongings, including my skate helmet, first aid backpack, camera harness, soft plastic shields, emergency flashlight, cloth masks, and protective vest, and possibly other belongings have been confiscated and not returned to me. I have not been provided with a list of items they confiscated. I am informed and believe that the Los Angeles County Sheriff's

5

**DECLARATION OF CHAD LOADER**

Department is unlawfully taking the phones and other property of peaceful protestors in order to intimidate and coerce them in violation of their First Amendment Right to speech and assembly and 4th Amendment protections of unreasonable seizures of our persons and property.

17. After I got home from jail, I went to the Little Company of Mary hospital Emergency Room. Concerned about the bruising and blood in my urine from the night before, they performed a CT scan and blood tests. I was informed that I had a likely bruise to my spleen or kidney on the left side of my body, but no organ rupture or damage. I remain in a great deal of pain and discomfort from the brutal and unnecessary force used on me by Los Angeles County Sheriffs. I want to be able to exercise my First Amendment rights without fear that the Sheriffs will injure me or unlawfully arrest or detain me while doing so. Because the Sheriffs confiscated my protective equipment, I am afraid that the Sheriffs will injure me again even more severely if I show up at a peaceful protest. At this point in time, it appears nothing will stop them from causing harm and injury without court intervention.

18. I was told several times by Los Angeles County Sheriff's that if I did not want to be injured or arrested, I should not come to this neighborhood. I would like to provide additional assistance to the community, for example, by providing school supplies for families with children, but I am traumatized by these incidents and fearful of returning.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed this 23rd day of September, 2020, in the County of Los Angeles, State of California.

Chad Loder

# EXHIBIT A



**loder.chad**
South Central LA



 **loder.chad**



