PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
RAYMOND W. SAKAI, State Bar No. 193507
rsakai@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200h
Glendale, California  91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants
County of Los Angeles and Sheriff Alex Villanueva

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| KRIZIA BERG, GRACE BRYANT, JAMES BUTLER, NOELANI DEL ROSARIO-SABET, LINDA JIANG, SEBASTIAN MILITANTE, CHRISTIAN MONROE, MATTHEW NIELSEN, EMANUEL PADILLA, SHAKEER RAHMAN, AUSTIN THARPE, TRAVIS WELLS, DEVON YOUNG, individually and on behalf others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a municipal entity, SHERIFF ALEX VILLANUEVA, and Does 1-10 inclusive,<br><br>Defendants. | Case No. 2:20-cv-07870-DMG-PD<br><br>Honorable Dolly M. Gee<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS'** *EX PARTE* **APPLICATION FOR A TEMPORARY RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Declarations and Evidentiary Objections filed concurrently herewith]* |
| --- | --- |

1    TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR
2  COUNSEL OF RECORD:
3    Defendants County of Los Angeles and Sheriff Alex Villanueva
4  (collectively, "Defendants") hereby submit the following Memorandum of Points
5  and Authorities in opposition to Plaintiffs' *Ex Parte* Application for a Temporary
6  Restraining Order.
7
8  Dated:  September 28, 2020          LAWRENCE BEACH ALLEN & CHOI, PC
9
10                                   By _____/s/ Paul B. Beach_____
11                                        Paul B. Beach
12                                        Attorneys for Defendants
                                          County of Los Angeles and
13                                       Sheriff Alex Villanueva
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.......................................1

1.    Introduction ...................................................................................1

2.    Relevant Facts ...............................................................................2

    A.    Backdrop To The Recent Protests.....................................2

    B.    Despite Over A Month Of Nearly Daily Protests, Less Lethal Tools Were Used On Only A Few Days.........................................3

3.    Legal Standards for *Ex Parte* Applications.................................4

4.    Legal Standards for Temporary Restraining Orders ................5

5.    Legal Argument.............................................................................6

    A.    Plaintiffs Have Not Been Diligent In Seeking Relief.....................6

    B.    There Is No Good Cause For The Granting Of Plaintiffs' Application..................................................................................7

    C.    Plaintiffs Have Not Met Their Heavy Burden To Obtain A TRO ..................................................................................9

        i.    Plaintiffs Have Not Proven That They Are Likely To Succeed On The Merits ................................................9

        ii.    Plaintiffs Have Not Met Their Burden To Demonstrate Irreparable Harm..............................................11

        iii.    The Balance Of The Equities And The Public Interest Strongly Favor The Denial Of Plaintiffs' Application.......14

6.    Conclusion ..............................................................................18

BERG\OPP TO EPA FOR TRO

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>                                                                      <u>Page(s)</u>

