Jorge Gonzalez SBN 100799
A PROFESSIONAL CORPORATION
2485 Huntington Dr., Ste. 238
San Marino, CA 91108-2622
t. 626-328-3081
e. jgonzalezlawoffice@gmail.com

Paul Hoffman SBN 71244
Michael D. Seplow SBN 150183
Aidan C. McGlaze SBN 277270
Kristina A. Harootun SBN 308718
John Washington SBN 315991
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES, LLP
11543 W. Olympic Blvd.
Los Angeles, California 90064
t. 310-396-0731; f. 310 399-7040
e. hoffpaul@aol.com
e. mseplow@sshhzlaw.com
e. amcglaze@sshhzlaw.com
e. kharootun@sshhzlaw.com
e. jwashington@sshhzlaw.com

Carolyn Y. Park SBN 229754
LAW OFFICE OF CAROLYN PARK
595 Lincoln Ave., SUITE 200
Pasadena, CA 91103
t. 213-290-0055
e. carolynyoungpark@gmail.com

Arnoldo Casillas SBN 158519
Denisse O. Gastélum SBN 282771
CASILLAS & ASSOCIATES
3777 Long Beach Blvd., 3RD FLO,
Long Beach, CA 90807
t. 323-725-0350
e. acasillas@casillaslegal.com
e. dgastelum@casillaslegal.com

Morgan E. Ricketts SBN 268892
RICKETTS LAW
540 El Dorado St Ste 202 Pasadena,
CA 91101
t. 213-995-3935
e. morgan@morganricketts.com

*Attorneys for Plaintiffs.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| KRIZIA BERG, GRACE BRYANT, JAMES BUTLER, NOELANI DEL ROSARIO-SABET, LINDA JIANG, SEBASTIAN MILITANTE, CHRISTIAN MONROE, MATTHEW NIELSEN, EMANUEL PADILLA, SHAKEER RAHMEN, AUSTIN THARPE, TRAVIS WELLS, DEVON YOUNG, individually and on behalf others similarly situated,<br><br>PLAINTIFFS,<br>v.<br><br>COUNTY OF LOS ANGELES, a municipal entity, SHERIFF ALEX VILLANUEVA , and DOES 1-10 inclusive,<br><br>DEFENDANTS. | Case No.: 2:20 CV- 07870 DMG-PD<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER; DECLARATIONS AND EXHIBITS IN SUPPORT THEREOF** |

1. **PLAINTIFFS HAVE BEEN DILIGENT AND FILED A TIMELY REQUEST FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER.**

This is a request for an emergency Temporary Restraining Order. Defendants complain that no Plaintiffs filed a declaration. Yet, this matter was filed as a class action, naming 12 class representatives on behalf of themselves and others similarly situated. Those who submitted declarations here are "putative" plaintiffs, i.e., persons who are part of the class alleged to have suffered violations of rights and/or injuries due to the unlawful conduct of deputies against protesters.

The declarations highlight the manner in which protesters have been treated since the filing of the complaint (including some from two days before the filing), up until the most recent protests. Timeliness of the petition should be measured by the latest event prompting the application for the temporary restraining order, not the original events that led to the filing of the complaint.

2. **PLAINTIFFS' APPLICATION FOR A TRO MEETS THE STANDARDS FOR ISSUANCE OF AN EX PARTE ORDER.**

The declarations are consistent in one main theme, deputies have continued to break up demonstrations, rallies, and marches using less lethal weapons without following certain conditions considered necessary by plaintiffs, including clear audible notices that the assembly is unlawful and protesters must disperse, and that they be used only when conditions justify their use, i.e., in response to threats, assaults, or other aggressive conduct against deputies.

The declarations only cover the most recent actions, and are consistent with activities complained of since the inception of the protests, May 30, 2020.

Plaintiffs hereby submit additional declarations from the most recent actions, on September 25 in West Hollywood, showing the LASD continues to engage in the same unconstitutional behavior in spite of the filing of this *ex parte* application. *See* Declaration of Asa Juleff and Further Declaration of Diana Barbarillo. As

these declarations show, marchers were in the area of San Vicente and Santa Monica Blvd. near the sheriff's station when a declaration of unlawful assembly and order to disperse was made (although it was difficult to hear and the sound system cut-off, leaving unsaid the amount of time they had to disperse.  Marchers then began to leave westbound on Santa Monica Blvd.  Despite efforts to comply with the dispersal order, LASD deputies shot pepper balls at the crowd (including targeting legal observers and press), and after removing one person from a sound truck, began to beat him in the legs with a riot shield.  Witnesses to the beating were then shot with pepper balls, even though they were at least 50 feet away and peaceful.  Asa Juleff was struck in the collarbone, right cheek, and above his left eye, causing burning and lacerations.

   Compare the behavior of the Los Angeles Police Department ("LAPD"), in its announcement that the LAPD would curtail the use of less lethal weapons to stifle mass protests.  (*BLM v. City of Los Angeles*, Case No. 2:20 CV- 05027 CBM-AS, Dkt. 24, pg. 4, 8-9,).  In contrast, LASD is recalcitrant and unrepentant, and Plaintiffs allege their conduct is increasingly violent and retaliatory.  *Activation Products (CAN), Inc. v. Wecker*, 2017 U.S. Dist. LEXIS 4196, *3 (D. Ore. 2017) (court denied motion for temporary restraining order where "there is no allegation that [defendant's] conduct has increased in severity or frequency such that *immediate* relief is necessary.")

