PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
RAYMOND W. SAKAI, State Bar No. 193507
rsakai@lbaclaw.com
EMILY B. SUHR, State Bar No. 306658
esuhr@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants
County of Los Angeles and Sheriff Alex Villanueva

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIZIA BERG, et al., | Case No. 2:20-cv-07870-DMG-PD |
| Plaintiffs, | Honorable Dolly M. Gee |
| vs. | **DEFENDANTS' SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL BRIEF SUPPORTING THEIR APPLICATION FOR A PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| COUNTY OF LOS ANGELES, a municipal entity, et al., | |
| Defendants. | *[Declarations and Evidentiary Objections filed concurrently herewith]* |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR

COUNSEL OF RECORD:

///

///

///

Defendants County of Los Angeles and Sheriff Alex Villanueva ("Defendants") hereby submit the following Memorandum of Points and Authorities in opposition to Plaintiffs' Supplemental Briefing Re Their Application for a Preliminary Injunction.

Dated:  October 23, 2020     LAWRENCE BEACH ALLEN & CHOI, PC


By    /s/  Paul B. Beach    
      Paul B. Beach
      Attorneys for Defendants
      County of Los Angeles and
      Sheriff Alex Villanueva

**TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

1. Introduction ................................................................................ 1

2. Further Statement of Facts ......................................................... 2

    2.1.   Plaintiffs cite five claimed indiscriminate deployments of less lethal tools over the LASD's 150 year history in support of their Application for a preliminary injunction ....................................... 2

    2.2.   There is no policy or practice of targeting legal observers or Members of the press with less lethal tools at protests ................. 2

    2.3.   Plaintiffs social media video of the September 8, 2020 protest shows numerous orders to disperse with a crowd forming a "shield wall" in response ............................................................ 3

    2.4.   On September 25, 2020, in West Hollywood, after an unlawful assembly was announced and during the arrests of several suspects, deputies deployed less lethal tools in response to thrown objects and protesters charging at them when several deputies and a loaded firearm were on the ground ........................ 4

3. To Obtain Injunctive Relief, Plaintiffs Must Show A Policy Or Practice That Caused The Alleged Constitutional Violations ............................... 6

    3.1.   Applications for Preliminary Injunctions Are Not Exempt From The Supreme Court's Holding in *Monell* ............................ 6

    3.2.   Plaintiffs' New, Defective Claim Under The Bane Act Does Not Entitle Them To A Preliminary Injunction ............................. 7

4. Plaintiffs Have Not Satisfied Their Burden Regarding A Policy Or Practice As Required By *Monell*, Which They All But Concede ........... 10

    4.1.   No Proof Of An Underlying Constitutional Violation ................ 10

    4.2.   No Proof Of A Policy That Caused A Constitutional Violation .. 11

i

4.3.    No Proof Of A Practice That Caused A Constitutional
        Violation..........................................................................11

4.4.    There Is No Proof Of Ratification Of The Violation Of
        Plaintiffs' Constitutional Rights ...................................13

5.    Any Injunctive Relief Entered At This Stage Of The Proceedings
      Can Only Apply To The Named Plaintiffs...............................14

5.1.    Plaintiffs' Reliance On *Easyriders* Is Misplaced Because,
        Unlike *Zepeda*, It Does Not Apply To Preliminary Injunctions...15

5.2.    Plaintiffs Have Not Proven Their Standing For A Preliminary
        Injunction ......................................................................16

6.    Defendants Agree With Plaintiffs That No Further Discovery Is
      Required And This Court Should Rule On The Current Record ...........17

7.    Conclusion .............................................................................17

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                 <u>Page(s)</u>

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970) ..................................................................11, 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................12

*Blanford v. Sacramento County*,
   406 F.3d 1110 (9th Cir. 2005)..........................................................10

*Bresgal v. Brock*,
   843 F.2d 1163 (9th Cir. 1987)..........................................................15

*Castaneda v. Dep't of Corr. & Rehab.*,
   212 Cal. App. 4th 1051 (Ct. App. 2013)............................................8

*Chhoeun v. Marin*,
   306 F. Supp. 3d 1147 (C.D. Cal. 2018)............................................15

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1982) ...........................................................................16

*City of Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985) ..........................................................................12

*City of Santa Monica v. Superior Court*,
   231 Cal. App. 2d 223 (Ct. App. 1964) ...............................................9

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1998) ..........................................................................13

*City of Stockton v. Superior Court*,
   42 Cal. 4th 730 (2007)........................................................................7

*Cohen v. Board of Supervisors*,
   178 Cal. App. 3d 447 (Ct. App. 1986)................................................9

