PAUL B. BEACH, State Bar No. 166265
RAYMOND W. SAKAI, State Bar No. 193507
rsakai@lbaclaw.com
DAISY SANCHEZ, State Bar No. 334090
dsanchez@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California  91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants
County of Los Angeles and Sheriff Alex Villanueva

Jorge Gonzalez SBN 100799
A PROFESSIONAL CORPORATION
2485 Huntington Dr., Ste. 238
San Marino, CA 91108-2622
t. 626-328-3081
e. jgonzalezlawoffice@gmail.com

Carolyn Y. Park SBN 229754
LAW OFFICE OF CAROLYN PARK
595 Lincoln Ave., SUITE 200
Pasadena, CA 91103
t. 213-290-0055
e. carolynyoungpark@gmail.com

Paul Hoffman SBN 71244
Michael D. Seplow SBN 150183
Aidan C. McGlaze SBN 277270
Kristina A. Harootun SBN 308718
John Washington SBN 315991
SCHONBRUN SEPLOW HARRIS,
HOFFMAN & ZELDES LLP
11543 W. Olympic Blvd.
Los Angeles, California 90064
t. 310-396-0731; f. 310 399-7040
e. hoffpaul@aol.com
e. mseplow@sshhzlaw.com
e. amcglaze@sshhzlaw.com
e. kharootun@sshhzlaw.com
e. jwashington@sshhhlaw.com

Arnoldo Casillas SBN 158519
Denisse O. Gastélum SBN 282771
CASILLAS & ASSOCIATES
3777 Long Beach Blvd., 3RD FLO,
Long Beach, CA 90807
t. 323-725-0350
e. acasillas@casillaslegal.com
e. dgastelum@casillaslegal.com

Morgan E. Ricketts SBN 268892
RICKETTS LAW
540 El Dorado Street, Ste. 202
Pasadena, CA 91101
t. 213-995-3935
e. morgan@morganricketts.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIZIA BERG, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a municipal entity, et al.,<br><br>Defendants. | Case No. 2:20-cv-07870-DMG-PD<br><br>Honorable Patricia Donahue<br><br>**JOINT REPORT RE PRELIMINARY INJUNCTION; DECLARATION OF RAYMOND W. SAKAI** |

1    TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR

2  ATTORNEYS OF RECORD:

3    Per the Court's May 28, 2021 Order (Dkt. #54) and the June 11, 2021

4  Order (Dkt. #56) continuing the Joint Status Report, the Parties submit their Joint

5  Status Report regarding the preliminary injunction language and updated Rule

6  26(f) Report regarding pretrial and trial dates.

7

8  Dated:  June 21, 2021                           JORGE GONZALEZ
                                                    A Professional Corporation
9

10                                                  By ___/s/ Jorge Gonzalez_____
                                                        Jorge Gonzalez
11

12                                                      Michael Seplow
13                                                      SCHONBRUN SEPLOW HARRIS
                                                        HOFFMAN & ZELDES LLP
14

15                                                      Carolyn Y. Park
                                                        LAW OFFICE OF CAROLYN PARK
16

17                                                      Arnoldo Casillas
18                                                      Denisse O. Gastélum
                                                        CASILLAS & ASSOCIATES
19

20                                                      Morgan E. Ricketts
                                                        RICKETTS LAW
21

22                                                      Attorneys for Plaintiffs

23

24

25

26  ///

27  ///

28  ///

BERG\Jt Status Report re Injunction

1   Dated:  June 21, 2021                    LAWRENCE BEACH ALLEN & CHOI, PC

2

3                                            By _____/s/  Raymond W. Sakai_____

4                                                   Paul B. Beach

5                                                   Raymond W. Sakai[1]
                                                    Attorneys for Defendants
6                                                   County of Los Angeles and
                                                    Sheriff Alex Villanueva
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____
[1] As the filer of this Joint Report, I attest that Jorge Gonzalez concurs in its
28   contents and has authorized its filing.

3

**JOINT REPORT**

As a result of the meet and confer, the Parties have narrowed the issues as to the preliminary injunction language.  Attached as Exhibits "A" and "B" are Plaintiffs and Defendants' proposed preliminary injunction language, respectively.  Below are the Parties' separate statements regarding the disputed language.

Additionally, the Parties have agreed on proposed updated Rule 26(f) Report pretrial and trial dates, which are attached as Exhibit "C."

