PAUL B. BEACH, State Bar No. 166265
RAYMOND W. SAKAI, State Bar No. 193507
rsakai@lbaclaw.com
SHAWYANE EMADI, State Bar No. 352292
Semadi@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
150 South Los Robles Avenue, Suite 660
Pasadena, California 91101
Telephone No. (818) 545-1925

Attorneys for Defendants
County of Los Angeles and Sheriff Alex Villanueva

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIZIA BERG, et al., | Case No. 2:20-cv-07870-DMG-PD |
| Plaintiffs, | Honorable Dolly M. Gee |
| vs. | |
| COUNTY OF LOS ANGELES, etc., et al., | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Defendants. | *[Declarations and Exhibits filed concurrently herewith]* |
| | Date:      December 12, 2025 |
| | Time:      9:30 a.m. |
| | Courtroom: 8C |

1

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Defendants County of Los Angeles and Sheriff Alex Villanueva (collectively, "Defendants") hereby submit the following Memorandum of Points and Authorities in opposition to Plaintiffs' renewed motion for class certification. Declarations and exhibits are filed concurrently herewith, and the prior briefing in opposition to class certification (Doc. 111, 111-1, 111-2, 111-3, 111-4, 111-5, 112, 112-1).

Dated:  October 10, 2025          LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/  Raymond W. Sakai_____
        Raymond W. Sakai
        Shawyane Emadi
        Attorneys for Defendants
        County of Los Angeles and
        Sheriff Alex Villanueva

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES.........................................1

    1.    INTRODUCTION. .................................................................1

    2.    LEGAL STANDARD.............................................................2

    3.    LEGAL ARGUMENTS..........................................................3

        3.1    Plaintiffs' proposed Arrest Class fails. ....................................4

            3.1.1  Plaintiffs fails to carry their burden to establish numerosity. ........................................................................4

            3.1.2  Plaintiffs' Arrest Class lacks sufficient commonality.........................................................................4

            3.1.3  Plaintiffs fails to carry their burden to establish typicality..........................................................................7

            3.1.4  Common Questions Do Not Predominate the Arrest Class. ........................................................................8

            3.1.5  Certification of the Arrest Class is not the Superior Method of Resolving Plaintiffs' Claims..........8

        3.2    The Chemical Agents Class Fails. ..........................................11

            3.2.1  Plaintiffs' Chemical Agents Class Lacks Sufficient Numerosity. ................................................11

            3.2.2  Plaintiffs' Chemical Agents Class lacks sufficient commonality..............................................11

            3.2.3  The Chemical Agents Class Lacks the Necessary Typicality..................................................................13

            3.2.4  Common Questions Do Not Predominate the Chemical Agents Class..................................................13

    4.0    The proposed injunctive relief class fails to satisfy the requirements of...............................................................15

Rule 23(a) and (b)...........................................................................................15

    4.1.    Plaintiffs do not satisfy the Article III case or controversy requirement, including lack of standing and showing of irreparable injury. ...............................................16

    4.2.    Plaintiffs' injunctive relief class fails to satisfy the Rule 23(a) requirements. ..............................................18

        4.2.1  Plaintiffs have failed to state what questions are common to the class and how they will present evidence about those questions on a class-wide basis. ...........................................................18

        4.2.2  Typicality does not exist as the class Plaintiffs' claims are not typical of all class members...................20

        4.2.3  Adequacy does not exist as the class contains members with divergent interests................................20

    4.3.    As there is no indivisible remedy, the injunctive relief class fails under Rule 23(b)(2) since a single injunction would not provide relief to each member of the class............20

5.    CONCLUSION..........................................................................22

CERTIFICATE OF COMPLIANCE................................................................24

TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Amchem Products, Inc. v. Windsor,*
  *521 U.S. 591 (1997)*.................................................................................................8

*Anti Police-Terror Project v. City of Oakland,*
  2021 LEXIS 200363 (N.D. Cal. Oct. 18, 2021)...................................14, 15, 24

*B.K. v. Snyder,*
  922 F.3d 957 (9th Cir. 2019) ...................................................................23

*Bates v. UPS,*
  511 F.3d 974 (9th Cir. 2007) ...................................................................17

*Black Lives Matter Los Angeles v. City of Los Angeles,*
  113 F.4th 1249 (9th Cir. 2024)...........................................................passim

*Briseno v. ConAgra Foods, Inc.,*
  844 F.3d 1121 (9th Cir. 2017).................................................................10

*Chapman v. Pier 1 Imps. (U.S.), Inc.,*
  631 F.3d 939 (9th Cir. 2011) ...................................................................17

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) .................................................................17, 18, 20

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .................................................................................19

*Don't Shoot Portland v. City of Portland,*
  2022 U.S. Dist. LEXIS 122693, 2022 WL 2700307 (D. Or. July 12,
  2022)....................................................................................................24

*Edwards v. First Am. Corp.,*
  79998 F.3d 1172 (9th Cir. 2015).................................................................8

*Ellis v. Costco Corp.,*
  657 F.3d 970 (9th Cir. 2011) .....................................................................5

*Garcia v. Lift,*
  2021 LEXIS 681995 (E.D. Cal. Apr. 6, 2011)..............................................5