*Activation Products (CAN), Inc. v. Wecker*,

    2017 U.S. Dist. LEXIS 4196, *3 (D. Ore. 2017)...............................................12

*Ahanchian v. Xenon Pictures, Inc.*,

    624 F.3d 1253 (9th Cir. 2010) ............................................................................7

*Arc of California v. Douglas*,

    757 F.3d 975 (9th Cir. 2014)..............................................................................17

*Bray v. Alexandria Women's Health Clinic*,

    506 U.S. 263 (1993) ..........................................................................................15

*Caribbean Marine Serv. Co. v. Baldridge*,

    844 F.2d 668 (9th Cir. 1988)..........................................................................5, 11

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,

    356 F.3d 1256 (10th Cir. 2004)..........................................................................11

*Drakes Bay Oyster Co. v. Jewell*,

    747 F.3d 1073 (9th Cir. 2014)............................................................................17

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,

    753 F.3d 862 (9th Cir. 2014)..............................................................................12

*Felarca v. Birgeneau*,

    891 F.3d 809 (9th Cir. 2018)..............................................................................13

*Forester v. City of San Diego*,

    25 F.3d 804 (9th Cir. 1994)..................................................................13, 14, 15

*Frontline Med. Assocs. v. Coventry Healthcare Workers Comp., Inc.*,

    620 F. Supp. 2d. 1109 (C.D. Cal. 2009) .............................................................5

*Graham v. Connor*,

    490 U.S. 386 (1989) ..........................................................................................13

*Hodgers-Durgin v. De La Vina*,

    199 F.3d 1037 (9th Cir. 1999).......................................................................8, 14

ii

*In re Intermagnetics America, Inc.*,

    101 B.R. 191 (C.D. Cal. 1989)...........................................................................7

*L.A. Mem'l Coliseum Com. v. Nat'l Football League*,

    634 F.2d 1197 (9th Cir. 1980)........................................................................14

*Longshore v. Herzog*,

    2016 U.S. Dist. LEXIS 156426, at *16 (W.D. Wash. 2016) ...........................16

*Lydo Enterprises, Inc. v. City of Las Vegas*,

    745 F.2d 1211 (9th Cir. 1984)..........................................................................6

*Lyons v. City of Los Angeles*,

    461 U.S. 95 (1983) ...............................................................................1, 12, 14

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,

    571 F.3d 873 (9th Cir. 2009)....................................................................11, 13

*Martinez v. City of Santa Rosa*,

    2020 WL 5074262 (N.D. Cal. Aug. 27, 2020)............................................8, 10

*Maryland v. King*,

    567 U.S. 1301 (2012) .....................................................................................16

*Mazurek v. Armstrong*,

    520 U.S. 968 (1997) .........................................................................................5

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,

    883 F. Supp. 488 (C.D. Cal. 1995)...................................................................7

*Monell v. Department of Social Services of City of New York*,

    436 U.S. 658 (1978) .......................................................................................10

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,

    762 F.2d 1374 (9th Cir. 1985).....................................................................6, 11

*Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*,

    734 F.3d 406 (5th Cir. 2013)..........................................................................17

*Sacramento v. City of Sacramento*,

    2011 U.S. Dist. LEXIS 128218, at *11-12 (E.D. Cal. 2011)..............................6

*Siegel v. LePore,*

   234 F.3d 1163 (11th Cir. 2000)..........................................................................11

*Stormans, Inc. v. Selecky,*

   586 F.3d 1109 (9th Cir. 2009)..........................................................................14

*Swain v. Junior,*

   961 F.3d 1276 (11th Cir. 2020)........................................................................10

*Tanner Motor Livery, Ltd. v. Avis, Inc.,*

   316 F.2d 804 (9th Cir. 1963)...........................................................................13

*TDBBS LLC v. Ethical Products, Inc.,*

   2019 U.S. Dist. LEXIS 32207, *11 (D. Ariz. 2019)...........................................6

*Tennessee v. Garner,*

   471 U.S. 1 (1985)...........................................................................................17

*Terrace v. Thompson,*

   263 U.S. 197 (1923).........................................................................................5

*Terry v. State Farm Gen. Ins. Co.,*

   2017 U.S. Dist. LEXIS 228187, at *3-4 (C.D. Cal. July 27, 2017)....................5

*United States v. Gaylor,*

   2009 U.S. Dist. LEXIS 135825, at *5 (C.D. Cal. 2009).....................................6

*Winter v. Natural Res. Def. Council, Inc.,*

   555 U.S. 7 (2008)..............................................................................5, 16, 17

*Wise v. City of Portland,*

   2020 WL 5231486 (D. Or. Sept. 2, 2020)...................................................9, 15

**Statutes**

California Penal Code Section 407..........................................................................4

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

1. **<u>Introduction.</u>**

      The instant *ex parte* application for a TRO should be denied for multiple reasons.

      First and foremost, and contrary to the declarations from non-plaintiffs,[1] the Defendants have policed many public protests and rarely had to deploy less than lethal tools, and then only in a reasonable manner in response to acts of aggression or other unlawful behavior by certain protesters. Second, Plaintiffs have not satisfied the high standards for extraordinary *ex parte* relief. Third, Plaintiffs have not affirmatively proven that they are likely to succeed on the merits of their claims. Fourth, Plaintiffs, who in their own pleading admit that they have an adequate remedy at law, have not proven that they will suffer an irreparable injury if extraordinary provisional relief is not granted. Lastly, and most importantly, the granting of a TRO is not only inconsistent with the public interest, it is contrary thereto because it would deprive local law enforcement of important nationally recognized tools and techniques used to control unlawful conduct at protests, the use of which is designed to prevent physical harm to protesters and law enforcement officers.

      As explained in the declarations and shown by the exhibits submitted herewith, the County and its Sheriff's Department respect and make best efforts to facilitate efforts by those within the County of Los Angeles to exercise their civil rights. Undoubtedly, during turbulent times such as these, that mission can be difficult to carry out. Nevertheless, the Sheriff's Department has policies and

---

[1] The fact that <u>not one</u> Plaintiff submitted any evidence in support of their Application speaks volumes, and calls into serious question whether they have standing to bring any of their claims for injunctive relief. *See*, *Lyons v. City of Los Angeles*, 461 U.S. 95, 111 (1983).

practices regarding its lawful and reasonable use of projectiles and chemical agents, which are important tools necessary to make the protest environment safer for demonstrators and other members of the public.  Accordingly, Defendants respectfully submit that Plaintiffs' *ex parte* application for a temporary restraining order should be denied.