   The irreparable harm complained of is the suppression of free speech rights through violent methods, clearly designed to intimidate and cause fear amongst protesters.  That is why the declarations regarding the formation of three separate riot teams during the press conference on September 11 are relevant (Decl. of Cynthia Anderson-Barker and David Cunningham).  Only the press and a small contingent of protesters (maybe 20) attended.  There was clearly no threat to the station, and when faced with people taking their pictures, one of the deputies tried

to grab a speaker from the other side of the barricade and pull him into the police lines (Cunningham Decl.).

That LASD is actively inflicting physical injuries on protesters is not speculative.  The LADS continues to use less lethal weapons to disperse protesters when the legal requirements to do so are not being met.

Defendants' contention that Plaintiffs must establish a custom and policy claim against the LASD under *Monell* in order to obtain a TRO is simply wrong. An injunction can also be issued under the Bane Act, California Civil Code Section 52.1.  Nonetheless,  although Plaintiffs do not need to establish a *Monell* claim to obtain injunctive relief, the fact that the conduct complained of occurred with units from three different Sheriff's stations, Compton, South Los Angeles, and West Hollywood, demonstrate that there are County-wide policies, and patterns of practice in effect, evincing clear *Monell* violations.

3.	**THERE IS GOOD CAUSE FOR ISSUANCE OF THE TRO.**

Defendants claim they have policed many protests but have only rarely used less than lethal weapons. Yet, during the period covered by the declarations, LASD has used such weapons at every one of the events.  It is part of their standard operating procedures to use these tactics at demonstrations.

The demonstrations in the wake of the George Floyd killing have occurred on many different nights and in many different jurisdictions (e.g. Los Angeles, Long Beach, Beverly Hills, Santa Monica, Seal Beach, Yorba Linda).  While occurring with some regularity each week since the filing of the complaint herein, only a few have occurred within jurisdictions patrolled by the LASD.  On each of those nights less lethal weapons have been used by LASD deputies with impunity.

That protesters wear defensive gear, shields (including Styrofoam boogie boards) helmets, padded clothing, shin guards, goggles, is only because they have come to **expect** this treatment from deputies, and choose to brave the elements, so to speak, and come prepared.  Indeed, in one video the protesters march backward

3

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER

in the face of an advance by a skirmish line of deputies (without any audible declarations of unlawful assembly or warnings) while chanting "Stay tight, stay tight, they do this every night." This sort of bravery and fearlessness is more a testament to the passion and dedication of protesters to their mission, than of a threat to the deputies. Protective clothing cannot reasonably be portrayed as "weapons."

Plaintiffs do not deny that at times, during some of the demonstrations, assaultive conduct against deputies may have occurred. That is a matter subject to some disagreement as to the extent and degree of threat to deputies posed by such conduct. However, such assaultive conduct is rare, and was not witnessed by any of the declarants present at the use of less lethal weapons on the nights of August 25, and September 5, 7, or 8.

Plaintiffs insist that the incidence of assaults on deputies is so rare, that it does not confer upon deputies the widespread legal justification to use less lethal weapons at each and every demonstration, irrespective of whether a unlawful assembly has been declared. If 100 people are protesting, and one person throws a water bottle at deputies, it does not automatically convert the other 99 peaceful protesters into legitimate targets. It is the **indiscriminate** use of such weapons that plaintiffs seek to prevent or limit.

### 4. THE BALANCE OF EQUITIES TIP DECIDEDLY IN FAVOR OF PLAINTIFFS AND THE ISSUANCE OF A TRO TO MAINTAIN THE STATUS QUO.

Plaintiffs are not seeking any radical remedies. They do not seek to take away the right of deputies to protect or defend themselves, nor do they try to justify any assaultive behavior by protesters. Plaintiffs only seek to have Defendants conform their behavior to the law and existing police standards, nothing more, and nothing less. For instance, if a protester is actively throwing items at deputies, use of less lethal force may be justified, but, as in the firing of rubber bullets, still must comply

with the law and proper standards for usage, such as skipping off the ground and not shooting at people in the head and face.

Issuance of a TRO requiring the LASD to follow the law is the status quo. It's the LASD's use of unreasonable force against peaceful protesters that has disrupted the status quo.

Dated: October 7, 2020                          Respectfully submitted,

By: /s/ Jorge Gonzalez
Jorge Gonzalez
A PROFESSIONAL CORPORATION

Paul Hoffman
Michael D. Seplow
Aidan C. McGlaze
Kristina A. Harootun
John Washington
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP

Carolyn Y. Park
LAW OFFICE OF CAROLYN PARK

Arnoldo Casillas
Denisse O. Gastélum
CASILLAS & ASSOCIATES

Morgan E. Ricketts
RICKETTS LAW

*Attorneys for Plaintiffs and Proposed Class.*

5
PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION
FOR TEMPORARY RESTRAINING ORDER