*Davis v. Astrue*,
   874 F. Supp. 2d 856 (N.D. Cal. 2012) ..............................................15

iii

*DiCampli-Mintz v. City of Santa Clara,*

    55 Cal. 4th 983 (2012)..................................................................................7, 8

*Easyriders Freedom F.I.G.H.T. v. Hannigan,*

    92 F.3d 1486 (9th Cir. 1996)..................................................................15

*Gillette v. Delmore,*

    979 F.2d 1342 (9th Cir. 1992)...........................................................13, 14

*Gong v. City of Rosemead,*

    226 Cal. App. 4th 363 (Ct. App. 2014)....................................................8

*Graham v. Connor,*

    490 U.S. 386 (1989) ...............................................................................10

*Hamilton v. Rodgers,*

    791 F.2d 439 (5th Cir. 1986)..................................................................12

*Henderson v. City & County of San Francisco,*

    2006 WL 3507944 (N.D. Cal. Dec. 1, 2006) .......................................12

*Johnson v. San Diego Unified Sch. Dist.,*

    217 Cal. App. 3d 692 (Ct. App. 1990) ....................................................7

*Lavan v. City of Los Angeles,*

    797 F. Supp. 2d 1005 (C.D. Cal. 2011)..................................................15

*Le Mere v. Los Angeles Unified School Dist.,*

    35 Cal. App. 5th 237 (Ct. App. 2019)......................................................8

*Los Angeles v. Superior Court,*

    127 Cal. App. 4th 1263 (Ct. App. 2005)..................................................7

*Lowry v. Port San Luis Harbor,*

    No. 45, 2020 WL 61929490 (Cal. Ct. App. Oct. 22, 2020 .................8

*Martinez v. City of Santa Rosa,*

    2020 WL 5074262 (N.D. Cal. Aug. 27, 2020)........................................7

*Mazurek v. Armstrong,*

    520 U.S. 968 (1997) ...............................................................................13

*Meehan v. County of Los Angeles*,

    856 F.2d 102 (9th Cir. 1988)...................................................................12

*Monell v. Dept. of Social Services of New York*,

    436 U.S. 658 (1978) .....................................................................7, 11

*Mood v. City of Costa Mesa*,

    No. SACV15-1154-SVW(KK), 2016 WL 6902109........................................12

*Pembaur v. City of Cincinnati*,

    475 U.S. 469 (1986) ...........................................................................13

*Reese v. County of Sacramento*,

    888 F.3d 1030 (9th Cir. 2018)................................................................9

*Shirk v. Vista Unified Sch. Dist.*,

    42 Cal. 4th 201 (2007)........................................................................8

*State of California v. Superior Court (Bodde)*,

    32 Cal. 4th 1234 (2004)......................................................................8

*Sundance Saloon, Inc. v. City of San Diego*,

    213 Cal. App. 3d 807 (Ct. App. 1989) ...................................................9

*Trevino v. Gates*,

    99 F.3d 911 (9th Cir. 1996)............................................................12, 13

*Winter v. Natural Res. Def. Council, Inc.*,

    555 U.S. 7 (2008) .............................................................................7

*Zepeda v. U.S. I.N.S.*,

    753 F.2d 719 (9th Cir. 1983).................................................................14

**Statutes**

Cal. Civ. Code § 3423.............................................................................9

Cal. Gov. Code § 810 .............................................................................7

Cal. Gov. Code § 820.2 ..........................................................................9

Cal. Pen. Code § 405a............................................................................5

1

**<u>Rules</u>**

2

Federal Rule of Civil Procedure, Rule 65(d) .......................................................14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. Introduction.

Based on the record before this Court, Plaintiffs' Application for a Preliminary Injunction must be denied. Just as the Court is concerned with the serious allegations, so are the Defendants. Upon close review, however, the allegations are little more than speculation and arguments, woefully deficient to support the showing required for Plaintiffs' sought after extraordinary relief, which would adversely affect the LASD's ability to protect the public (including the overwhelming majority of protesters who have behaved lawfully), as well as private and public property.

First and foremost, there is still absolutely no evidence (admissible or otherwise) before this Court that:

    1)     any of the Plaintiffs ever attended a protest;

    2)     any of the Plaintiffs ever exercised their First Amendment rights;

    3)     Defendants ever used any force against Plaintiffs, much less that it was unlawful or per a County policy or practice;

    4)     Plaintiffs are likely to attend future protests, or

    5)     Defendants are likely to use excessive force against Plaintiffs in the future.

Accordingly, Plaintiffs have failed entirely to meet their high burden of proof and persuasion that the extraordinary relief of a preliminary injunction is needed, much less justified. As such, after Plaintiffs' second bite at the apple, their Application should be denied.

In fact, Plaintiffs have practically conceded defects in their pleading that was operative when they brought their Application. Moreover, Plaintiffs admit in their new pleading that they failed to comply with the legal requirements for asserting any state law claims. At most, Plaintiffs ask this Court to accept the

1

notion that: 1) protesters can violate the law with impunity; 2) protesters can refuse to comply with lawful orders; 3) protesters can assault and batter law enforcement officers, and literally invite the use of force; and 4) law enforcement officers may not use reasonable means to defend the public, property, themselves and enforce the law. Of course, that is not—and should not be—the law. Therefore, the instant Application must be denied.