## I.   Plaintiffs' Statement

Plaintiffs briefly note the points of disagreement after the parties' meet and confer.  It is noted that large portions of the language are acceptable to both parties, but Plaintiffs believe certain language will be necessary to enforce compliance with both the letter and the spirit of the preliminary injunction.  Plaintiffs address the differences as follows:

**1.a** – Defendants insist on less specific language that leaves more discretion for the use of less-lethal projectiles against individuals posing an actual or imminent risk of harm. In particular, Defendants refuse to aim such projectiles in a manner to minimize the risk of permanent injury.  This goes to the core of what Plaintiffs have complained of, that Defendants have used less lethal munitions in a way that unnecessarily inflicts serious injuries.  Plaintiff's evidence is rife with instances of protesters being injured severely, and in many instances it appears purposeful.

**1.b** – Plaintiffs want the language regarding confining the targeting of individuals to be highly directive, so that deputies do everything they can to avoid striking non-threatening individuals.  Defendants refuse to deliberately aim non-target-specific projectiles (such as tear gas canisters and flash-bang grenades) to avoid striking individuals.  Their preferred language, which only prohibits

BERG\Jt Status Report re Injunction

"deliberate" aiming at individuals, creates an enormous loophole for "accidental" targeting.  Plaintiffs contend that, when such projectiles are deployed, they must be aimed to avoid striking individuals.

**1.c** – Plaintiffs urge the Court to require the LASD to issue warnings prior to the use of less-lethal force against protestors.  This language does not contradict the earlier paragraphs, it just makes clear that warnings are necessary, and that once given, protesters must be given a reasonable opportunity to comply with orders to disperse and a reasonable pathway for them to leave and avoid being subjected to said levels of force.  Deputies will still be able to use less lethal munitions if "reasonable, proportionate, and if targeted use is necessary" for their defense.  The example cited of a person getting ready to throw a Molotov cocktail is absurd.  Waiting to use less lethal munitions until an individual has thrown such a device is not preventative or defensive, it becomes punitive.  Plaintiff's proposals do not suggest that is preferred.

**2.c** – Plaintiffs contend that the LASD should not only provide warnings prior to the use of less-lethal force, but must also provide a reasonable manner in which the crowd can disperse.  As the Court knows, protesters have been "kettled" in recent protests such that there is no viable way to disperse. Defendants' arguments in favor of omitting this language is the type of manipulation of the orders and the law that Plaintiffs hope to avoid.  One wonders what Defendants gain by not including such language.

**3** – Plaintiffs urge the Court to require the LASD to file a report documenting each use of less-lethal force against protesters, explaining the circumstances and justification for the use of such force, including whether any injuries were inflicted.  Reporting requirements when certain uses of force are utilized are standard in many restraining orders and injunctions, as it is the main way to hold the parties accountable.  Plaintiffs have already received reports of the use of pepper balls in a demonstration on June 12 that would not be in

BERG\Jt Status Report re Injunction

compliance with this order.  Requiring reports, especially of the use of less lethal munitions and of the purported justification for their use will increase pressure on the Department to avoid and prevent accidental or unintended violations of these orders.  They will be used to monitor compliance with the Court's orders.

Plaintiffs are concerned that deputies are targeting individuals who come close to or touch the wire barricade, without evidence that they are trying to defeat or overcome it.  Unless individuals try to remove, surpass, or defeat the barricade in some fashion, being close to or touching it should not be considered as a threat to deputies, without more.```

Finally, Plaintiffs believe the gist of the preliminary injunction issued here will be directed at the units specifically employed during demonstrations.  The order is specific to the use of less lethal munitions against people lawfully engaged in protests, and there is no reason why those units cannot be notified and informed of the order within 15 days.  Plaintiffs are mainly concerned that the order be issued against said units, and notifying and informing ordinary patrol deputies of the order can take longer.

## II.   Defendants' Statement

Defendants respectfully submit their version of the proposed preliminary injunction, largely following the Court's proposed language.  (Exh. "B.")  Defendants have collaboratively worked with Plaintiffs to reach compromises on most of the proposed language, leaving very few issues for the Court.  Of the remaining differences, Defendants' version should be adopted as it conforms more closely to the Court's proposed language, embodying the interests of protection of peaceful, lawful protesters' rights, the safety of LASD personnel, and the protection of public and private property from destruction and looting, which was well-documented and televised during some of last summer's protests.  Further, various agreed-to minor edits were made to certain words to more

6

accurately reflect the subject discussed and better track the vernacular regularly used and understood by law enforcement.