*Hernandez v. City of San Jose*,
  2019 U.S. Dist. LEXIS 159293 (N.D. Cal. Sep. 17, 2019)..............................19

*Hodgers-Durgin v. De La Vina*,
  199 F.3d 1037 (9th Cir. 1999) ....................................................19, 20

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................18

*McGrane v. Howrey, LLP*, No. 14-cv-05111-JD, 2015 U.S. Dist. LEXIS
  141946 (N.D. Cal. Oct. 19, 2015) ...................................................16

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022).........................................................2

*Stewart v. Luna*,
  2025 LEXIS 153777 (Aug. 6, 2025) ...........................................3, 5, 8

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...........................................................passim

*Wolin v. Jaguar Land Rover N. Am.,
  LLC*, 617 F.3d 1168 (9th Cir. 2010)................................................11

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001).........................................9, 10, 11, 12

**Statutes**

California Penal Code § 830.............................................................20

California Penal Code § 835..............................................................5

California Penal Code § 851.............................................................22

**Rules**

Federal Rules of Civil Procedure, Rule 23 ...................................9, 15, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.    INTRODUCTION.

Despite the Ninth Circuit's clear directive in *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249 (9th Cir. 2024), requiring a rigorous analysis of Rule 23's prerequisites in mass-protest cases – and casting serious doubt on the viability of such class actions – Plaintiffs' renewed motion merely repackages and repeats the same theories the Ninth Circuit already rejected. Plaintiffs again ask this Court to certify sweeping damages and injunctive relief classes based on a series of protests in which they allege Defendant Los Angeles County Sheriff's Department violated their individual constitutional rights. Those claims, as discussed in *BLM*, demand individualized factual and legal determinations that cannot be resolved on a class-wide basis. Plaintiffs offer no new facts or legal theory that could sustain class certification under Rule 23(a) or (b).

The proposed Arrest and Chemical Agent classes encompass distinct events, locations, and operational decisions involving hundreds of deputies and protesters across Los Angeles County. Each putative class member's claim turns on discrete constitutional inquiries — whether a particular protester heard and disobeyed a lawful dispersal order, posed a threat, resisted arrest, was subjected to unconstitutional conditions of confinement, or was subjected to allegedly unreasonable force. These inherently individualized inquiries foreclose any finding of commonality, typicality, or predominance under Rules 23(a) and (b)(3).

Equally flawed is Plaintiffs' request that the Court simply re-adopt its prior certification of their Rule 23(b)(2) injunctive relief class without engaging in the rigorous analysis required by *BLM*. Their proposed injunction — to enjoin Defendants' alleged "illegal and unconstitutional policies, customs, and practices," and to "seal and destroy any and all records derived from Plaintiffs'

1

arrests" — fails to identify a single, indivisible class-wide injury as Rule 23(b)(2) demands. Rule 23 requires a showing that common proof will resolve each class member's claim "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs have not met that burden.

The proposed Arrest and Chemical Agent classes fail for lack of commonality, typicality, predominance, and superiority, while the proposed Injunctive Relief class fails for lack of Article III case or controversy, commonality, typicality, adequacy, and an ascertainable, indivisible remedy. The absence of any one requirement is fatal to certification. Plaintiffs' attempt to relitigate individualized constitutional encounters through sweeping class mechanisms contravenes *BLM*. The motion should be denied in its entirety.

## 2.    **LEGAL STANDARD.**

"Class actions are the 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. . . . ' Class certification is thus not to be granted lightly. To ensure that it is not, Rule 23 mandates that district courts 'rigorous[ly] analy[ze]' whether a proposed class meets various requirements." *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249 (9th Circuit 2024 (*"BLM"*) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).

A plaintiff has the burden of meeting the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). Additionally, "the proposed class must  satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*, at 345. "[T]he failure [to meet] any one of Rules 23's requirements destroys the alleged class action." *Stewart v. Luna*, 2025 LEXIS 153777, at *4 (Aug. 6, 2025).

2

## 3.    LEGAL ARGUMENTS.

Critical to the Court's analysis is the Ninth Circuit's decision in *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249 (9th Cir. 2024) (*"BLM"*).  Expressing deep skepticism about the viability of mass-protest class actions, the Ninth Circuit vacated a class certification order in a factually similar case arising from the same 2020 protests issue here . Brought by some of the same Plaintiffs' counsel, *BLM* involved class definitions virtually identical to the former classes in this action.

With respect to the direct force class, the Ninth Circuit held that a "class-wide question about whether the force used on protestors was unreasonable" is not "amenable to class treatment because the answer […] depends on what force was used, what a particular class member was doing, what other protestors may have been doing, what the officers objectively observed, and a host of other factors." *Id.* at 1260. "Put another way, it is not enough to merely raise common questions or issues to satisfy Rule 23. Rather, plaintiffs must be 'prepared to prove' there are critical questions or issues that can be resolved on a class-wide basis." *Id*.

With respect to the arrest class, the Ninth Circuit found that "individualized issues may likely overwhelm any common questions that might exist" because: (1) differing conditions on the buses plaintiffs were held on and their treatment during the same period, (2) the fact intensive inquiry necessary to establish a constitutional violation for excessively tight handcuffing, and (3) similarly detailed and individualized questions arise from the other claims related to plaintiffs' arrests. *Id.* at 1262.