**2.      Relevant Facts.**

   **A.      Backdrop To The Recent Protests.**

On May 25, 2020, George Floyd died while in the custody of the Minneapolis Police Department.  (Dkt. 1, ¶ 34.)  The incident was captured on videotape and it received national attention, sparking public protests across the country.  (Dkt. 1, ¶ 36.)  On May 30, 2020, large public protests occurred in Pan Pacific Park, Los Angeles.  (Dkt. 1, ¶¶ 40-44.)  On June 3, 2020, further public protests occurred at Grand Park in downtown Los Angeles.  (Dkt. 1, ¶¶ 45-52.)  On June 18, 2020, LASD deputies were involved in an officer-involved shooting of Andres Guardado near the City of Gardena.  (Dkt. 1, ¶ 53.)  On June 21, 2020, public protests occurred at the LASD Compton Station.  (Dkt. 1, ¶¶ 54-61.)

Tens of thousands of people attended the aforementioned protests.  Those who participated peacefully exercised their First Amendment rights to free speech and assembly.  The vast majority of such events never involved the use of less than lethal tools.  (Lewis Decl. ¶ 5.)  Unfortunately, in the late evening hours after long periods of peaceful protests and most of the protesters had gone home, some of the most aggressive protesters did not exercise their rights, but instead violated the law when they destroyed property, failed to disperse when ordered, and assaulted and battered members of law enforcement.  (Lewis Decl. ¶¶ 23, 26-27; McDaniel Decl, ¶¶ 5-7; Jones Decl. ¶¶ 6-7.)  Those who engaged in violence against law enforcement used weapons such as blocks of concrete, rocks, illegal explosives and fireworks (e.g., illegal cherry bombs and M-80's), glass bottles,

smoke grenade, metal (including a tire iron and metal rod), and nearby objects (e.g., trash dumpsters and a desk).  (Lewis Decl. ¶¶ 23, 25, 26, 28; McDaniel Decl, ¶¶ 5-7; Jones Decl. ¶¶ 7-8; Allen Decl. ¶ 11.)

On May 30, 2020, responding to the threat to community safety, the Chair of the Los Angeles County Board of Supervisors proclaimed the existence of a local emergency because "of extreme peril to the safety of persons and property arising as a result of civil unrest in the County." (Lewis Decl. ¶ 12.)  Governor Gavin Newsom also proclaimed a state of emergency in Los Angeles County the same day, and had to mobilize the California National Guard.  (*Id*., ¶ 10.)

Over two months later, on August 27, 2020, Plaintiffs filed their underlying unverified Complaint.  (Dkt. 1.)  Plaintiffs are 13 individuals who at various times and places allege that they participated in various respects at public protests arounds the Los Angeles region, and whose rights were allegedly violated by various unknown peace officers in a variety of ways.  (Dkt. 1, ¶¶ 7-21.)  They seek monetary damages, as well as declaratory and injunctive relief.  (Dkt. 1, ¶¶ 146-154.)  None of the Plaintiffs have submitted any evidence in support of their TRO Application.

**B.    Despite Over A Month Of Nearly Daily Protests, Less Lethal Tools Were Used On Only A Few Days.**

Relevant to Plaintiffs' Application, the LASD has responded to numerous large protests in the subject time frame, including nearly two weeks of daily protest at the LASD's South Los Angeles Station.  Plaintiffs limit their accusations to four days where less than lethal tools were used in response to attacks on deputies, threats to the general public's safety, destruction of property and refusal to disperse after an unlawful assembly had been repeatedly announced.

On August 25, 2020, deputies were deployed to downtown Los Angeles in advance of a large scheduled protest following the previous night's protesters

clashing with the Los Angeles Police Department in front of LAPD Headquarters. (Lewis Decl. ¶ 22; Jones Decl. ¶ 4.)  While deputies were taking up a defensive line position next to the Hall of Justice, they were met by a large group of protesters.  (Lewis Decl. ¶ 23; Jones Decl. ¶ 6.)  Some of the protesters threw various objects, including, a tire iron and metal pole.  (Lewis Decl. ¶ 23; Jones Decl. ¶ 7.)  The sound of the tire iron hitting the street can clearly be heard in the videos submitted by Plaintiffs.  In self-defense, deputies deployed brief rounds of less than lethal tools.  (Lewis Decl. ¶ 23; Jones Decl. ¶ 7.)