## 2. Further Statement Of Facts.

As pinpoint evidentiary citations were included in the TRO Opposition, as directed in the Court's October 8, 2020 Order, Defendants will not repeat the same facts here.

### 2.1. Plaintiffs cite five claimed indiscriminate deployments of less lethal tools over the LASD's 150 year history in support of their Application for a preliminary injunction.

As background, formed in 1850, the Los Angeles County Sheriff's Department ("LASD") is the largest Sheriff's Department in the world, serving an area in excess of 3,000 square miles, with a jurisdiction of nearly three million and responding to over 1 million calls for service annually. (Supplemental Declaration of Robert J. Lewis ("Lewis Supp. Decl."), ¶ 2). These facts highlight the extreme rarity and infrequency of the Plaintiffs' allegations.

### 2.2. There is no policy or practice of targeting legal observers or members of the press with less lethal tools at protests.

Additionally, while the relevance to Plaintiffs' broadly worded injunction request is not clear, Plaintiffs cite to alleged targeting of legal observers and members of the press at events where no less lethal tools were used. (Plaintiffs' Supp. Brief, 9:12-23 [September 11, 2020 press conference]; 10:1-10 [arrest of a reporter unrelated to any less lethal tools]). Relevant to Plaintiffs' application, there is no policy or practice of targeting legal observers and members of the press at
///

press at protests with deployment of less lethal tools.  (Lewis Suppl. Decl., ¶ 5; Declaration of M. Coppes ("Coppes Decl."), ¶ 5).

On September 11, 2020, rather than amassing to "intimidate the participants" at a press conference held in front of the LASD's South Los Angeles Station, deputies were placed around the Station, as they had been for over a week, in advance of a large scheduled protest.  (Supplemental Declaration of Charles L. McDaniel (McDaniel Supp. Decl.), ¶¶ 5-6, 9; Declaration of Duane Allen, ¶ 4 (describing approximately two weeks of daily protests); *See generally*, Declaration of Charles L. McDaniel ("McDaniel Decl."), ¶¶ 4-8 (describing the daily protests).

Press conference organizers selected a location directly next to an area that, the night before, had been closed off with LASD yellow barricade or crime scene tape for security.  (McDaniel Supp. Decl., ¶¶ 7-8).  At no point during the press conference did any deputy interfere with anyone who was speaking.  (*Id.*, ¶ 11).

**2.3.** **Plaintiffs social media video of the September 8, 2020 protest shows numerous orders to disperse with a crowd forming a "shield wall" in response.**

Although Plaintiffs submit a 14-minute social media video purporting to show select events from the September 8, 2020, protest at the South Los Angeles Station, they direct the Court to ignore everything before 12:50.  (Plaintiffs' Supp. Brief, p.8 fn 4).

Among the evidence they omit from their "facts" are: (1) the video begins with a declaration of an unlawful assembly and dispersal announcements, which continue throughout almost the entire video (*Id.*, ¶ 15 at 0.33 secs); (2) the group members building a "shield wall" in the middle of major street, impeding an emergency response vehicle (*Id.*, at 2:02, 7:12); (3) group members announcing over a megaphone, among other things, "If you are afraid of getting arrested, the time to leave is now" and "If you cannot be arrested right now, or you do not feel

safe, now is the time to go" (*Id.*, at 2:30, 3:56); (4) group members armed with various "shields", including what appear to be an actual metal shield and a large mirror with broken glass (*Id.*, at 4:50-5:10, 5:38); (5) a person with a water bottle, walking behind the "shield wall" (*Id.*, at 10:21); and (6) two individuals running behind the "shield wall" just before deployment of the less lethal tools in response to thrown objects (*Id.*, at 12:46).

**2.4.** **On September 25, 2020, in West Hollywood, after an unlawful assembly was announced and during the arrests of several suspects, deputies deployed less lethal tools in response to thrown objects and protesters charging at them when several deputies and a loaded firearm were on the ground.**

On September 19, 25 and 26, 2020, deputies were deployed to West Hollywood in advance of scheduled large gatherings. (Coppes Decl., ¶ 6). The gatherings on September 19 and 26, and most of the 25 were largely uneventful. (*Id.*)

Contrary to Plaintiffs' version of the facts, regarding the cited September 25, 2020 incident, the conduct of some of the protest participants were far from peaceful. (Plaintiffs' Supp. Brief, 10:11-12:15).