    A.    **Paragraph 1 – Less-Lethal Munitions.**

        1.     **Parties agree to the revised paragraph.**

        **1(a).   Plaintiffs' addition of "*target-specific projectiles shall be aimed in such a manner to minimize the risk of permanent or lethal injury.*"**

Defendants object to this new language as vague, ambiguous and unnecessary.  There are no allegations that Defendants aimed their target-specific less-lethal munitions in a manner to permanently or lethally injury anyone. Further, there was no briefing on this issue.

        **1(b)  Plaintiffs' addition of "*shall be deliberately aimed to avoid striking individuals*".**

Defendants object to insertion of this new language as vague, ambiguous, and unnecessary.  Defendants' version adopts the Court's version: "but shall not be deliberately aimed to strike individuals," which is clearer.  The law mandates clarity with respect to injunctive relief (Fed. Rules of Civ. Proc. 65(d)(1)) because a violation could result in a contempt proceeding.  *U.S. v. Holtzman,* 762 F.2d 720, 726 (9th Cir.1985).

        **1(c)  Plaintiffs' new warning language.**

Defendants object to the insertion of this new paragraph as, on the one hand, it is unnecessary as it is largely redundant of the warning language of Paragraph 2 and, on the other hand, is an unjustified attempt to negate the "when feasible" language of paragraph 2 by making the warning requirement mandatory in all situations.  Such new language would contradict the "imminent threats of harm, violence" language agreed to in paragraphs 1 and 1(a).

Plaintiffs have provided no citation to authority prohibiting law enforcement from taking reasonable steps to prevent imminent violence.  A

classic example would be someone who intends to throw a Molotov cocktail at a building: reasonable force may be used as the criminal is trying to light the explosive, the police do not need to wait until the device is thrown, hits a building and sets it afire.

Further, this language would mandate the perverse result of barring use of less-lethal munitions to protect one protester from another protester's physical assault (for instance, if one protester attempts to stab another) if no declaration of unlawful assemble has been given.

**B.   <u>Paragraph 2 – Warnings.</u>**

    **2.   <u>Parties agree to the revised paragraph.</u>**

    **2(a)   <u>Parties agree to this revised paragraph.</u>**

    **2(b)   <u>Parties agree to this revised paragraph.</u>**

    **2(c)   <u>Plaintiffs' new dispersal order/warning information requirement.</u>**

Defendants omit and oppose any reference to being mandated to provide protestors who have been lawfully ordered to disburse with avenues to do so, for multiple reasons. Most importantly, there was neither evidence nor argument before this Court that Defendants have ever denied any protesters avenues to disburse. This is corroborated by the Court's proposed ruling, which contained no such discussion. In fact, it appears that Plaintiffs have borrowed this new term from other litigation by other parties against the Los Angeles Police Department, which was accused of surrounding protesters, then ordering them to disburse, but no such option was feasible. *Black Lives Matter Los Angeles, et al. v. City of Los Angeles, et al.*, 20-CV-5027-CBM, (C.D. Cal. May 10, 2021). Here, Defendants recognize that if they give a disbursal order that the persons who are the subject of the order need a means to disburse. Videos submitted in relation to this Motion contain such announcements by the LASD to protesters to disburse in various directions. However, it is hornbook law that orders for injunctive relief

8

1   are exceptional (*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365,

2   367, 172 L. Ed. 2d 249 (2008) ("A preliminary injunction is an extraordinary

3   remedy never awarded as of right.")), and are to be narrowly tailored to cure an

4   actual problem, not rendered prophylactically.  *Holtzman,* 762 F.2d at 726.

5           **C.**    **Plaintiffs' New Paragraph 3 – Reporting Requirement.**

6         Defendants object to any affirmative reporting requirement about their use

7   of less-lethal munitions.  Again, in the allegations, evidence, and briefing before

8   this Court, there was no assertion that Defendants do not document their uses of

9   less-lethal munitions.  In fact, the only admissible evidence in the expedited

10   briefing was to the contrary.