With respect to *Monell* policies in the context of class certification, the Ninth Circuit stated "plaintiffs cannot certify a class by merely alleging that a policy applies class-wide – and that a common question thus exists – without showing how common evidence can be used to prov e their claims across the

3

class members." *Id.* at 1264. The court further emphasized that "plaintiffs cannot simply allege that a policy applies class-wide - they have to present evident that it does." *Id*.

### 3.1    Plaintiffs' proposed Arrest Class fails.

Plaintiffs' proposed Arrest Class is substantively identical to the Arrest and Infraction Classes vacated in *BLM*.  As the Ninth Circuit explained there, "[t]he plaintiffs argue that these individualized issues are irrelevant because every class member received an infraction, and it is unconstitutional to detain someone only to charge them with an infraction.  But 'if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence,' he may constitutionally arrest them." *BLM*, at 1262 (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). Here, Plaintiffs attempt to distinguish their Arrest Class by pointing to a purported violation of Penal Code § 853.6; however, as discussed below suffers from the same deficiencies which were found fatal to certification in *BLM*.

### 3.1.1    Plaintiffs fails to carry their burden to establish numerosity.

Plaintiffs rely solely upon the Court's previous determination regarding this issue. Motion (Mtn.) at 11:13-15. That reliance does not satisfy their evidentiary burden. *See, e.g., Garcia v. Lift*, 2021 LEXIS 681995, at *61 (E.D. Cal. Apr. 6, 2011)("the burden is on Plaintiff to establish numerosity – not for Defendant to disprove it"). Under the rigorous analysis required by *BLM*, Plaintiffs' assertions fail to meet their burden to establish numerosity.

### 3.1.2    Plaintiffs' Arrest Class lacks sufficient commonality.

Plaintiffs attempt to rehabilitate the class by limiting it to a single day and deleting their tight handcuffing claims do not change the fact that the circumstance-dependent and fact-specific nature of the constitutional violations alleged preclude a finding of commonality. "To determine whether the class can

4

be certified, courts first determinate what Plaintiffs must show to recover." *Stewart*, 2025 LEXIS 153777, at * 11 (C.D. Cal. Aug. 6, 2025) (quoting *Parsons v. Ryan*, 754 F.3d 657, 675  (9th Cir. 2014) (internal quotation marks omitted). Furthermore, "the merits of the class members' substantive claims are often highly relevant when determining whether to certify a class." *Ellis*, 657 F.3d 970, 981 (9th Cir. 2011). "What matters to class certification […] [is] the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. at 350. Plaintiffs attempt to establish commonality in several ways, all of which fail under *BLM*.

First, Plaintiffs argue there is a common issue related to alleged violations of Penal Code § 853.6. Mtn. at 12:3-8. Plaintiffs' contend Defendants violated Section 835.6 by "purporting to transport protestors for the purposes of booking, and instead holding them in buses for hours after their arrest." Mtn. at 12:13-16. Plaintiffs further provide, "[w]hether the LASD's decision to detain putative class members in this way was retaliatory, designed to punish them for their protesting against police misconduct and disincentivize them from doing so again, is a common issue." Mtn. at 13:9-13. Plaintiffs provide insufficient evidence or argument that the arrest were retaliatory. Significant to Plaintiffs' attempts to utilize Section 853.6 as a common issue for purposes of class certification is subsection (i), which contains nine exceptions, including "(7) There was a reasonable likelihood that the offense or offenses would continue or resume, or that the safety of persons or property would be imminently endangered by release of the person arrested." Pen. Code § 835.6(i)(1-9).

Each section serves as a valid basis for Plaintiffs' detention and transportation for booking prior to release. Accordingly, they require an individualized inquiry into the circumstances of each Plaintiffs' detention and the reasons in support thereof. Such inquiry defeats certification due to the

5

individualized and fact specific inquiry to determine whether Defendants violated Section 835.6 as it relates to each Plaintiff. Plaintiffs fail to address this or how such an analysis could be conducted on a class-wide basis. Further, it would be impossible to "generate common answers" that address whether Defendants violated Section 835.6. Thus, the individualized inquiry necessary to establish a violation of Section 835.6 is fatal to class certification.

Second, Plaintiffs contend a common issue exists as to "whether the length of [Plaintiffs'] detention and other common conditions violate the Fourth Amendment." Mtn. at 14: 20-21. Plaintiffs fail to discuss how the disparate conditions of confinement that Plaintiffs were subject to can be overcome or how such issues can be addressed on a class-wide basis. For instance, Plaintiffs' Arrest class calls for different legal issues (i.e., Fourth and Fourteenth Amendments). Some Plaintiffs only complain of tight flex cuffs, while others complain about conditions of confinement. (*See* Exh. D005). One who only complains of conditions of confinement cannot assert an excessive force claim, and vice versa. Similarly, members of the Chemical Agent class have unique injuries and need fact specific analysis to prove their claims. (S*ee* Exh. D006). Based on individual circumstances, some Plaintiffs may only have a Fourth Amendment claim, while some others may have a Fourteenth Amendment claim, or neither. The facts and injuries here are unique, and there can be no commonality of legal issues that represent the whole class while resolving the issues in one stroke, especially where each theory of liability requires varying standards and individual analysis.