Between August 31 and September 12, 2020, there were daily protests at the South Los Angeles Station.  (Allen Decl. ¶¶ 4, 10.)  On most of those days, there was no deployment of less lethal munitions because the protests were peaceful.  (Lewis Decl. ¶ 24; McDaniel Decl. ¶ 8; Allen Decl. ¶ 10.)  However, on September 5, 7 and 8, 2020, deputies deployed less than lethal tools in response to aggressive behavior towards them by certain protesters, or because protesters refused to comply with lawful orders to disperse after the declaration of an unlawful assembly under California Penal Code Section 407.  (Lewis Decl. ¶ 27; McDaniel Decl. ¶¶ 5-7.)

Review of social media posts show protesters ignoring multiple announcements of unlawful assembly and dispersal orders.  (McDaniel Decl. ¶ 7; Beach Decl. ¶ 3 and Ex. "C.")  Also, various weapons, shields, helmets and body armor were recovered from some of the protesters.  (Allen Decl. Ex. ¶¶ 5, 11 and Ex. "A" and "B.")

### 3.   Legal Standards for *Ex Parte* Applications.

"Unlike regularly noticed motions, applications for *ex parte* relief are inherently unfair and pose a threat to the administration of justice because the parties' opportunities to prepare are grossly unbalanced.  The opposing party can rarely make its best presentation on the short notice accompanying an *ex parte*

application.  Hence, to justify use of *ex parte* procedures, a party seeking *ex parte* relief must show: (1) the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures; and (2) the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect.  Failure to file a properly noticed motion constitutes sufficient grounds for denying an *ex parte* application."  *Terry v. State Farm Gen. Ins. Co.*, 2017 U.S. Dist. LEXIS 228187, at *3-4 (C.D. Cal. July 27, 2017)(citations omitted).

### 4.    Legal Standards for Temporary Restraining Orders.

Temporary restraining orders are drastic remedies and may only be granted if the moving party carries their burden of persuasion "by a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see Frontline Med. Assocs. v. Coventry Healthcare Workers Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009) (TRO and preliminary injunction standards are the same).  That showing must be made as to each of four elements: (1) the moving party must be likely to succeed on the merits of their claim; (2) they must be likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities must tip in their favor; and (4) an injunction must be in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction… [A] plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."  *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988)(emphasis in original; internal citations omitted).  In addition, an adequate remedy at law, such as damages, must not exist.  *Terrace v. Thompson*, 263 U.S. 197, 214 (1923).

///

///

5

1  **5.      Legal Argument.**

2      **A.      Plaintiffs Have Not Been Diligent In Seeking Relief.**

3          The actions about which Plaintiffs complain in their pleading began four

4  months ago, in May.  Moreover, Plaintiffs filed their Complaint on August 27,

5  2020, yet they did not move for a temporary restraining order until September 21,

6  2020.  Plaintiffs' delay from Spring until Fall alone bars the *ex parte* relief they

7  seek.[2]  *Oakland v. Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.3d 1374,

8  1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary

9  injunction implies a lack of urgency and irreparable harm."); *Lydo Enterprises,*

10  *Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in

11  seeking a preliminary injunction is a factor to be considered in weighing the

12  propriety of the relief.").  Delays as short as one to three weeks weigh against

13  granting extraordinary injunctive relief.  *See, e.g.*, *TDBBS LLC v. Ethical*

14  *Products, Inc.*, 2019 U.S. Dist. LEXIS 32207, *11 (D. Ariz. 2019) (court denied

15  TRO request without prejudice to plaintiff's request for preliminary injunction

16  because plaintiffs waited three weeks after the allegedly offending conduct

17  occurred to file their motion); *Sacramento v. City of Sacramento*, 2011 U.S. Dist.

18  LEXIS 128218, at *11-12 (E.D. Cal. 2011) (protesters' 25-day delay in seeking

19  injunctive relief to enjoin police from enforcing a local ordinance and arresting

20  people for remaining in city parks after closure hours for protests "contradicts

21  Plaintiffs' claims of irreparable injury if the TRO does not issue"); *United States*

22  *v. Gaylor*, 2009 U.S. Dist. LEXIS 135825, at *5 (C.D. Cal. 2009) ("The fact that

23  Plaintiff waited over a week after filing its complaint to seek a temporary

24  restraining order strongly suggests" that no TRO is necessary to preserve the

25

26  _____

27  [2] Similarly, with respect to the instant Application, Plaintiffs obtained declarations
   from third-party witnesses but held them for a week or more before filing their

28  Application with the Court.  *See*, Plaintiffs' Ex. Nos. 1, 3, 5, 6, 12, 15, and 18.

status quo or that plaintiff will suffer irreparable harm as a result of defendant's conduct).