On September 25, 2020, following news reports of various injuries to protesters and damage to vehicles at the previous night's protest in Hollywood (LAPD jurisdiction), deputies were deployed to the West Hollywood Station to maintain the peace and ensure public safety in advance of another expected large protest. (Coppes Decl., ¶ 7). Specifically, the night before, a protester had been struck head-on by a large truck; a car was chased and hit by protesters' vehicles; and that car and the car's driver were attacked, with a protester attempting to pull out the driver onto the street. (*Id.*, *see* AP, CBS and LA Times videos and stories).

///

4

After hours of peaceful protest, at approximately 9:05 p.m., due to protesters and their vehicles creating huge grid lock – impeding traffic, including emergency vehicles, an unlawful assembly was declared and dispersal orders were given. (Coppes Decl., ¶ 8).  At approximately 9:20 p.m., further dispersal orders were given.  (*Id.*, ¶ 9).

Approximately 100 pedestrian protesters led by two large pickup trucks, a black Ford F350 (similar to the truck involved in the previous night's violence) and a white Chevrolet Silverado, followed by various other vehicles continued through the streets of West Hollywood in violation of the unlawful assembly declaration and various Vehicle Code sections. (Coppes Decl., ¶¶ 10, 11). Reports of vandalism of properties were made.  (*Id.*, ¶ 12).

At approximately 9:45 p.m., because of the danger to public safety, including danger to remaining protesters; other pedestrians and motorists based on the violence from the night before, deputies conducted a traffic stop of the two large pickup trucks leading the protest near the intersection of Sunset Boulevard and San Vicente Boulevard.  (*Id.*, ¶ 13).  Both drivers were detained without incident.  (*Id.*, ¶¶ 14-15).

However, two of the occupants of the Chevrolet's truck's bed physically resisted their detention.  (*Id.*, ¶ 16).   One occupant attempted to forcefully break free by pulling away from the detaining deputy, resulting in both of them going to the ground. (*Id.*).

Exacerbating the tense and rapidly evolving situation, a second truck bed occupant ("suspect") jumped down and grabbed the first occupant's arm in an attempt to free him from the deputy's detention.  (Cal. Pen. Code §405a ["A person who participates in the taking by means of a riot of another person from the lawful custody of a peace officer is guilty of a felony. . . ."]).  (*Id.*, ¶ 17). When that second suspect was subsequently taken to the ground, he struggled with deputies, causing a deputy's loaded firearm to fall to the ground near the two

struggling suspects.  (*Id.*).  The suspect then rolled onto his stomach, placing his hands underneath the middle of his body and did not immediately comply with orders and attempts to put his hands behind his back.  (*Id.*).  Not knowing if the suspect (who was unsearched) was reaching for something, and as well as other protesters running toward the location, a deputy used his plastic shield, making contact with the suspect's legs, in order to help gain control of the suspect's hands.  (*Id.*).  Eventually, deputies were able to handcuff the suspect without further incident.  This suspect was arrested on various charges, including a felony.  (*Id.*).

From Plaintiffs' Supplemental Brief, the felony arrest suspect is apparently the person they refer to as "Andy."  (*Id.*, ¶ 21; *see* Plaintiffs' Supp. Brief, 11:2-8).

Simultaneously, other protesters began to rush and throw items at the deputies, including a large street utility cover and water bottles.  (Coppes Decl., ¶ 18).  One protester, dressed all in black and wielding a large umbrella with a pointed tip, ran towards and got close to where the deputies were struggling with the suspects on the ground.  (*Id.*).  Later, it was determined the protester was also running towards the area where a deputy's loaded handgun was on the ground.  (*Id.*).  In order to defend themselves and deflect the attack, preventing dangerous hand-to-hand contact, deputies deployed a brief volley of less lethal tools. (*Id.*).

As a result of some of the protester's conduct, there were a number of arrests on varying charges, including a felony.  (*Id.*, ¶ 20).  Plaintiffs have not submitted declarations from any of those arrested.  (*See* Plaintiffs' Supp. Brief).

**3.  To Obtain Injunctive Relief, Plaintiffs Must Show A Policy Or Practice That Caused The Alleged Constitutional Violations.**

**3.1.  Applications for Preliminary Injunctions Are Not Exempt From The Supreme Court's Holding In *Monell*.**

In response to the first issue framed by this Court in its October 8, 2020 Order, because Plaintiffs rely upon Section 1983, they must prove that a policy or

practice actually caused the violation of their rights. *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 694 (1978). In order to prevail on a request for a preliminary injunction, a plaintiff must establish a likelihood of prevailing on the merits, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), and nothing exempts Section 1983 actions from this standard. *See Martinez v. City of Santa Rosa*, 2020 WL 5074262, at *1 (N.D. Cal. Aug. 27, 2020) (denying plaintiffs' request for a preliminary injunction for failure to show that alleged misuse of tear gas and projectiles during public protests was pursuant to a policy or custom).