11         As provided to Plaintiffs and publicly available, the LASD's policies

12   already require documentation when they use less-lethal munitions.  Moreover, in

13   the future, if the Court deems it necessary, Defendants can submit them to the

14   Court for its inspection.

15         Further, Plaintiffs' language implicates medical information covered by

16   HIPPA (i.e., "injuries") and requires the LASD to compel responses from third-

17   parties injured that implicate privacy rights (i.e., "biographical information").

18           **D.**    **30-Day Timeline for Implementation of the Injunction.**

19         During the meet and confer process, due to the sheer size of the LASD,

20   including over eight thousand sworn personnel that this injunction will apply to,

21   Defendants requested the reasonable accommodation of 60 days from the date of

22   entry for it to become effective.  Through the meet and confer process, the Parties

23   were able to narrow the timeframe, but not agree on an actual amount of days.  In

24   the spirit of compromise, Defendants lowered the requested time to 30 days and

25   Plaintiff agreed to 15 days.  (*See* Sakai Decl., ¶¶ 2-3.)  The Parties present this

26   issue for the Court's determination.

27         Defendants respectfully request that the Court allow 30 days from the time

28   it enters the injunction for it to take effect.  The LASD is the largest Sheriff's

BERG\Jt Status Report re Injunction

Department in the nation, consisting of nearly eighteen thousand employees, including over eight thousand sworn personnel who this injunction would cover. It is a complex task to distribute and brief personnel throughout the LASD's jurisdiction, in numerous units, assignment, bureaus and working varying schedules.  This amount of time to distribute the injunction is reasonable in light of the vast number of personnel that must be informed and the lack of allegations of similar incidents have occurred over the eight months this Motion has been pending.  Without reasonable time to distribute and inform personnel of the injunction, the LASD would be severely prejudiced should an unforeseen incident arise prior to personnel being apprised of the terms of the injunction.

E.    **Issues re Interpretation of the Injunction Regarding Protesters attempting to defeat a LASD barrier.**

A common situation that occurred during last year's protests, and likely to reoccur is some protesters attempting to defeat the LASD's self-standing large, yellow coiled wire that can be quickly set up, moved, and taken down, which has been referred to as a "slinky."  In the interest of clarity, Defendants' position is that the proposed language allows limited, reasonable, and proportional use of less-lethal munitions for protection of the barrier wire, or any similar barrier, against attempts to defeat, destroy, or move them.  During the meet and confer conference, Plaintiffs' counsel opined that such use would be barred under the injunction.

The repeated scenario is at protests, Defendants regularly set up one or more barriers (which could include, but not be limited to, barrier wire) between a protest and a location that the Defendants deem need protection (e.g., a Sheriff's station) as well as to provide critical distance between protesters and SRT.

Distance is critical to safety – for the protesters and law enforcement.  It protects protesters by preventing close physical confrontations with law enforcement, where, when combined with violent protesters, force options are

10

limited, including the use of deadly force in situations covered by *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor*, 490 U.S. (1989).  Such situations could unfortunately result in the injury of non-violent protesters due to their close proximity to violent protesters.

It gives law enforcement, as well as the location being secured, protection against physical assaults by violent protesters.  It also gives law enforcement critical time to react to ever-changing circumstances.  It also offers modest crowd control, so that law enforcement does not become surrounded—and therefore physically vulnerable—to possible assault.

Finally, use of such reasonable time, place and manner crowd control options are common throughout the nation.  *See, e..g., Kaahumanu v. Hawaii*, 682 F.3d 789, 802-803 (9th Cir. 2012) ("[R]easonable time, place, [and] manner restrictions on speech are permissible" in a traditional public forum.") (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984)).

In this scenario, Defendants regularly make announcements to protesters, over loudspeakers, to not touch or compromise the barriers.  Unfortunately, some protesters with malicious intent, ignore the announcements and attempt to compromise, damage, or move the barriers, in violation of the lawful orders given by law enforcement.  In such circumstances, Defendants have few options.  One is limited, reasonable, and proportional use of less-lethal munitions (e.g. pepper balls or flash bangs) in the general vicinity of the unlawful behavior (i.e., not specifically targeted at one person) to try to stop the conduct, for the safety of everyone involved.

It is Defendants' understanding that such limited use of less-lethal munitions is permissible under the proposed injunction.  Alternatively, law enforcement personnel would be left with limited options, including going hands

11

on with the suspects, greatly increasing the risk of injuries to all parties, which goes directly against the purpose of this injunction.