Finally, Plaintiffs further contend that "[t]he arrest class presents the common question of whether the totality of the shared conditions – class members handcuffed in zip-ties for a prolonged time at the height of the COVID pandemic without masks or ventilation, or access to water or bathrooms – violates the First Amendment, the Fourth Amendment, the due process clause, on constitute negligence and/or retaliation against the protestors." Mtn. at 14:24-28.

6

However, the class Plaintiffs do not even meet their own criteria where each Plaintiff has a different claim. Plaintiffs do not explain how they can separate the intertwined issues of "prolonged" from "tight" handcuffing. For example, Grace Bryant and Krizia Berg were, by their own admissions, not tightly cuffed (s*ee* D005), while others claim they were.

Furthermore, even if all of the proposed Plaintiffs did have the exact complaints and common issues, how one's cuffing is considered prolonged, or what makes an LASD vehicle "crowded", or whether someone was "denied" access to bathrooms or water, are individualized and need to be adjudicated on a case-by-case basis. For example, this assumes that all class members were thirsty, had to use the restroom, or felt crowded. Also, the arrestees were placed on different buses, in different discrete sections of the buses, with different occupancy, and for different amounts of time. (Vieth Depo., Exh. D004, pp.30-31, 39-40, 115-116 & exh. [each bus contained different number of protesters, from 42 to 27]).

### 3.1.3   Plaintiffs fails to carry their burden to establish typicality.

"The test of typicality is 'whether other members have the same or similar injury, whether the actions is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Stewart*, 2025 LEXIS 153777, at \*15 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Plaintiffs rely solely upon the Court's previous determination regarding typicality. Mtn. at 11:17-20. However, Plaintiffs' renewed Arrest Class is not the same as their former Arrest Class. Significantly, Plaintiffs now incorporate purported violations of Penal Code § 853.6. Accordingly, Plaintiffs have failed to carry their burden as it relates to typicality.

### 3.1.4 Common Questions Do Not Predominate the Arrest Class.

"The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). Additionally, it "[…] tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Prods.*, 521 U.S. at 623. "Common issues predominate over individual issues when the issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015). "Showing predominance is difficult, and it regularly presents the greatest obstacle to class certification." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1198 (9th Cir. 2024).

Despite the significant challenge that establishing predominance poses, Plaintiffs only support for their position is that, "[t]he common questions identified above can be resolved for all class members and therefore Plaintiffs have shown predominance." Mtn. 15:26-28. Plaintiffs conclusory statement fails to explain why or how the purportedly common questions predominate or how they can be resolved for all class members in a single adjudication. This fails to satisfy their significant burden.

### 3.1.5 Certification of the Arrest Class is not the Superior Method of Resolving Plaintiffs' Claims.

To determine whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy, Rule 23(b)(3) provides the following four factors for a Court's consideration: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of

8

concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(B)(3). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001).

The fourth factor, which is arguably the most important factor, *see Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28 (9th Cir. 2017), analyzes the difficulties likely to be encountered in the management of a class action. The Ninth Circuit has held that "that when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1192. "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Id.*

Moreover, although the Ninth Circuit has held that Rule 23 does not impose an *independent* requirement for an administratively feasible way to identify class members, *Briseno*, 844 F.3d at 1133, the superiority prong best lends itself to consider that issue. *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 632 (9th Cir. 2020). In *Briseno*, the Ninth Circuit declined to impose a *separate* administrability requirement to assess the difficulty of identifying class members because the superiority criterion already mandates considering the likely difficulties in managing a class action. *Briseno*, 844 F.3d at 1126. Generally, courts have emphasized the importance of considering the definiteness and ascertainability of class members in their analyses for class certification. *See, e.g.*, *Lukovsky v. San Francisco*, 2006 U.S. Dist. LEXIS 3174, at *5 (N.D. Cal. Jan. 17, 2006)("'Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined

and clearly ascertainable before a class action may proceed,'" quoting *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999)).

Here, Plaintiffs' definitions are overbroad, vague, subjective, and not clear enough to identify class members. For instance, Plaintiffs' Arrest class definition calls for members who were subject to prolonged handcuffing and detention, crowded buses without proper COVID protocols, and without access to bathroom and water. Mtn. at i. This raises questions such as: (1) what is prolonged; (2) how many hours are necessary; and (3) does a member's subjective interpretation amount to a cause of action? Similar questions arise as to "crowded" buses and "denial" of access to bathrooms and water. These types of questions show that even if these classes were certified, it would be excessively challenging to determine class membership and liability. Therefore, Plaintiffs have failed to prove that their classes can be managed, and this factor favors denial of class certification.

Under the first factor, it is only when "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-91 (9th Cir. 2001)(where the amount of controversy of each plaintiff exceeded $50,000, the Ninth Circuit ***did not*** weigh in favor of class certification). Here, each Plaintiff seeks general damages (i.e., emotional distress), punitive damages, and attorneys' fees and costs, and some seek special damages (i.e., medical expenses and/or loss of income or earning capacity). (*See* Exh. D005-D006). Settlements and verdicts in similar cases have been resolved at fairly high values. *See, e.g., Bond v. City of Los Angeles, et al.*, Case No. 2:21-cv-

10

01327 ($300,000 settlement)[5]; *Jones v. City of Los Angeles*, Case No. 2:20-cv-11147 ($375,000 verdict).[6] Thus, this factor weighs against certification.