**B.    There Is No Good Cause For The Granting Of Plaintiffs' Application.**

The opportunities for legitimate *ex parte* applications, even when timely sought, are extremely limited.  *In re Intermagnetics America, Inc*., 101 B.R. 191, 193 (C.D. Cal. 1989).  This is because *ex parte* applications "are inherently unfair, and they pose a threat to the administration of justice.  They debilitate the adversary system.  Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced.  Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two."  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).

That is certainly the case here.  On an *ex parte* basis, Plaintiffs filed their purported emergency papers complete with more than a dozen declarations, including a lengthy declaration from a purported law enforcement expert (who hasn't worked in law enforcement for three decades).  (Dkt. 13.)  Moreover, Plaintiffs complain about the LASD's actions over the past 70 years (Dkt. 1 at ¶ 3) but do not wish to have their grievances heard via a regularly noticed motion.  *See Mission Power,* 883 F. Supp. at 490 ("Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship.").  Defendants request that no adverse order issue without giving them an opportunity to present a full defense with an adequately developed record that gives the Court the information it needs to make a thoughtful and well-informed decision on the merits.  *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010).

///

///

1    There is no good cause to consider the relief sought by Plaintiffs on a

2    shortened *ex parte* basis and Plaintiffs will not be prejudiced if their Application

3    is heard on a non-expedited basis because the conduct about which they complain

4    is not ongoing.  *See*, *Martinez v. City of Santa Rosa*, 2020 WL 5074262, at *2

5    (N.D. Cal. Aug. 27, 2020) (in denying a similar application, the court noted the

6    risk of judicial error as a result of a rushed proceeding).

7        As shall be explained further when discussing each of the *Winter* factors,

8    even where plaintiffs engage in legal behavior, injunctive relief is unavailable

9    absent a showing of a likelihood of substantial and immediate irreparable injury,

10   which are clearly absent here.  *See Hodgers-Durgin v. De La Vina*, 199 F.3d 1037

11   (9th Cir. 1999).  In *Hodgers-Durgin*, plaintiffs sought an injunction to prevent

12   Border Patrol agents from stopping motorists driving near the border because the

13   driver allegedly looked Mexican or Hispanic.  *Id*. at 1039-40.  Plaintiffs regularly

14   engaged in legal behavior (i.e., driving near the border) that they alleged resulted

15   in illegal conduct by defendants.  However, despite the regularity of their legal

16   conduct, plaintiffs alleged they had only been illegally stopped once in the past

17   ten years.  In significant part, the court noted that the Supreme Court has

18   repeatedly cautioned that, absent a threat of immediate and irreparable harm,

19   "federal courts should not enjoin a state to conduct its business in a particular

20   way."  *Id*. at 1042 (citations omitted).  Accordingly, the Supreme Court

21   concluded that plaintiffs failed to show a likelihood of substantial and immediate

22   irreparable injury sufficient to warrant ongoing judicial supervision of an agency

23   ordinarily overseen by the executive branch.  *Id*. at 1044.

24       Here, like the plaintiffs in *Hodgers-Durgin*, Plaintiffs have not met their

25   high burden for injunctive relief.

26   ///

27   ///

28   ///

8

**C.**     <u>**Plaintiffs Have Not Met Their Heavy Burden To Obtain A TRO.**</u>

      **i.**      **Plaintiffs Have Not Proven That They Are Likely To Succeed On The Merits.**

Here, Plaintiffs have failed entirely to show that they are likely to prevail on their claims.  First, none of the Plaintiffs have submitted any evidence that any of their rights were violated.  Second, the evidence that the Defendants have submitted shows that they did not violate anyone's rights.  Finally, Plaintiffs have failed to address their *Monell* claim in any respect.

In denying a similar application, the court in *Wise v. City of Portland*, 2020 WL 5231486, at *9 (D. Or. Sept. 2, 2020), held that when there are directly competing narratives about what happened during the incidents at issues, as there are here, the "determination of excessive force in this context is better suited through litigation of the underlying Complaint, upon fuller development of the record."  Further, the court held that, at this stage, it could not make the credibility determinations necessary to find for the plaintiffs on the merits of their Fourth Amendment claims.  *Id.*

As in *Wise*, here, the parties have offered differing versions as to what occurred on the nights of the cited incidents.  Defendants have provided admissible evidence that protesters threw multiple dangerous objects at deputies.  Defendants have also provided independently posted social media videos that document: (1) protesters ignoring multiple dispersal orders; and (2) actively forming defensive formations instead of complying with the dispersal orders.  Furthermore, Defendants have provided evidence of weapons, helmets, shields and body armor recovered from protesters at the subject incidents.  On this record, any determination is properly left for consideration on a more developed record, rather than on an unnecessarily rushed basis.