### 3.2. Plaintiffs' New, Defective Claim Under The Bane Act Does Not Entitle Them To A Preliminary Injunction.

Plaintiffs' recent reliance upon The Bane Act does not help them. First, their Application is not based on their First Amended Complaint ("FAC"), but on their original Complaint. Second, and more importantly, this Court can tell from the face of their FAC that Plaintiffs' new Bane Act claim fails as a matter of law. Specifically, the original Complaint was filed on August 27, 2020. (Docket No. 1.) According to the FAC at ¶ 35, Plaintiffs did not file their required government tort claim until September 4, 2020. However, under well-established California law, all plaintiffs are required to file and have their tort claim rejected prior to filing suit.

In California, claims against public entities are governed by the statutory requirements in the Government Claims Act (Cal. Gov. Code § 810 *et seq*.). *See DiCampli-Mintz v. City of Santa Clara*, 55 Cal. 4th 983, 989 (2012); *City of Los Angeles v. Superior Court*, 127 Cal. App. 4th 1263, 1267 (Ct. App. 2005). Compliance with the statutory requirements is mandatory, and the failure to comply bars suit. *Johnson v. San Diego Unified Sch. Dist.*, 217 Cal. App. 3d 692, 697 (Ct. App. 1990).

The purpose of the Government Claims Act is well-established: "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, ***without the expense of litigation***." *City of*

*Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007) (emphasis added).  To that end, the Government Claims Act "establishes certain conditions precedent to the filing of a lawsuit against a public entity."  *State of California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1237 (2004).  "***Before suing a public entity***, the plaintiff must present a timely written claim for damages to the entity."  *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208 (2007) (emphasis added).  Failure to timely present a claim to a public entity bars a plaintiff from filing a lawsuit against that entity.  *Bodde*, 32 Cal. 4th at 1239.

"Timely claim presentation is not merely a procedural requirement."  *Shirk*, 42 Cal. 4th at 209.  The California Supreme Court has held that the submission of a tort claim is "***an element that a plaintiff is required to prove in order to prevail***."  *DiCampli-Mintz*, 55 Cal. 4th at 990 (emphasis added).  Accordingly, a plaintiff asserting a cause of action subject to the Government Claims Act "must allege either that the plaintiff complied with the claims presentation requirement, or that a recognized exception or excuse for noncompliance exists."  *Gong v. City of Rosemead*, 226 Cal. App. 4th 363, 374 (Ct. App. 2014).  If the plaintiff fails to do so, "his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action."  *Bodde*, 32 Cal. 4th at 1243.  *See Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1069 (Ct. App. 2013) (holding that "if papers filed after litigation commenced … were treated as tort claims under the Act, then a complaint could substitute as a claim, subverting the purposes of the Act.  The exception would swallow the rule.").

Moreover, under California law, a plaintiff cannot cure their failure to comply with the Government Claims Act by filing a claim after suit has been initiated.  *Le Mere v. Los Angeles Unified School Dist.*, 35 Cal. App. 5th 237, 246-47 (Ct. App. 2019); *see also Lowry v. Port San Luis Harbor*, No. 45, 2020 WL 6192949, at *10 (Cal. Ct. App. Oct. 22, 2020).  Therefore, as a matter of law, Plaintiffs cannot succeed on their newly plead Bane Act claim.

8

Third, even if Plaintiffs had a viable Bane Act claim—which they do not—for the reasons set forth below, it would not entitle them to a preliminary injunction. Specifically, a Bane Act claim requires more affirmative proof than a claim under Section 1983. *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (holding the Bane Act imposes the additional requirement of specific intent beyond a filing of a constitutional violation because its language includes "threat, intimidation or coercion," words which connote an element of intent). Here, Plaintiffs have not offered any evidence of the violation of their rights, much less evidence of any improper intent by Defendants.

Moreover, a claim under the Bane Act is subject to various state statutes and immunities, which preclude Plaintiffs' claim. *See* Cal. Civ. Code § 3423 ("An injunction may not be granted: … (d) To prevent the execution of a public statute, by officers of the law, for the public benefit"); *see Sundance Saloon, Inc. v. City of San Diego*, 213 Cal. App. 3d 807, 812 (Ct. App. 1989) (In general a preliminary injunction may not be issued "[t]o prevent the execution of a public statute, by officers of the law, for the public benefit" or "[t]o prevent the exercise of a public or private office, in a lawful manner, by the person in possession."). Under state law, "trial courts should be extremely cautious… to enjoin law enforcement officials enforcing an ordinance obviously approved and adopted by duly elected representatives of the people for the purpose of promoting and protecting public morality *prior to a trial on the merits.*"). *City of Santa Monica v. Superior Court,* 231 Cal. App. 2d 223, 226 (Ct. App. 1964); *Cohen v. Board of Supervisors*, 178 Cal. App. 3d 447, 453 (Ct. App. 1986). *See also*, Cal. Gov. Code § 820.2 (immunity for discretionary decisions, which would include policies regarding how to respond to mass protests).