**F.      A Preliminary Injunction is Unnecessary Based on the Record Before the Court and Passage of Time With No Similar Incidents.**

Finally, out of an abundance of caution, and for purposes of a clear record, nothing should be construed as Defendants consenting to any injunction or waiving any right to appeal and/or other review.  Defendants do not agree that any preliminary injunction is needed or justified.  This is especially so given the undisputed record in this case that the LASD's SRT has effectively operated for decades, without legal controversy, and used less-lethal munitions only once prior to the unprecedented event of the Summer of 2020.  Further, there is substantial disputed evidence about whether, at three events last year, the LASD's use of less-lethal munitions—in response to indisputable physical assaults by violent protesters—was legally permissible.  In fact, since the Parties' expedited briefing to the Court eight months ago, there have been no allegations about any further "indiscriminate" use of less lethal munitions.

**III.   Rule 26(f) Pretrial and Trial Dates**

Attached hereto as Exhibit "C" is the agreed to Joint Proposed Dates reached after the Parties meet and confer.   The Parties agree that the pretrial dates may need to be revisited depending on the outcome of Plaintiffs' motion for class certification.

Dated:  June 21, 2021                    JORGE GONZALEZ
                                         A Professional Corporation

                                         By ____/s/ Jorge Gonzalez_____

1    Jorge Gonzalez

2    Michael Seplow
3    SCHONBRUN SEPLOW HARRIS
     HOFFMAN & ZELDES LLP
4

5    Carolyn Y. Park
     LAW OFFICE OF CAROLYN PARK
6

7    Arnoldo Casillas
     Denisse O. Gastélum
8    CASILLAS & ASSOCIATES
9

10   Morgan E. Ricketts
     RICKETTS LAW
11

12   Attorneys for Plaintiffs

13

14   Dated:  June 21, 2021          LAWRENCE BEACH ALLEN & CHOI, PC

15

16
                                     By _____/s/  Raymond W. Sakai_____
17                                          Paul B. Beach
18                                          Raymond W. Sakai
                                            Attorneys for Defendants
19                                          County of Los Angeles and
                                            Sheriff Alex Villanueva
20

21

22

23

24

25

26

27

28

                               13

BERG\Jt Status Report re Injunction

## <u>DECLARATION OF RAYMOND W. SAKAI</u>

I, Raymond W. Sakai, declare as follows:

1.      I am an attorney at law duly licensed to practice before this Court and all the courts of the State of California.  I am an attorney with the law firm of Lawrence Beach Allen & Choi, PC, attorneys of record for Defendants County of Los Angeles and Sheriff Alex Villanueva in the above-entitled action.  If called upon as a witness, I could and would competently testify to the following facts as personally known to me or upon information and belief.

2.      During the meet and confer process, Defendants requested 60 days from entry of the proposed preliminary pinjunction for it to become effective based on the sheer size of the LASD and number of sworn personnel covered.

3.      While the Parties could not agree to final number of days, in the spirit of compromise, Defendants lowered the request to 30 days and Plaintiffs agreed to 15 days.


I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on June 21, 2021, at Los Angeles, California.


_____/s/ Raymond W. Sakai_____

BERG\Jt Status Report re Injunction

Exhibit "A"

Highlighted Text – Plaintiffs' Edits

1.      The Los Angeles County Sheriff's Department is hereby enjoined from using less-lethal munitions (including foam rounds, pepper balls, tear gas canisters, flash bang grenades, and stinger grenades) against any person peacefully attending a lawful protest, march, or other gathering unless reasonable, proportional, and targeted action is necessary to protect against a specific imminent threat of physical harm to deputies or identifiable others, to respond to the imminent threat of or specific acts of violence, looting, destruction of property, or to enforce a declaration of unlawful assembly dispersal order pursuant to California Penal Code Sections 407 and 409.  If reasonable, proportional, and targeted use of less-lethal munitions is necessary:

   a.      Foam rounds and any projectile designed to be target-specific shall be aimed at those individuals causing the actual or imminent threats of harm, violence, looting, or destruction of property and shall not be indiscriminately fired; target-specific projectiles shall be aimed in such a manner to minimize the risk of permanent or lethal injury.

   b.      Flash bang grenades, tear gas canisters, and other less-lethal means designed to be non-target-specific may be used in the manner they were designed to be used, but shall not be deliberately aimed to strike individuals.

   c.      In the even that less-lethal weapons are used to enforce declaration of unlawful assembly and dispersal order pursuant to California Penal Code section 409, prior to the use of such weapons, audible warnings must be given and the crowd must be given a reasonable opportunity to disperse, including at least one viable pathway for protestors to leave the area.