The second factor "is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits." *Zinser*, 253 F.3d at 1191. "The existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action." *Id.* Here, several other cases already exist for the putative class members of Plaintiffs' proposed classes. *See* Doc.111-1, pp.8-9. Thus, the mere existence of several cases shows that a class action is not superior, which weighs against class certification.

For the third factor, Plaintiffs similarly fail to provide evidence of why a class action would be efficient as opposed to individual suits. The contrary is true where individual cases about these same protests exist.

### 3.2    The Chemical Agents Class Fails.

#### 3.2.1    Plaintiffs' Chemical Agents Class Lacks Sufficient Numerosity.

Plaintiffs contend that there are "hundreds of persons in the Proposed Chemical Class." Mtn. at 16:23-24. Plaintiffs support their contention based on purported LASD reporting indicating the same. However, critically, Plaintiffs do not even attempt to propose a method of identifying said class members.

#### 3.2.2    Plaintiffs' Chemical Agents Class lacks sufficient commonality.

As outlined above, establishing commonality requires Plaintiffs to show that there are common questions that will drive the resolution of their claims on a

---

[5] https://www.cbsnews.com/losangeles/news/city-of-la-to-pay-protester-300000-shot-in-groin-by-lapd-rubber-bullet-in-2020/.
[6] https://www.gibsondunn.com/gibson-dunn-announces-historic-civil-rights-settlement/#:~:text=On%20March%209%2C%202023%2C%20a,in%20damages%2C%20including%20punitive%20damages.

11

class-wide basis. Plaintiffs argue that their Chemical Agents Class would be subject to the following common questions: "1) whether the LASD deployed tear gas against non-violent persons without justification and in a manner which interfered with the rights of such persons to peaceably assemble or similar activities protected by the First Amendment and California Law; 2) whether the LASD's use of chemical agents constitutes excessive force under the Fourth Amendment; and 3) whether dispersal orders or warnings were given prior to using these chemical agents." Mtn. at 18:4-10.

In an attempt to circumvent *BLM*, Plaintiffs characterize the chemical agents at issue as "not-target specific." Mtn. at 17:20. However, Plaintiffs do not explain how they escape the fact, targeted or not, their class consists of an alleged use of force. Just as the individualized *Graham v. Connor*, 490 U.S. 386, 397 (1989), analysis was fatal to the former Direct Force Class, it is equally so to the Chemical Agent Class. *See BLM*, at 1258-1260 ("Given the extensive individualized evidence necessary to prove the Direct Force Class's claims, the plaintiffs will face an uphill challenge in showing that common questions exist, let alone predominate over individual ones."); (Zagurski Decl., ¶¶ 16-20 [different chemical agents, different effect]; for totality of the circumstances: Jones Decl, ¶¶4-9 [8/25/20], McDaniel Decl, ¶5(d)-(i) [9/5/25], Coppes Decl., ¶¶7-20 [9/25/20]).

In addition, analysis of issues vary from legal observers and journalists, such as Diana Barbadillo and Vishal Singh (*see* Dkt. 160-2, Barbadillo Decl., ¶ 4 and Singh Decl., ¶ 3) as opposed to protestors. *See, e.g., Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 830 (9th Cir. 2020) (excluding the media from public fora can have particularly deleterious effect on the public interest where journalists are considered surrogates for the public). The facts and injuries here are unique, and there can be no commonality of legal issues that

12

represent the whole class while resolving the issues in one stroke, especially where each theory of liability requires varying standards and individual analysis.

### 3.2.3 The Chemical Agents Class Lacks the Necessary Typicality.

As an initial matter, Plaintiffs' contentions regarding the typicality of the Chemical Agents class lacks support in both law and fact. Plaintiffs include in their Chemical Agents Class, "CS (tear gas) and OC (pepper spray) or combinations thereof." Mtn. at 17:16-17. The differences between class members who were only struck by CS and those struck by both defeats typicality. (Zagurski Decl., ¶¶ 16-20 – OC is an individually carried cannister for close-range use, ¶20 – list of numerous chemical agents "designed for different scenarios, has different effects, and is selected to meet different tactical objectives."). Furthermore, the differences between the manner in which protestors were struck by these agents (whether directly or indirectly), the duration of exposure, and the proximity to the source of the agent all also pose significant fact specific inquiries that would need to be conducted in assessing Plaintiffs' claims. *Id.*

### 3.2.4 Common Questions Do Not Predominate the Chemical Agents Class.

Directly on point here is the court's analysis as to predominance in *Anti Police-Terror Project v. City of Oakland*, 2021 LEXIS 200363 (N.D. Cal. Oct. 18, 2021). There, plaintiffs attempted to certify an effectively identical chemical agents class arguing that common questions existed as to, "1) whether the City used excessive force against protestors; 2) whether the City's use of force would chill a person of ordinary firmness' willingness to protest; 3) whether the City's policy permitting tear gas use violated the protesters' constitutional rights; and 4) whether adequate announcements were made before tear gas was used." *Id*. at *14.  Plaintiffs there also contended that all of the named plaintiffs suffered similar injuries as a result of tear gas.  *Id.*