Regarding their burden to prove their *Monell* claims, Plaintiff must not only show that the deputies' conduct during the four cited instances likely

violated their rights, but that the deputies were acting pursuant to a policy or custom of the LASD. *Martinez v. City of Santa Rosa*, 2020 WL 5074262, at *1 (N.D. Cal. Aug. 27, 2020).

In *Martinez*, similar to this case, plaintiffs brought a proposed class action regarding alleged First and Fourth Amendment violations against the City of Santa Rosa based on deployment of tear gas and projectiles against protesters. Plaintiffs then moved for a preliminary injunction to prevent the Santa Rosa Police Department from engaging in similar conduct while the litigation was pending. Since plaintiffs sued the city under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the court noted part of the likelihood of success on the merits analysis must be more than simply demonstrate constitutional violations. Under *Monell*, plaintiffs needed to also show that the employees were acting pursuant to a policy or custom of the municipality. *Id.* "Therefore, to obtain a preliminary injunction against the City at the outset of the case, the plaintiffs must also demonstrate a likelihood of success on their contention that the officers were acting pursuant to an official municipal policy." *Id.*, Swain v. Junior, 961 F.3d 1276, 1291-92 (11th Cir. 2020).

Under this analysis, the *Martinez* court denied plaintiffs' request for a preliminary injunction as they did not "show that the officers' decision to fire tear gas and projectiles into the crowd was likely not a one-off mistake of misguided officers but rather was likely made pursuant to Santa Rosa policy or custom." *Id*, at *2.

Here, similarly, Plaintiffs have made no such requisite showing. In fact, their Application and the declaration from their own expert concedes that the LASD has appropriate policies regarding use of force and less lethal tools. (Plaintiffs' Ex. 4, ¶¶ 12, 15, 18.)

Because Plaintiffs have failed to prove likelihood of success, the instant Application should be denied.

1

2

   **ii.**  **Plaintiffs Have Not Met Their Burden To Demonstrate**
     **Irreparable Harm.**

3    Under the second *Winter* factor, Plaintiffs must "demonstrate that there

4 exists significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle*

5 *Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985). To that end, Plaintiffs must

6 establish that "extreme or very serious damage will result" absent a TRO, and,

7 importantly, that their injuries are not "capable of compensation in damages."

8 *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879

9 (9th Cir. 2009) (quotation marks omitted). Failure to establish irreparable injury,

10 by itself, is grounds for the Court to deny Plaintiffs' Application. *See, e.g.,*

11 *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1260

12 (10th Cir. 2004) ("[B]ecause a showing of probable irreparable harm is the single

13 most important prerequisite for the issuance of a preliminary injunction, the

14 moving party must first demonstrate that such injury is likely before the other

15 requirements for the issuance of an injunction will be considered.") (quotation

16 marks omitted); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("A

17 showing of irreparable injury is the sine qua non of injunctive relief….

18 Significantly, even if Plaintiffs establish a likelihood of success on the merits, the

19 absence of a substantial likelihood of irreparable injury would, standing alone,

20 make preliminary injunctive relief improper.") (citations and quotation marks

21 omitted). Of course, the assertion in Plaintiffs' Application of irreparable injury

22 is directly contradicted by their claims for monetary damages in their Complaint.

23    "Speculative injury does not constitute irreparable injury sufficient to

24 warrant granting a preliminary injunction. A plaintiff must do more than merely

25 allege imminent harm to establish standing; a plaintiff must *demonstrate*

26 immediate threatened injury as a prerequisite to preliminary injunctive relief."

27 *Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)

28 (emphasis in original; internal citations omitted). That a plaintiff has allegedly

been injured in the past by the police is not a sufficient reason to impose injunctive relief because the claim that the police will purportedly violate plaintiffs' constitutional rights or fail to follow the law in the future is speculative.  *Lyons*, 461 U.S. at 105-106; *Activation Products (CAN), Inc. v. Wecker*, 2017 U.S. Dist. LEXIS 4196, *3 (D. Ore. 2017) (court denied motion for temporary restraining order where "there is no allegation that [defendant's] conduct has increased in severity or frequency such that *immediate* relief is necessary."); *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) ("But it is not the presence or absence of a past injury that determines Article III standing to seek injunctive relief; it is the imminent prospect of future injury.").