In short, Plaintiffs have not satisfied their burden, under either federal or state law, to prove their right to a preliminary injunction.

///

9

**4.**     <u>**Plaintiffs Have Not Satisfied Their Burden Regarding A Policy Or**</u>
    <u>**Practice As Required By *Monell*, Which They All But Concede.**</u>

In response to the Court's second inquiry, Plaintiffs have failed to meet their burden under *Monell*.

    **4.1.**    **No Proof Of An Underlying Constitutional Violation.**

As an initial matter, under *Monell*, a plaintiff is required to prove an underlying violation of their Constitutional rights. Here, Plaintiffs have not proven any of their involvement in the subject protests, much less that their rights were violated and by Defendants. In fact, the standard for any such a showing is very high under these circumstances.

A claim that a law enforcement officer used unreasonable force during the course of a seizure is analyzed under the Fourth Amendment's objective reasonableness standard. *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005); *Graham v. Connor*, 490 U.S. 386, 397 (1989). When analyzing unreasonable force claims, a court's initial inquiry is whether the officer's actions were 'objectively reasonable' in light of the facts and circumstances confronting him. *Graham*, 490 at 397. A court must "consider the facts underlying an unreasonable force claim from the perspective of a reasonable officer on the scene, without regard to the arresting officer's subjective motivation for using force." *Id.* at 396-97. The reasonableness calculus must account for the fact that law enforcement officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id.* "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer ***on the scene***, rather than with the 20/20 vision of hindsight." *Id.* at 396 (emphasis added).

Here, the evidence shows that the subject protests - each presenting unique circumstances - were tense and rapidly evolving. LASD personnel were confronted with numerous protesters who refused to comply with numerous lawful orders to

cease their illegal activities and peacefully disperse from the area. Moreover, these same protesters prepared themselves, in advance, for a physical confrontation with law enforcement. Not only were they prepared defensively, but they physically attacked members of the LASD with various weapons. In addition, despite almost daily protests, as Plaintiffs tout, Defendants' evidence shows that their use of less lethal tools was extremely rare.[1] Therefore, Plaintiffs have a very difficult task to prove that their rights were violated, and on this record they clearly have not done so.

### 4.2. No Proof Of A Policy That Caused A Constitutional Violation.

But even if Plaintiffs had proven an actual violation of their Constitutional rights, they have still failed to prove a policy as required by *Monell*. Plaintiffs have not referred the Court to any official policy that in fact caused a violation of any of the Plaintiffs' rights. *Monell*, 436 U.S. at 694. In fact, the only admissible evidence, which is undisputed, is that it is the LASD's policy to only use reasonable force in accordance with Constitutional standards. (Lewis Decl. ¶ 35 filed with Defendants' Opposition to TRO.)

### 4.3. No Proof Of A Practice That Caused A Constitutional Violation.

Plaintiffs have also not met their burden to prove the existence of a practice that caused the violation of their rights. *Monell*, 436 U.S. at 694. *Monell* liability based on practice must be "persistent and widespread… permanent and well-settled [and] deeply imbedded." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970) (holding the refusal of service at a restaurant violates Section 1983 if it is a practice that has "the force of law by virtue of the persistent practices of state officials," "not simply a practice that reflects longstanding social habits"). Therefore, a Section

---

[1] Close examination of Plaintiffs' evidence, as outlined in Defendants' Evidentiary Objections, shows it is largely based on speculation and unsupported conclusions.

1983 plaintiff cannot recover under a practice theory by simply producing evidence
of isolated incidents of misconduct. *City of Oklahoma City v. Tuttle*, 471 U.S. 808,
823–24 (1985). *See also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (holding
that isolated or sporadic incidents are insufficient to establish a practice), *cert.
denied*, 117 S. Ct. 1249 (1997); *Meehan v. County of Los Angeles*, 856 F.2d 102,
107 (9th Cir. 1988) (holding that two incidents were insufficient to establish a
practice); *Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir. 1986) (holding that 12
prior incidents were insufficient to establish a practice), *abrogated on other grounds
by Harvey v. Blake*, 913 F.2d 226 (5th Cir. 1990); *Henderson v. City & County of
San Francisco*, 2006 WL 3507944, at *11 (N.D. Cal. Dec. 1, 2006) (holding that six
prior incidents were insufficient to establish a practice).

     Here, Plaintiffs have failed to show a "persistent and widespread" practice of
the LASD misusing less lethal tools because, even if anything Plaintiffs claimed was
true (which the evidence shows otherwise), they have only cited to five prior
incidents in the 150 year history of the LASD (Lewis Suppl. Decl., ¶ 2). *Adickes*,
398 U.S. at 167-68; FAC ¶ 3).  In fact, since its inception in 2007, prior to the end of
May 2020, the Sheriff's Response Team ("SRT") (the unit that responded to the
incidents that give rise to Plaintiffs' allegations) had only deployed less lethal tools
once.  (Lewis Decl. at ¶ 21 filed in Opposition to TRO).