2.      When feasible, Los Angeles County Sheriff's Department deputies shall issue warnings and/or declare an unlawful assembly before the reasonable, proportional, and targeted use of less-lethal munitions.

   a.      When warnings are feasible, they must be given and repeated by means reasonably calculated to ensure that the warnings are heard.

   b.      When warnings are given, reasonable time shall be given to comply.

   c.      When warnings are given, the assembly must be provided with a reasonable manner in which to disperse.

3.      In the event any less-lethal munitions (as listed above) are used in a demonstration, protest, or march, the Los Angeles County Sheriff's Department is ordered to file a report detailing the circumstances of the event and the reasons justifying the use of less lethal weapon.  Said report should include the date and time of said use, the location, the name and badge number of the deputy deploying said less-lethal munitions, the amount and duration of the use of said munitions, and any injuries inflicted on protestors, including biographical information of the person injured, and whether medical assistance was required.  Said report should be filed with the Court and served on all parties within 21 days of the use of force.

Exhibit "B"

1.      The Los Angeles County Sheriff's Department is hereby enjoined from using less-lethal munitions (including foam rounds, pepper balls, tear gas canisters, flash bang grenades, and stinger grenades) against any person peacefully attending a lawful protest, march, or other gathering unless reasonable, proportional, and targeted action is necessary to protect against a specific imminent threat of physical harm to deputies or identifiable others, to respond to the imminent threat of or specific acts of violence, looting, destruction of property, or to enforce a declaration of unlawful assembly dispersal order pursuant to California Penal Code Sections 407 and 409.  If reasonable, proportional, and targeted use of less-lethal munitions is necessary:

      a.      Foam rounds and any projectile designed to be target-specific shall be aimed at those individuals causing the actual or imminent threats of harm, violence, looting, or destruction of property.

      b.      Flash bang grenades, tear gas canisters, and other less-lethal means designed to be non-target-specific may be used in the manner they were designed to be used, but shall not be deliberately aimed to strike individuals.

2.      When feasible, Los Angeles County Sheriff's Department deputies shall issue warnings and/or declare an unlawful assembly before the reasonable, proportional, and targeted use of less-lethal munitions.

      a.      When warnings are feasible, they must be given and repeated by means reasonably calculated to ensure that the warnings are heard.

      b.      When warnings are given, reasonable time shall be given to comply.

Exhibit "C"

## SCHEDULE OF PRETRIAL & TRIAL DATES WORKSHEET

| **Matter** | **Prior Proposed Dates** | **Joint Proposed Dates** |
|---|---|---|
| Amended Pleadings and addition of parties cut off (hearing on motion to amend) | May 21, 2021 | August 20, 2021 |
| Deadline to file Motion for Class Certification[1] | August 20, 2021 | November 5, 2021 |
| Non-Expert Discovery Cut off (includes hearing of discovery motions) | January 11, 2022 | May 31, 2022 |
| Dispositive motion filing deadline | January 18, 2022 | June 7, 2022 |
| Initial Expert Disclosure and Report Deadline | February 22, 2022 | July 19, 2022 |
| Rebuttal Expert Disclosure and Report Deadline | March 22, 2022 | August 16, 2022 |
| Expert discovery cut off | April 5, 2022 | August 30, 2022 |
| Settlement Conference Completion Date | March 29, 2022 | August 23, 2022 |
| Motions in *Limine* Filing Deadline | April 5, 2022 | August 30, 2022 |
| Opposition to Motion in *Limine* Filing Deadline | April 12, 2022 | September 6, 2022 |
| Pre-trial Conference | April 26, 2022 at 2:00 pm | September 13, 2022 |
| Trial | May 24, 2022 at 8:30 a.m. | October 11, 2022 |

[1]The parties propose that each side be given at least three weeks to oppose any dispositive motion or motion of class certification and that the parties be given two weeks to file their reply papers for such motions.