13

The court rejected plaintiffs' arguments because, to prevail on their *Monell* claim based on violation of the Fourth Amendment right to be free from excessive force, they would need to establish that the deployment of tear gas amounted to an unconstitutional application of excessive force. *Id.* at *21. Accordingly, the court would be required to consider: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion. *Id.* (quoting *Glenn v. Washington*, 673 F.3d 864, 871 (9th Cir. 2011) (internal quotation marks omitted). Furthermore, "**[g]iven the fact-specific inquiry required to determine whether a particular use of force is reasonable, the proposed class definition, which encompasses every use of gas […] over a four-day period, raises a multitude of individualized issues about the specific circumstances surrounding the use of tear gas**." *Id.* at *22 (emphasis added). The court reached the same conclusion as to plaintiffs state law claims because they too required that plaintiffs establish the use of force was unreasonable. *Id*.

Plaintiffs attempt to obfuscate the individualized inquiries that are fatal to their proposed class by claiming the chemical weapons were utilized in a non-target specific manner is unpersuasive in light of *Anti Police-Terror Project* and *BLM*. Plaintiffs also content that a common question exists as to whether a dispersal warning was given prior to the use of said chemical agents. Mtn. at 18:12-16. Further, Plaintiffs without relevant authority, contend "[.. the use of these chemical agents does not involve scrutiny to determine whether the force was justified as to each individual protester […]" Mtn. at 18:18-19. In fact, Plaintiffs' sole citation is *Jimenez v. Allstate*, 765 F.3d 1161, 1168 (9th Cir. 2014), which concerns a dispute regarding a policy of unpaid off-the-clock

overtime is clearly distinguishable from this alleged violation of an individual constitutional right.

**4.0      The proposed injunctive relief class fails to satisfy the  requirements of Rule 23(a) and (b).**

Plaintiffs' Motion fails to discuss how their proposed injunctive relief class satisfies Rule 23(a). It fails to discuss what their injunctive relief seeks. It fails to analyze how Defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Pro. 23(b)(2). Each failure is fatal to the proposed injunctive relief class.

Rather, Plaintiffs urge the Court not to "revisit" its pre-remand decision certifying the injunctive relief class, abandoning the duty of rigorous analysis, in a cursory two paragraph argument. *McGrane v. Howrey, LLP*, No. 14-cv-05111-JD, 2015 U.S. Dist. LEXIS 141946, at *19 (N.D. Cal. Oct. 19, 2015)(new arguments in reply papers are improper). With no analysis, Plaintiffs proclaim the class should be certified because "[c]ompelling evidence indicates that LASD acted in a uniform manner in its response to mass protests and will continue to do so in the future absent a permanent injunction." Mtn. at 11:1-3.

Plaintiffs seek certification of the proposed injunctive relief class consisting of "[a]ll persons who have in the past participated, presently are participating, or may in the future participate in, or be present at, demonstrations or protests within the jurisdiction of the County of Los Angeles Sheriff's Department ("LASD") in the exercise of their rights of free speech, assembly and petition in general." Mtn. i:10-13.

Plaintiffs seeks (1) a prospective injunction "to ensure that Plaintiffs and persons similarly situated will not suffer violations of their rights from Defendants' illegal and unconstitutional policies, customs, and practices described herein", and (2) a mandatory injunction "in the form of an order

15

requiring that Defendants seal and destroy any and all records derived from Plaintiffs' arrests . . . and identify . . . agencies to which such information has been disseminated; and that all such disseminated records be collected and destroyed." Doc. ¶¶ 148, 149.

### 4.1. Plaintiffs do not satisfy the Article III case or controversy requirement, including lack of standing and showing of irreparable injury.

A Rule 23(b)(2) class may only be certified if the plaintiff class carries its burden to demonstrate their standing to seek injunctive or declaratory relief. *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007). Injunctive relief standing requires that plaintiffs must establish a "real and immediate threat of repeated injury." *Chapman v. Pier 1 Imps. (U.S.), Inc.,* 631 F.3d 939, 946 (9th Cir. 2011)(en banc) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Instead, plaintiffs are not entitled to an injunction against past illegal conduct unless they demonstrates "a sufficient likelihood that he will again be wronged in a similar way." *Id.* at 111. A "real and immediate threat of repeated injury" has particular force where a court is "asked to oversee state law enforcement authorities." *Lyons*, at 112.

Even if standing is established, "[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiffs will be wronged again - a 'likelihood of substantial and immediate irreparable injury.'" *Id.* at 111.

Plaintiffs' expansive class fails to establish standing as they do not demonstrate a sufficient likelihood that they will be wronged in a similar way. As for the arrest-related claims, the Plaintiffs who have not been arrested have not suffered an injury in fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-

16

61 (1992) ("standing requires that . . . the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'"). Plaintiffs have no standing because they cannot, as in *Lyons*, establish the sufficient likelihood that they will be subject to a future arrest for curfew violation or any other protest-related crime. Plaintiffs cannot and do not assert that they will again be subjected to improper pandemic precautions. Plaintiffs do not assert that if in fact they were arrested in the future, they would be subject to same "uncomfortable and unreasonable conditions." Doc. 165, ¶59.