Here, the overwhelming evidence is that the Defendants' use of less lethal tools is extremely rare.  In fact, there is no evidence that any of the Plaintiffs have been subjected to same.  When coupled with their admitted claims for monetary damages, Plaintiffs' assertion of irreparable injury, without any evidence, is without merit.

Finally, because the purpose of a temporary restraining order is to preserve the status quo, the Court should deny Plaintiffs' request.  Here, Plaintiffs broadly seek to prevent LASD from using less lethal munitions during protests in all circumstances (even should civil unrest arise threatening the public, property, and officers).  Such a radical remedy would be contrary to the long-established policies and practices of LASD and could endanger public safety.  Even with a preliminary injunction, the usual purpose "is to preserve the status quo ante litem pending a determination of the action on the merits.  The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial.  This is particularly true where
///

1    the relief afforded, rather than preserving the status quo, completely changes it."

2    *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963).

3         Here, for over a decade, the highly-trained members of the LASD Special

4    Response Team have appropriately used, on rare occasion, less lethal munitions

5    in appropriate protest and crowd control situations.  (Lewis Decl. ¶ 17.)  This is

6    consistent with LASD policy and the constitutional directive that force be

7    reasonable based on the totality of the circumstances facing the officer.  *Graham*

8    *v. Connor*, 490 U.S. 386 (1989).

9         In addition, the Ninth Circuit has repeatedly and recently upheld the use of

10   less lethal weapons in such circumstances.  For example, in *Felarca v. Birgeneau*,

11   891 F.3d 809, 818 (9th Cir. 2018), the Ninth Circuit upheld the University of

12   California Police Department's right to use batons against "Occupy Berkeley"

13   protesters who refused to obey lawful dispersal orders and there was evidence

14   that some of the protesters were physically provoking the police.  Similarly, in

15   *Forester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994), the Ninth Circuit

16   affirmed a jury verdict that found that police used reasonable force when they

17   used pain compliance techniques to remove protesters who were part of an effort

18   "to invade private property, obstruct businesses and hinder law enforcement."

19        In sum, Plaintiffs have not shown that they will suffer irreparable harm if a

20   TRO is not issued – and no evidence suggests that any deputy will engage in any

21   allegedly wrongful behavior against these Plaintiffs or any other protesters in the

22   future.  *Marlyn Nutraceuticals*, 571 F.3d 873 at 879.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

### iii.  The Balance Of The Equities And The Public Interest Strongly Favor The Denial Of Plaintiffs' Application.

The final *Winter* factors also do not support an injunction.  The issue here is not just the rights of Plaintiffs, but public safety on a much broader scale.[3]  In such cases, the Court has a duty "to balance the interests of all parties and weigh the damage to each, mindful of the moving party's burden to show the possibility of irreparable injury to itself and the probability of success on the merits." *L.A. Mem'l Coliseum Com. v. Nat'l Football League*, 634 F.2d 1197, 1204 (9th Cir. 1980).  Plaintiffs bear the affirmative burden of showing that both factors weigh in their favor.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009).

As explained by the *Hodgers-Durgin* Court, the "proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the States' criminal laws in the absence of irreparable injury which is both great and immediate… In the absence of a likelihood of injury to the named plaintiffs, there is no basis for granting injunctive relief that would restructure the operations of the Border Patrol and that would require ongoing judicial supervision of an agency normally, and properly, overseen by the executive branch." *Hodgers-Durgin*, 199 F.3d at 1044 (citations omitted).

Here, the equities weigh strongly in favor of Defendants.  In circumstances such as the mass unrest at issue here, under well-established precedent, the County has "a legitimate interest in quickly dispersing and removing lawbreakers with the least risk of injury to police and others." *Forrester v. City of San Diego*,

---

[3] While certain individual protesters could be entitled to monetary awards for damages, that does not mean they would be entitled to any equitable remedy, let alone an extraordinary TRO, especially given the overbreadth of those equitable demands as discussed, below, in addressing the hardships to the County and the public interest. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

25 F.3d 804, 807 (9th Cir. 1994).  In that case, the "arrestees were part of a group of more than 100 protesters operating in an organized and concerted effort to invade private property, obstruct business, and hinder law enforcement.  Although many of [those] crimes were misdemeanors, the city's interest in preventing their widespread occurrence was significant: 'The wholesale commission of common state-law crimes creates dangers that are far from ordinary. Even in the context of political protest, persistent, organized, premeditated lawlessness menaces in a unique way the capacity of a State to maintain order and preserve the rights of its citizens.'" *Id.* (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 287 (1993) (Kennedy, J. concurring).