     The case that Plaintiffs rely on to assert that two incidents are sufficient to
prove a practice, *Mood v. City of Costa Mesa*, No. SACV15-1154-SVW(KK), 2016
WL 6902109, is a non-binding, not reported, report and recommendation from a
magistrate judge on a motion to dismiss.  (Plaintiffs' Supp. Opp. At 15:22-8).  *Mood*
is clearly distinguishable as Plaintiffs' Application is not a motion to dismiss (where
facts must be taken as true) or even a motion for summary judgment (where all
inferences are in favor of the non-moving party). *Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007); *Adickes*, 398 U.S. at 157.  This is a motion for an
extraordinary and drastic remedy where Plaintiffs carry a high evidentiary burden

and there are numerous disputed evidentiary issues. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (a preliminary injunction is an extraordinary and drastic remedy). A preliminary injunction must not be granted unless the Plaintiffs, "by a clear showing," carries the burden of proof and persuasion. *Id.*

Moreover, "allegations… drawn only from actions directed against Plaintiff… is not an allegation of a generally-applicable policy," and therefore does not satisfy *Monell*. *Trevino*, 99 F.3d at 919–20 (finding that even when viewing the plaintiff's evidence in the light most favorable to her, the undisputed evidence did not establish a "persistent and widespread" practice since she only relied on actions directed against her and did not provide evidence of wrongful acts that occurred prior to the events that lead to her lawsuit). Thus, because Plaintiffs only rely on events that they allege give rise to their claims, they have failed to make the required showing of a practice under *Monell*.

### 4.4. There Is No Proof Of Ratification Of The Violation Of Plaintiffs' Constitutional Rights.

Lastly, Plaintiffs' assertion that Sheriff Villanueva somehow ratified the violation of their rights is entirely without merit. In order to establish liability based on a theory of ratification, a plaintiff must establish that a policymaker knew of the alleged conduct, knew it was wrong, and thereafter approved it. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1998). While "a single decision by a municipal policymaker may be sufficient to trigger Section 1983 liability under *Monell*, even though the decision is not intended to govern future situations", there must, however, be evidence of a conscious, affirmative choice to condone conduct that the policymaker knows to be unlawful. *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) (*citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)).

Here, Plaintiffs' assertion that Sherriff Villanueva ratified the violation of their rights is without any evidentiary support. Nowhere have Plaintiffs satisfied their burden that the Sheriff knew of the incident alleged by Plaintiffs, or of any

13

1    conduct, much less wrongful conduct, that he should have repudiated.  *See Gillette*,

2    979 F.2d at 1347-8 (holding that a city manager's inaction and decision not to

3    countermand a fire chief's final decision to terminate the plaintiff did not amount to

4    ratification of such conduct).  In fact, the only personal conduct of the Sheriff

5    alleged (but not proven) by Plaintiffs comes from inadmissible news reports that,

6    even if they are assumed to be accurate (and there is no basis for doing so), simply

7    reflect that the Sheriff supports peaceful protests and believes that members of his

8    Department may defend themselves against assault.

9    **5.    Any Injunctive Relief Entered At This Stage Of The Proceedings Can**

10   **Only Apply To The Named Plaintiffs.**

11   In response to the Court's third inquiry, this Court cited the seminal case on

12   the subject, *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727-8 (9th Cir. 1983), where the

13   Ninth Circuit unambiguously held that any pre-class certification injunction can

14   only inure to the benefit of the named plaintiffs.  The court reasoned that granting

15   injunctive relief absent class certification would be overly broad because it

16   determines the rights of persons not before the court.  *Id*.  Furthermore, because

17   Federal Rule of Civil Procedure, Rule 65(d) states that an injunction binds only

18   "the parties to the action, their officers, agents, servants, employees, and

19   attorneys, and ... those persons in active concert or participation with them who

20   receive actual notice of the order...." the *Zepeda* court concluded that "the district

21   court must, therefore, tailor the injunction to affect only those persons over which

22   it has power."  *Id*.  The court only has power over "individual plaintiffs unless the

23   district judge certifies a class of plaintiffs."  *Id*.

24   Here, since the Court has not certified a plaintiff class, the Court, like the

25   court in *Zepeda*, only has power over the individual named Plaintiffs.  Therefore,

26   an injunction must be limited to only the Plaintiffs.