With respect to the force related claims, Plaintiffs do not affirmatively stated that they will attend future protests (*see* Doc. 160-1 [declarations]), which is fatal to their request for an injunction. *See Hernandez v. City of San Jose*, 2019 U.S. Dist. LEXIS 159293 at \*63 (N.D. Cal. Sep. 17, 2019) (denying a similar protest-related injunctive relief class for lack of standing; "Failure to make a threshold showing that the Named Plaintiffs will again be present at a rally or similar event is fatal to Plaintiffs' request for an injunction."). Rather, Plaintiffs' 2023 declarations at most state they have "attended" other protests, but do not state they intend to do so in the future.  *See, e.g.,* Barbadillo Decl. ¶38 ("continued to attend"), Bean Decl. ¶10 ("attended"), and Rahman Decl. ¶ 3 ("continued to attend"); (Exh. D007). To the extent the declarations can be interpreted to state they *may* attend future protests, which does not satisfy Plaintiffs' burden, it is little more than speculation insufficient to establish standing. *See Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 414 (2013) (allegations of possible future injury are insufficient to confer standing). Further, Plaintiffs do not present any evidence that the sought injunctive relief will result in them attending future protests.

Whether the Plaintiff class would be subject to arrest and/or force at future protest is simply too speculative to warrant an equitable judicial remedy. S*ee, e.g., Hodgers-Durgin*, 199 F.3d at 1044 (9th Cir. 1999) (equitable relief not

17

warranted because "it is not sufficiently likely that Mr. Lopez or Ms. Hodgers—Durgin will again be stopped by the Border Patrol"). This stringent requirement for equitable relief recognizes "the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the States' criminal laws in the absence of irreparable injury which is both great and immediate." *Lyons*, at 112; *see Hodgers-Durgin*, at 1042 ("The Supreme Court has repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way.").

### 4.2. Plaintiffs' injunctive relief class fails to satisfy the Rule 23(a) requirements.

"Before certifying an injunctive class under Rule 23(b)(2), district courts must find that the class satisfies the Rule 23(a) factors." *BLM*, at 1265. For the similar reasons cited in *BLM* and discussed above, Plaintiffs cannot satisfy the Rule 23(a) requirements.

#### 4.2.1 Plaintiffs have failed to state what questions are common to the class and how they will present evidence about those questions on a class-wide basis.

"Among other things, Rule 23(a) requires that there are questions common to the class, meaning questions that answer every class member's claim 'in one stroke.'" *Wal-Mart*, 564 U.S. at 350. While common questions need not predominate over individual questions for a class to be certified as a Rule 23(b)(2) injunctive class, district courts still must identify what questions are common to the class and how the plaintiffs will present evidence about those questions on a class-wide basis. *BLM*, at 1265.

In support of commonality, Plaintiffs point to their *Monell* claim. Rather than alleging a constitutionally deficient policy that links the LASD to the classes' alleged injuries, they point to "the LASD's unconstitutional customs and

18

practices and therefore satisfies commonality." Mtn. at 21:8-9. "To satisfy commonality in those cases, plaintiffs must offer 'some glue holding the alleged reasons for all those decisions together.'" *BLM*, at 1263.  However, Plaintiffs do not specify any alleged customs and practices the injunctive relief class relies. To the extent they rely on their renewed arrest and chemical agent classes, they fail under Rule 23(a) as discussed above. Without defined customs or practices, there is no single question capable of generating a class-wide answer.

Rather, Plaintiffs' TAC alleges disparate harm, ranging from use of direct force, chemical agents, failure to provide dispersal orders, various crowd control deficiencies, and false arrest, to name a few. However, Plaintiffs "cannot certify a class by merely alleging that a policy applies class-wide—and that a common question thus exists—without showing how common evidence can be used to prove their claims across the class members. As the Supreme Court held, 'what matters to class certification . . . is not the raising of common "questions"—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" *Id.* at 1249.

Even assuming that Plaintiffs' "custom and practices" is a potential common question, they have failed to explain how they can practically provide common answers to those questions. "Simply put, the plaintiffs have not explained what common evidence can prove the claims of the hundreds, if not thousands, of the members in all the classes who had diverging experiences." *Id.* at 1264.

Finally, the mere existence of the preliminary injunction or the contempt order does not satisfy the satisfy the common question requirement. *See id.* at 1265.

19

### 4.2.2    Typicality does not exist as the class Plaintiffs' claims are not typical of all class members.

None of the named Plaintiffs state that they intend to attend any future protest. *See* D007. Further, the named Plaintiffs are not typical of the class to the extent it includes non-peaceful protesters. Or, depending on the basis of the class, whether they were compliant with dispersal orders. Further, the class covers persons who may be subject to other law enforcement agencies "within the jurisdiction of the . . . LASD." *See* Penal Code § 830.1(c) (depending on nature of law enforcement activity, the LASD jurisdiction can be state-wide).