Similarly, courts must properly take into the consideration the irreparable harm and undue hardship on law enforcement that the sought order would cause. *See Wise v. City of Portland*, 2020 WL 5231486, at *10 (D. Or., Sept. 2, 2020). While denying a similar application, and acknowledging "the significance of this moment in our nation's history, and the crucial role of peaceful assembly in preserving American democracy", the *Wise* court held that "there is also a strong public interest in maintaining order and public safety." *Id*.

Here, the evidence is that issuance of a TRO would greatly harm the public.  Defendants rarely use less than lethal tools in response to public protests, and then only when necessary to protect members of the public, non-violent protesters, and members of the Department.  Less lethal tools are critical to safe, effective crowd control management:  in response to unlawful protesters' aggressive conduct, they create needed distance between violent protesters and law enforcement trying to maintain order; that distance gives law enforcement critical time, which in turn gives them options that they would otherwise not have so that they can employ tactics to regain order while using the least amount of force, if any, necessary, in the process.  (Lewis Decl.; McDaniel Decl.; Jones Decl.)  Enjoining the critical, common use of less than lethal options will deprive

law enforcement of opportunities to control ever-changing circumstances and, ultimately, greatly increase the potential for one-on-one direct physical confrontations between law enforcement and violent protesters, which can and should be avoided.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted). Courts have held that in the administration of prisons, which is just law enforcement in a different context, "it is in the public interest for prison officials to obey the law and the constitution, but granting the extraordinary relief of a preliminary injunction in the face of such contradictory evidence will not necessarily further that goal and may be contrary to maintaining the separation of powers, which also serve a public interest." *Longshore v. Herzog*, 2016 U.S. Dist. LEXIS 156426, at *16 (W.D. Wash. 2016).  Likewise, here, the issuance of a TRO would not be in the public interest because it would severely limit the LASD's ability to carry out its public safety mission to protect the public. These concerns are amplified here, given that the relief Plaintiffs seek is so overbroad and vague that it is unworkable and will fundamentally affect peace officers' statutory authority to deal with criminal behavior.  In essence, Plaintiffs' requested relief would enjoin the Sheriffs' Department from enforcing police powers entrusted to them under the law.  "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301 (2012) (internal

///
///
///
///
///

16

quotes omitted); *Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013).[4]

The order Plaintiffs seek is not consistent with the law, and actually demands more of law enforcement than the Supreme Court's precedent, *Tennessee v. Garner*, 471 U.S. 1 (1985). For example, the order requires the giving of warnings before use of "tear gas, flash grenades, and other chemical agents or irritants", even if there is no opportunity for such advance warnings. And what is meant by "…after other efforts of containment have failed…"? Moreover, the order is hopelessly vague because it prohibits "indiscriminate" use of less lethal tools – somehow a deputy facing an approaching violent crowd of assaultive protesters is supposed to understand from Plaintiffs' order when and how he or she can or cannot use their critical tools. The vagaries are many. The fundamental defect in Plaintiffs' order is their failure to specifically identify and address each less lethal tool and articulate how it is purportedly being abused and how the law compels its proper use. Given this void, their order, from a legal and practical standpoint, simply makes no sense.

_____

[4] In many of the cases cited by Plaintiffs, the courts found that injunctive relief was not appropriate. *See e.g.*, *Winter*, 555 U.S. at 22 (preliminary injunction not appropriate based only on a possibility of irreparable injury to marine wildlife; the injury must be likely and there was a public interest in having the military maintain its training exercises and preparedness for emergencies); *Arc of California v. Douglas*, 757 F.3d 975 (9th Cir. 2014) (substantial likelihood of success on the merits by itself is insufficient for a preliminary injunction, plaintiffs need to demonstrate future harms and there was an insufficient record to determine if there was irreparable harm); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) (affirming the denial of a preliminary injunction challenging the government's decision to let a commercial oyster permit expire and noting that when the government is a party, the government's public interest is not negligible).

Reasonable law enforcement officers, when faced with such a defective order, are left in an entirely unnecessary dilemma: either use their tools and suffer the very real risk of contempt of court sanctions after the fact, or forego their tools and suffer the very real risk of physical injury by close-quarters combat with one or more assaultive protesters which, unfortunately, could result in the use of lethal force.  No such deputy should be put to this choice, especially by this Court on this record.

**6.** **Conclusion.**

For the abovementioned reasons, the instant *ex parte* application for a TRO should be denied.

Dated:  September 28, 2020                 LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/  Paul B. Beach_____
　　　　　　　Paul B. Beach
　　　　　　　Attorneys for Defendants
　　　　　　　County of Los Angeles and
　　　　　　　Sheriff Alex Villanueva

18