27   ///

28   ///

14

**5. 1.  Plaintiffs' Reliance On *Easyriders* Is Misplaced Because, Unlike *Zepeda*, It Does Not Apply To Preliminary Injunctions.**

Plaintiffs' reliance on *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) (quoting *Bresgal v. Brock*, 843 F.2d 1163, 1169 (9th Cir. 1987)) is misplaced. *Easyriders* only involved a permanent injunction, not a preliminary injunction, which is the issue here. Also, *Bresgal*, the case upon which *Easyriders* relied for affirming a permanent injunction in favor of non-parties, distinguished itself from *Zepeda* stating, "[*Zepeda*] concerned a preliminary injunction, and is limited to that situation." *Bresgal*, 843 F.2d at 1169. The *Bresgal* court explained that its holding only applied to declaratory judgments because, in the case of a preliminary injunction, "the trial court nor the court of appeals had ruled on substantive issues in the case, but had only determined that the plaintiff had a "fair chance" of prevailing on the merits." *Id.*[2]

///

///

///

///

///

---

[2] Equally unpersuasive are the cases Plaintiffs rely on that cite *Easyriders, Lavan v. City of Los Angeles*, 797 F. Supp. 2d 1005 (C.D. Cal. 2011), *Justin v. City of Los Angeles*, Case No. CV0012352LGBAIJX (C.D. Cal. 2000), and *Davis v. Astrue*, 874 F. Supp. 2d 856 (N.D. Cal. 2012) (Plaintiffs' Supp. Opp. at 19:18-27; 20:1-20). As district court rulings, none of them are binding on this Court. Also, none of them address the distinction between *Zepeda* and *Easyriders* (relying upon *Bresgal*), and instead solely rely upon *Easyriders*, which as stated above, is inapplicable to preliminary injunctions. Lastly, Plaintiffs rely on *Nak Kim Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1164 (C.D. Cal. 2018), another non-binding district court case, that cites to an unpublished Ninth Circuit opinion (*Just Film, Inc. v. Merchant Services, Inc.*, 474 Fed. Apprx. 493 (9th Cir. 2012)) that analyzed *Zepeda* in one sentence without reference to *Easyriders* or *Bresgal*.

15

1  Therefore, because Plaintiffs' Application is for a preliminary injunction,

2  and there has been no class certification, *Zepeda* controls and any injunction can

3  only apply to the named Plaintiffs.

4      **5.2.  Plaintiffs Have Not Proven Their Standing For A Preliminary**

5          **Injunction.**

6      "Those who seek to invoke the jurisdiction of the federal courts must

7  satisfy the threshold requirement imposed by Article III of the Constitution by

8  alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S.

9  95, 101 (1982).  A plaintiff "must show that he has sustained or is immediately in

10  danger of sustaining some direct injury as the result of the challenged official

11  conduct and the injury or threat of injury must be both real and immediate…" *Id.*

12  at 102.  In *Lyons*, the Supreme Court held that the plaintiff's assertion that he

13  would be illegally placed into a chokehold again did not establish a live case or

14  controversy because the prospect of future injury rested on plaintiff's anticipation

15  or speculation of violating lawful criminal statutes. *Id.* at 102-4.

16      Here, Plaintiffs have not established standing to bring a claim for injunctive

17  relief.  First, as highlighted above, the immediate danger argument is belied by

18  the passage of time with no continued use of the alleged indiscriminate less lethal

19  tools.  Further, Plaintiffs have not provided any evidence of an injury or

20  immediate threat of injury to themselves.  Not one named Plaintiff has submitted

21  a declaration or evidence in support of their request for a preliminary injunction.

22  Plaintiffs have relied exclusively on declarations of others to prop up their

23  arguments for injunctive relief.  Second, Plaintiffs' standing is dependent on

24  whether they were likely to suffer a future injury by the LASD.  Like the

25  unsuccessful plaintiff in *Lyons*, here Plaintiffs have not shown an injury or threat

26  of injury that is real and immediate, but rely on an unproven assumption that they

27  anticipate or speculate such future injury by the LASD.

28  ///

16

**6.** **Defendants Agree With Plaintiffs That No Further Discovery Is Required And This Court Should Rule On The Current Record.**

With respect to the fourth issue framed by the Court Order, Plaintiffs contend that no additional discovery is required prior to the adjudication of their Application. *See* Plaintiffs' Supp. Brief at 2:6, 21:1-22. Defendants agree with Plaintiffs, and given the two-rounds of briefing and the passage of a month since the Application was filed, Defendants respectfully request that the Court rule on the present record.

**7.** **Conclusion.**

For the reasons set forth above, Defendants respectfully request that Plaintiffs' Application for a preliminary injunction be denied.

Dated: October 23, 2020                    LAWRENCE BEACH ALLEN & CHOI, PC


                                           By _____/s/  Paul B. Beach_____
                                                Paul B. Beach
                                                Attorneys for Defendants
                                                County of Los Angeles and
                                                Sheriff Alex Villanueva

BERG\Opp Suppl Briefing re Prelim Injunction