### 4.2.3    Adequacy does not exist as the class contains members with divergent interests.

As discussed above, the class includes a broad range of people. For example, it includes attendees that may have an interest in the LASD providing effective policing at mass protests (e.g., business owner that have been vandalized or looted, people who have had their cars burned, protester attached by other protesters, etc.). Further, the definition also includes non-peaceful protesters and bystanders, who may have differing interests.

### 4.3.    As there is no indivisible remedy, the injunctive relief class fails under Rule 23(b)(2) since a single injunction would not provide relief to each member of the class.

Only after Rule 23(a) is satisfied, does the analysis move to (b)(2), which allows for injunctive relief only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P 23(b)(2). "The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted —the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, at 360. "In other words, Rule

20

23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction." *Id.* (emphasis in original omitted); *B.K. v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019).

First, Plaintiffs do not point to any policy, but a number of practices related to the 2020 protests. These include allegations related to the use of a variety of kinetic energy projectiles and chemical agents, the issuance of dispersal orders, other crowd control tactics (e.g. kettling), and arrest decisions, and transportation of arrestees. Further, there is no evidence that the individual deputies' decision at these various incidents were made in a uniform way or to cause the same harm in each case. *Wal-Mart*, at 353-55. There is no alleged LASD conduct that applies generally to the class. Therefore, there is no requisite single or unified LASD policy or practice that Plaintiffs allege are common to all claims.

Second, both proposed injunctions fail as a single injunction would not provide relief to each class member. *Id.*, at 360. For the prospective injunction, based on the TAC allegations (Doc 160, ¶¶ 141-149) and as set forth in the Motion, Plaintiffs claims are based on a number of different incidents, at different locations, involving different alleged constitutional violation, by different LASD personnel. For example, a single injunction could not grant relief to both the issues covered in the arrest and chemical agent class. Moreover, the disparate conduct Plaintiffs allege as covered under the proposed injunction goes well beyond that.

Third, the records destruction request cannot be settled with a single injunction as it covers different arrest dates, different charges, and arrests by different agencies. That determination could only be made on a case-by-case basis. Such individualized factors include whether the arrest was lawful, whether charges were filed, and the individual showing justifying the extraordinary relief

of expungement. Also, there are adequate procedures for the sealing or destruction of arrest records. *See* Pen. Code § 851.91.

Further, Plaintiffs' attempt to distinguish *BLM's* injunctive class analysis on the basis that BLM did not rely on *Monell* while Plaintiffs do is unpersuasive. Rather, in *BLM* the Court rejected plaintiffs' argument that district court's damages class findings, which were based on *Monell*, could support the injunctive relief class, which were not based on *Monell*. *BLM*, at 1266. The Court analysis goes much further into casting serious doubt into the viability of mass protest injunctions. *BLM, at 1266.*.

Distinguishing cases involving "single protests where all class members brought identical claims," the court stated "[m]ost courts faced with George Floyd protest classes seeking injunctive relief under Rule 23(b)(2)—many of which were narrower than the class here—denied certification for similar reasons." *BLM*, at 1265-66; *see Anti-Police Terror Project v. City of Oakland*, No. 20-cv-03866-JCS, 2021 U.S. Dist. LEXIS 200363, 2021 WL 4846958, at *5 (N.D. Cal. Oct. 18, 2021) (class certification denied to plaintiffs who sought an injunction against the Oakland police because the class included protestors who were injured by people other than the Oakland police, protestors who did not demonstrate peacefully, and people who were injured by practices other than those the class challenged.); *Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917-HZ, 2022 U.S. Dist. LEXIS 122693, 2022 WL 2700307, at *11 (D. Or. July 12, 2022).

## 5. CONCLUSION.

Plaintiffs' proposed damages and injunctive relief classes fail to satisfy the Rule 23's rigorous certification requirements.  In *Black Lives Matter Los Angeles v. City of Los Angeles*, the Ninth Circuit reaffirmed that courts must conduct a searching analysis of commonality, predominance, and cohesiveness in virtually identical protest-related claims. Plaintiffs' damages classes turn on inherently

22

individualized questions of probable cause, use of force, and injury that cannot be resolved with common proof and therefore do not meet the predominance or superiority requirements of Rule 23(b)(3). Plaintiffs' injunctive relief class likewise fails because they have not shown a real and immediate threat of future harm, and their requested injunction is vague and overbroad, seeking individualized remedies rather than a single, indivisible injunction applicable to all class members. Therefore. Defendants respectfully request the Court deny Plaintiffs' renewed motion for class certification in its entirety.

Dated:  October 10, 2025          LAWRENCE BEACH ALLEN & CHOI, PC


                                   By _____ /s/  Raymond W. Sakai _____
                                        Raymond W. Sakai
                                        Shawyane Emadi
                                        Attorneys for Defendants
                                        County of Los Angeles and
                                        Sheriff Alex Villanueva

23

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of Los Angeles and Sheriff Alex Villanueva, certifies that this brief contains 6,852 words, which complies with the word limit of L.R. 11-6.1.

Dated:  October 10, 2025                     LAWRENCE BEACH ALLEN & CHOI, PC


By      /s/  Raymond W. Sakai
                Raymond W. Sakai
                Shawyane Emadi
                Attorneys for Defendants
                County of Los Angeles and
                Sheriff Alex Villanueva

24