Paul Hoffman, SBN 71244
*hoffpaul@aol.com*
Michael D. Seplow, SBN 150183
*mseplow@sshhzlaw.com*
Aidan C. McGlaze, SBN 277270
*amcglaze@sshhzlaw.com*
John Washington, SBN 315991
*jwashington@sshhzlaw.com*
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES, LLP
9415 Culver Blvd, # 115
Culver City, CA 90232
310-396-0731

Colleen M. Mullen, SBN 299059
*colleen@mcelroyparris.com*
MCELROY PARRIS TRIAL
LAWYERS, APLC
407 Bryant Circle, Ste. F
Ojai, CA 93023
805-272-4001

Arnoldo Casillas, SBN 158519
*acasillas@casillaslegal.com*
CASILLAS & ASSOCIATES
3777 Long Beach Blvd., 3RD FLO,
Long Beach, CA 90807
323-725-0350

Morgan Ricketts, SBN 268892
*mricketts@hadsellstormer.com*
Rebecca Brown, SBN 336638
*rbrown@hadsellstormer.com*
HADSELL STORMER
RENICK & DAI LLP
128 N. Fair Oaks Ave.
Pasadena, CA 91103
626- 585-9600

*Attorneys for Plaintiffs and Proposed Class.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIZIA BERG, et al.<br><br>PLAINTIFS,<br><br>v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>DEFENDANTS. | Case No.: 2:20-cv-07870-DMG-PD<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION**<br><br>[*REPLY DECLARATION OF MICHAEL D. SEPLOW AND COMPENDIUM OF PLAINTIFFS' REPLY DECLARATIONS FILED UNDER SEPARATE COVER*]<br><br>Hearing Date:    December 12, 2025<br>Hearing Time:    9:30 a.m.<br>Courtroom:    8C |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   THE COURT SHOULD CERTIFY THE ARREST CLASS. ..................... 2

    A.   Plaintiffs Establish Numerosity. ........................................................ 2

    B.   Plaintiffs Establish Predominating Common Questions....................... 2

    C.   Plaintiffs Establish Typicality. .......................................................... 5

    D.   Class Certification Is Superior to Requiring 143 Individual Trials. ...... 6

III.  The Chemical Agents Class Should Be Certified...................................... 6

    A.   The Chemical Agents Class Is Numerous and Ascertainable. ............. 6

    B.   The Chemical Agents Class Presents Common Questions................... 7

    C.   The Representatives for the Chemical Agents Class Are Typical........ 9

    D.   Whether the LASD Has a De Facto Policy Encouraging or
        Condoning Unlawful Deployment of Chemical Agents Against
        Peaceful Protestors Is a Predominating Common Question............... 10

IV.   THE INJUNCTIVE CLASS SHOULD BE CERTIFIED........................... 11

    A.   Plaintiffs Have Demonstrated Standing for Injunctive Relief........... 11

        1.   The Cases Cited by Defendants Do Not Support Their
            Position on Standing. ............................................................. 14

    B.   Plaintiffs' Proposed Injunctive Class Satisfies the Elements of
        FRCP 23(b)(2). .................................................................................. 15

        1.   Plaintiffs Have Established Common Issues for the
            Injunctive Class...................................................................... 15

        2.   Plaintiffs Have Shown Typicality and Adequacy................... 18

        3.   Class-wide Injunctive Relief Is Proper. ................................. 19

V.    CONCLUSION................................................................................... 21

i

# TABLE OF AUTHORITIES

*Federal Cases*                                                                                          *Page(s)*

*Abdullah v U.S. Security Associates*,
    731 F.3d 952 (9th Cir. 2013) ........................................................................ 16

*Anti-Police Terror Project v. City of Oakland*,
    2022 U.S. Dist. LEXIS 227954 (N.D. Cal. December 19, 2022) .................... 16

*Arevalo Millan v. Trump*,
    785 F. Supp. 3d 644 (C.D. Cal. 2025) ........................................................... 16

*Armstrong v. Davis*,
    275 F.3d 849–61 (9th Cir. 2001) ............................................................... 13-14

*B.K. v Snyder*,
    922 F.3d 957 (9th Cir. 2019) ..................................................................... 19-20

*Bates v. UPS*,
    511 F.3d 974 (9th Cir. 2007) ........................................................................ 14

*Black Lives Matter D.C. v. United States*,
    775 F. Supp. 3d 241 (D.D.C. 2025) ............................................................. 7, 8

*Black Lives Matter Los Angeles v. City of Los Angeles*,
    113 F.4th 1249 (9th Cir. 2024) ............................................................... *passim*

*Bowerman v. Field Asset Servs., Inc.*,
    60 F.4th 459 (9th Cir. 2023) ......................................................................... 10

*Chapman v. Pier 1 Imports*,
    631 F.3d 939 (9th Cir. 2011) ........................................................................ 12

*City of Los Angeles v. Lyons*
    461 U.S. 95 (1983) ........................................................................................ 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... 18

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir.1992) .......................................................................... 18

*Hernandez v. City of San Jose*,
    2019 U.S. DIST. LEXIS 159293 (N.D. Cal. Sept. 17, 2019) ........................ 13

**TABLE OF AUTHORITIES – CONT'D**

*Federal Cases* - Continued                                                    *Page(s)*

*Hodgers-Durgin v. de la Vina*,
 199 F.3d 1037 (9th Cir. 1999) ........................................................... 15

*Index Newspapers LLC v. United States Marshals Serv.*,
 977 F.3d 817 (9th Cir. 2020) ............................................................... 9

*Kingdom v. Trump*,
 2025 U.S. Dist. LEXIS 105237  (D.D.C. June 3, 2025) ................................ 16

*Levya v. Medline Indus.*,
 716 F.3d 510 (9th Cir. 2013) ................................................................ 5

*Libertarian Party of Los Angeles County v Bowen*,
 709 F.3d 867 (9th Cir. 2013) ......................................................... 12, 13

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ...................................................................... 14, 15

*M.A.P.S. v. Garite*,
 349 F.R.D. 631 (W.D. Tex. 2025) ....................................................... 16

*Malachi Mickelonis v. Aspyr Media, Inc., No. 8:23-cv-01220-MWC-ADS*,
 2025 U.S. Dist. LEXIS 108414 (C.D. Cal. May 16, 2025) ............................ 7

*Monell v. Dep't of Soc. Servs.*,
 436 U.S. 658 (1978) .......................................................................... 10

*Notably, Clapper v. Amnesty International USA*,
 568 U.S. 398 (2013) .......................................................................... 14

*Parsons v. Ryan*,
 754 F.3d 657 (9th Cir. 2014) .............................................................. 16

*Puente v. City of Phx., No. CV-18-02778-PHX-JJT*,
 2019 U.S. Dist. LEXIS 169865 (D. Ariz. Sep. 30, 2019) ................... 6, 7, 8, 10

*Thomas v. County of Los Angeles*,
 978 F.2d 504 (9th Cir. 1992) .............................................................. 12

*UFW v. Noem*,
 2025 U.S. Dist. LEXIS 81317 (E.D. Cal. April 29, 2025) ............................ 16

**TABLE OF AUTHORITIES – CONT'D**

<u>Federal Cases</u> - Continued                                    *Page(s)*

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) ......................................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................... 16

<u>State Statutes</u>

Cal. Civ. Code Section 52.1 ................................................................. 10

Cal. Pen. Code Section 835.6 .................................................... 2, 4, 5, 6

<u>Other</u>

FRCP 23 ............................................................................... *passim*

## I.    INTRODUCTION

Plaintiffs' Renewed Motion for Class Certification meets all the criteria for certification under FRCP 23 and is entirely consistent with the Ninth Circuit's decision in *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249 (9th Cir. 2024) ("the *BLM* decision" or "*BLM*"). Contrary to Defendants' assertion, Plaintiffs' renewed motion is not simply a "repackaging" of their prior motion. To the contrary, Plaintiffs have made major modifications to their motion to ensure that it is consistent with the *BLM* decision.

Notably, the renewed Arrest Class is based on the mass arrest of 143 persons on a single day—June 3, 2020—for the same exact offense, all of whom were kept on LASD busses in the same conditions. Moreover, despite Defendants' misleading attention to this issue, "tight handcuffing" is not a claim that is asserted on behalf of the Arrest Class. Accordingly, the scope of the renewed Arrest Class is far narrower than the one at issue in *BLM* and meets all of the criteria for class certification.

Additionally, the revised Chemical Agents Class is a far cry from the prior Direct Force class that was at issue in both *BLM* and this Court's prior certification order. The Chemical Agents Class is limited to hand thrown devices that release tear gas or OC spray against entire crowds. The decision to deploy these chemical agents—which are not target specific—is made at the supervisory level by the LASD. Plaintiffs propose subclasses for four separate protests during which the LASD deployed these agents against crowds of protesters. Since these crowd dispersal munitions are not target specific, the decision to deploy these munitions is a common issue that predominates over any individual ones. Therefore, the Chemical Agents Class meets the requirements of FRCP 23(b)(3).

Finally, the proposed Injunctive Relief Class should be certified as Plaintiffs have clearly demonstrated standing, as this Court found it its prior ruling, and because the proposed class satisfies FRCP 23(b)(2). Plaintiffs have presented

1

compelling common evidence that the LASD has a pattern and practice of condoning the use of projectiles and chemical agents against non-violent persons attending protests which is a common issue appropriate for class-wide resolution. Accordingly, Plaintiffs' Renewed Motion for Class Certification should be granted.

## II.    THE COURT SHOULD CERTIFY THE ARREST CLASS.

### A.    Plaintiffs Establish Numerosity.

There is no serious dispute that Plaintiffs have established numerosity. There are 143 persons in the Arrest Class who were all arrested by the LASD at the same time on June 3, 2020 for curfew violations and transported on LASD buses. *See* Dkt. 160-2 at p. 22 (Ex. 5 to Seplow Decl.)

Defendants provide no argument whatsoever as to how 143 people does not satisfy numerosity. Accordingly, numerosity has been established. *See Newberg on Class Actions* §3:12 (5th ed.) (40 class members is sufficient).

### B.    Plaintiffs Establish Predominating Common Questions.

Each of Defendants' arguments that there are no predominating common questions to support an Arrest Class fails.

Defendants argue that there can be no common questions concerning violations of Penal Code § 853.6, because there is no proof of retaliation. Initially, retaliatory intent would not be required for the claims. Section 853.6 provides that protestors "shall … be released." Either holding class members for hours on the same buses, for the same reasons, and for the same time is not a release (thus violating a liberty interest) or it is. The issue is eminently amenable to resolution on behalf of a certified class.[1]

---

[1] Defendants cite vaguely to language from *BLM* indicating that probable cause is likely an individualized inquiry, without explanation as to how this would apply here. Op. at 4 (citing *BLM* at 1262). Defendants miss the point: cause is irrelevant to Plaintiffs' claims. In *BLM*, the class at issue concerned a *lack of cause* for arresting class members, unlike Plaintiffs' claims. 113 F.4th at 1262. *BLM* noted that cause supporting a person's arrest was often individualized. *Id.* In contrast, the

Moreover, to the extent retaliation is relevant – i.e. for a retaliatory arrest claim under the First Amendment – the issue is similarly appropriate for class certification. Defendants provide no evidence – and do not even argue – that the class members were actually held for different reasons.

The LASD arrested every person who remained in the park on June 3, 2020, after an LASD Lieutenant told them to disperse. The decision to arrest every protestor was made at the supervisory level. *See* Dkt. 160-2 at p. 22. Every person was cited for the same reason, for violating curfew (LAMC 8.78) once they had not dispersed. *Id.* Every arrested person was detained and transported on the same heavily secured busses to the same prearranged location. *See id.*; Vieth Dep. 30:9-31:24, 33:17-20, 35:3-7 (Ex. 1 to Seplow Reply Decl.).

Moreover, no criteria were applied to determine which protestors went on which bus. Vieth Dep. 36:6-11. The LASD did not even have individualized information about the persons on the busses. *Id.* 65:25-66:5. The evidence strongly indicates that all class members were arrested, in a mass arrest, for the exact same reason and Defendants have offered no evidence to the contrary.

A retaliatory arrest claim is also well suited for class certification in this context. The jury would believe Defendants' purported reason for arresting all protestors in a mass arrest to be benign, or find it retaliatory. Plaintiffs contend that the LASD's hostile and punitive culture towards protesters and journalists, including the actions and conduct of then-Sheriff Villanueva, support the contention that the mass arrest of protestors on June 3, 2020 was retaliatory. *See* Dkt. 54 at p. 20; Dkt. 165 at pp. 36-37. In any event, the motive for the June 3, 2020, decision to arrest and transport the 143 arrestees is a common issue that predominates.

---

Arrest Class members' claims here do not depend on probable cause and its individualized issues. Claims based on § 853.6 depend on a liberty interest not to be held in the ways § 853.6 proscribes and a retaliatory arrest claim applies if an arrest was retaliatory. Both are established by common proof in a mass arrest and apply whether there was cause for each arrest or not. Dkt. 160 at pp. 12-15.

Defendants suggest as a hypothetical that certification should be denied because they could have been legally justified in not releasing the class members pursuant to the exceptions in Penal Code § 835.6(i)(1)-(7). This makes no sense. If the exceptions were applicable – and if the LASD actually believed they applied – it would have had to indicate on an LASD form "which of [them] was a reason for the non-release." Pen. Code § 835.6(i). Defendants offer no evidence of this; nor do they offer any evidence that they arrested every person who remained in a mass arrest somehow based on individualized reasons.

A defendant cannot resist class certification based on hypotheticals. They must provide evidence that actual individualized issues bar recovery and not simply describe "defenses that the defendant *might* advance or for which it has presented no evidence." *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023) (citing *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018)). Defendants present no evidence of individualized reasons for the arrests. Even if they could, class certification would only be denied if individualized reasons were so common as to overwhelm the litigation given the facts of that case. *Id.* Defendants have not introduced evidence that protestors were arrested for idiosyncratic reasons, much less to the extent that it would overwhelm the litigation.

Defendants' opposition to certifying the Arrest Class is largely based on the "straw man" that claims of tight handcuffing cannot be decided on a class-wide basis. (Op. at pp. 6-7). However, as Plaintiffs stated unequivocally in their renewed motion: "the revised Arrest Class does not include claims for tight handcuffing." *See* Dkt. 160 at p. 28:23-24.

Defendants' arguments that the arrest class cannot be certified because there are different legal bases for certifying the class lacks merit. Obviously there can be more than one legal basis for certifying a class, provided common issues predominate for such claims. They do here for each class member and for each legal basis, for reasons identified in Plaintiffs' motion. *See* Dkt. 160 at pp. 13-15.

4

Defendants' last arguments against predominating common questions also fail. Every class member was detained for no reason for approximately two hours *at a minimum*, across no more than six identical busses, without access to food or water. *See* Vieth Dep. 30:9-31:24, 33:17-20, 35:3-7; Militante Decl. ¶ 10 (Dkt. 160-1 at p. 13); Wells Decl. ¶ 13 (Dkt. 160-1 at p. 25); Berg Decl. ¶ 10 (Dk.t 160-1 at p. 5); Monroe Decl. ¶¶ 9-10 (Dkt. 160-1 at p. 19).

Whether there were slightly more occupants on one bus or another, or whether some Plaintiffs were hungrier does not threaten to overwhelm the litigation given Plaintiffs' claims.  Even if there were class members who were hungrier or thirstier than others (or some who specifically asked for the food or water that none could access), this would go damages.  Given the damages would stem from shared allegedly unlawful conditions, the "presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *See Levya v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013).

Nothing in the *BLM* decision demands denial of certification here.  The arrest class in *BLM* was mostly "an excessive force class," involving putative class members arrested on different days and in different busses with different conditions. 113 F.4th at 1260.  Since certification was granted without sufficent analysis, the Ninth Circuit remanded for further analysis.  Defendants invoke purportedly differing minor conditions, but these are not the bases for Plaintiffs' claims and in no way threaten to overwhelm the common central issues addressed in Plaintiffs' motion.

### C.    Plaintiffs Establish Typicality.

Defendants' only objection to typicality is that the legal grounds for Plaintiffs' claims are partly different, e.g. they now incorporate violation of Penal Code § 853.6.  (Op. at p. 7).  This is irrelevant as the Arrest Class members were subjected to the same treatment – including with respect to claims grounded in § 853.6.  Typicality has been shown both for the claims the Court already addressed

and to the extent the claims are grounded in § 853.6, for the same reasons. *See* Dkt. 121 at p. 17.

### D.    Class Certification Is Superior to Requiring 143 Individual Trials.

The Court's prior superiority analysis still applies; moreover given that the *BLM* decision did not address superiority there is no need to revisit such findings. Defendants argue that Plaintiffs' class definitions are overbroad and cannot be determined on a class basis, because they require adjudications such as what constitutes "prolonged detention." (Op. at p. 10). As addressed above, every class member was subjected to the same minimum conditions.

Defendants' argument that the Arrest Class claims – for being detained for two hours in these conditions – are high value cases easily addressed in individualized litigation is meritless. Defendants point to cases involving serious injuries, including a person who was shot in the groin and had a portion of his testicle surgically removed and another who was shot in the face with a 40 mm projectile which fractured his face. (Op. at pp.10-11). The examples provided by Defendants are a far cry from the damages suffered by members of the Arrest Class, demonstrating that a class action is the superior method for resolving these claims.

## III.    THE CHEMICAL AGENTS CLASS SHOULD BE CERTIFIED.

As with their challenges to the other proposed classes, Defendants use a scattershot approach in opposing certification of the Chemical Agents Class, raising arguments without legal or factual support. None of these arguments defeat certification, as further explained below.

### A.    The Chemical Agents Class Is Numerous and Ascertainable.

Under a heading challenging numerosity, Defendants concede there are hundreds of people in the Chemical Agents Class, but make an oblique challenge to the ascertainability of these individuals. (Op. at p. 11) With regard to whether the class is sufficiently numerous, other courts have found fewer purported class members sufficient for purposes of the numerosity analysis in similar contexts. *See*

*Puente v. City of Phx.*, No. CV-18-02778-PHX-JJT, 2019 U.S. Dist. LEXIS 169865, at \*17 (D. Ariz. Sep. 30, 2019) ("A review of the video and other evidence reveals that a large number of individuals—more than 40—appear to have been exposed to gas or chemical agents, even if in some instances it was inert smoke, and Plaintiffs therefore satisfy the numerosity requirement.").

With regard to ascertainability, class members can easily self-identify in response to adequate advertisements or postings, and other courts have found such methods adequate. *See, e.g.*, *Black Lives Matter D.C. v. United States*, 775 F. Supp. 3d 241, 270 (D.D.C. 2025) ("*BLMDC*") ("True, the plaintiffs must ultimately prove that alleged class member were actually present when protestors were dispersed . . . but that proof goes to the question of the merits. At this stage, the plaintiffs need only provide objective parameters for defining the class . . . ."). In any event, "[t]hough some district courts have required a class to be ascertainable despite no explicit mention by Rule 23, the Ninth Circuit does not require courts to apply ascertainability as an independent threshold requirement to class certification." *Malachi Mickelonis v. Aspyr Media, Inc.*, No. 8:23-cv-01220-MWC-ADS, 2025 U.S. Dist. LEXIS 108414, at \*14 (C.D. Cal. May 16, 2025) (footnote omitted) (citing *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018)).

**B.    The Chemical Agents Class Presents Common Questions.**

Defendants would have this Court interpret the *BLM* decision as precluding certification of any proposed class involving *any* use of force. Not so. The Ninth Circuit merely indicated, consistent with prior precedent, that there must be "critical questions or issues that can be resolved on a class-wide basis." 113 F.4th at 1260. Because the chemical agents deployed are area-of-effect weapons that cause harmful gas to linger in an area, their deployment is more readily susceptible to collective analysis than, for example, shooting rubber bullets targeted at specific individual protestors. *Cf. Puente, supra*, 2019 U.S. Dist. LEXIS 169865, at \*18-

19 ("The Court disagrees with Defendants that this case is similar to those and that the factual and legal questions as to PPD's use of gas/chemical agents are too individualized for class certification here. While the grenadiers report that they intended to target certain groups of individuals with their use of force, *the very nature of the use of gas is that it is not contained to a certain individual or a small area*.") (emphasis added).

Indeed, as previously noted, the chemical agents CS (tear gas) and OC (pepper spray) at issue in this case were used against an entire crowd, so the question for the trier of fact is whether the conditions at each protest justified the command-level decision to deploy these chemical agents.  These chemical agents were not shot out of a launcher but rather were tossed into the crowds and therefore were not target specific.  Dkt. 160-2 (Zagurski Dep.) at pp. 90-94, 106-107, 108-109.  Exposure to these chemical agents causes irritation of the eyes, mouth, nose, throat, lungs, and skin and impair an individual's ability to see and breathe.  Dkt. 160-2 at pp. 92-93.  Moreover, and going to the heart of the certification question, the decision to deploy these chemical agents must be made by a supervisor and not by an individual deputy.  Dkt. 160-2 at pp. 109-110.  As in *Puente*, certification is appropriate under these facts, with this command structure.  *Cf. Puente, supra*, 2019 U.S. Dist. LEXIS 169865 at *19 (identifying the fact that "Defendants' actions were likely command decisions" as further evidence of common questions for the class); *see also BLMDC, supra*, 775 F. Supp. 3d at 269 ("Here, the dominant issue is liability—specifically, whether the defendant officers are liable for violating class members' speech and assembly rights. That issue dwarfs 'whatever unique issues might arise the damages stage.'").[2]

---

[2] Defendants cite the Zagurski declaration for the proposition that different chemical agents have different effects.  (Op. at p. 12).  Regardless, these chemical agents, when deployed via hand-thrown grenades or canisters, cause similar damages over an area of effect and their deployment was authorized at a command or supervisory level.  For the same reason, the citations to the Jones, McDaniel, and Coppes

Finally, the fact that members of the press and legal observers may be part of the Chemical Agents Class does not preclude the existence of common questions. Whatever heightened protections such individuals might receive, if any, there is still a baseline that is applicable to everyone; if the deployment of chemical agents was unlawful as general proposition, it will *a fortiori* have been unlawful against members of the press and legal observers as well.  But Defendants' authority on this point merely sets forth the longstanding principle that "excluding the media from public fora can have particularly deleterious effects on the public interest, given journalists' role as 'surrogates for the public.'"  *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 830 (9th Cir. 2020) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572-73 (1980).

**C.     The Representatives for the Chemical Agents Class Are Typical.**

Again without any support in case law, Defendants argue that the Class Representatives are not typical because some were struck with tear gas, some with pepper spray, and some with both.   The question (as the Court properly analyzed it in its previous certification order) is whether the injuries of the class representatives are typical of those of absent class members.   The injuries of the class representatives, who were subjected to chemical agents in a manner that inferred with their right to attend protests, are entirely typical of the sorts of injuries facing the class. Although the *BLM* decision did not address typicality, it has clearly been demonstrated in this case.

---

declarations do not impact the analysis (Dkt. 169-1).  To the contrary, these declarations describe the decision to deploy less-lethal force on a collective, holistic basis, based on the circumstances at the time.  To the extent their descriptions of the facts at the time of deployment differs from Plaintiffs' descriptions, that is a factual issue that can be resolved on a class basis.  Similarly, whether the circumstances justified the deployment of less-lethal force can also be addressed holistically, once the circumstances on the ground at the time of deployment have been established.

**D.     Whether the LASD Has a De Facto Policy Encouraging or Condoning Unlawful Deployment of Chemical Agents Against Peaceful Protestors Is a Predominating Common Question.**

Defendants would have this Court infer that each deployment of chemical agents over the course of the protests at issue requires its own, highly distinct and individualized consideration of the facts at issue for that specific deployment. However, the reality of the situation is that these uses of force were all pursuant to command-level decisions and thus can be assessed at a high level of generality because the underlying facts are essentially the same or highly similar, such that common questions predominate as to whether these deployments were unlawful. *Cf. Puente, supra*, 2019 U.S. Dist. LEXIS 169865, at *20 ("Defendants' use of gas and chemical agents are common among the proposed class members and predominate over any individual questions.").

Under both *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and the Bane Act, Cal. Civ. Code section 52.1, there is no concern that the individualized inquiries will be excessive. Given that each deployment here was against a *group*, and each group was engaged in the same or highly similar activities (i.e., peaceful protest), the deployments can be assessed holistically on liability, considering whether the uses of force were facially lawful. If Defendants contend that the use of force was specifically justified as to a particular individual, they can raise such affirmative defenses at the damages phase, and such individualized damages inquiries should not bar certification. Indeed, the Ninth Circuit has repeatedly emphasized that "the presence of individualized damages cannot, by itself, defeat class certification." *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023) (collecting cases). Accordingly, the Chemical Agents Class and sub-classes should be certified.

## IV.    THE INJUNCTIVE CLASS SHOULD BE CERTIFIED.

### A.    Plaintiffs Have Demonstrated Standing for Injunctive Relief.

In its ruling on Plaintiffs' prior motion for Class Certification, this Court explicitly rejected Defendants' claim that Plaintiffs lack standing to pursue an injunctive relief class.  *See* Dkt. 121 at p. 11-14.  The *BLM* decision did not address standing.  113 F.4th at 1265, fn. 3.  Therefore, there is nothing about the Court's prior finding that Plaintiffs had established standing that is inconsistent with the *BLM* decision and there is no reason to revisit the Court's prior analysis.  Nonetheless, Defendants repeat the same argument, based on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ("*Lyons*"), that this Court previously rejected, to claim that Plaintiffs lack standing for injunctive relief. (Op at. pp 16-18).  Defendants' arguments should be rejected again.[3]

Specifically, Plaintiffs have shown that the LASD has repeatedly used force in the form of projectiles and chemical agents to interfere with the rights of non-violent individuals to attend and participate in protests.  *See* Dkt. 54 at pp. 16-18, 20 and Dkt. 167 at pp. 11-13.  Indeed, this Court entered a Preliminary Injunction ("PI") to restrict the LASD's use of such munitions against non-violent protesters.  *See* Dkt. 58.  In light of the LASD's failure to adhere to the PI during the June 2025 protests, the Court found Defendant in contempt and ordered the appointment of a Special Master to help ensure that the LASD complies with the PI.  *See* Dkt. 167.  Plaintiffs have presented overwhelming evidence that the LASD has engaged in a pattern and practice of interfering with the rights of non-violent persons attending

[3] The Court stated: "Defendants cite [*Lyons*] in support of their contention that Plaintiffs cannot show the requisite likelihood of future harm, but there is at least one critical difference between this case and *Lyons*. In the years since the Supreme Court decided *Lyons*, it has explained that the denial of standing in *Lyons* was based on the plaintiff's ability and affirmative duty to avoid engaging in illegal conduct in the future that might give rise to the use of a choke hold. . . . Plaintiffs have no obligation to avoid repeating their behavior in the future, which weighs in favor of finding standing." Dkt 127 at pp. 12-13 (citation omitted).

protests. Therefore, Plaintiffs have clearly demonstrated that the LASD is likely to continue to use excessive force against non-violent persons at future protests, absent Court oversight.

Contrary to Defendants' assertions, there is nothing speculative about the future harm that Plaintiffs seek to enjoin. *See Thomas v. County of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992) ("[T]he possibility of recurring injury seeks to be speculative when repeated incidents are documented."). Indeed, this Court previously rejected Defendants' contention that Plaintiffs have failed to show that they will attend future protests. *See* Dkt. 121 at p. 12, lines 6-9 ("Defendants argue that Plaintiffs' indications that they plan to attend future protests are merely speculative and therefore fail to show the likely requisite of future harm. The Court disagrees.").

Moreover, the LASD should not be able to rely the fact that some people's fear of being subjected to excessive force by the LASD makes them wary of going to future protests as a reason to deny the requested injunctive relief. *See Libertarian Party of Los Angeles County v Bowen,* 709 F.3d 867, 870 (9th Cir. 2013) ("[A]s the Supreme Court has recognized a chilling of the exercise of First Amendment rights is a constitutionally sufficient injury" to establish standing); *see also Chapman v. Pier 1 Imports*, 631 F.3d 939, 949-50 (9th Cir. 2011) (cited by Defendants) (noting that a plaintiff who is "deterred" from visiting a facility by reason of the defendant's non-compliance with the law demonstrates standing.). Accordingly, to the extent that the LASD's conduct has discouraged people from attending protests, such people have suffered constitutional injuries and have established standing.

In any event, Plaintiffs are submitting additional declarations confirming their fear that the LASD will use excessive force against non-violent persons at future protests and their hope that Court oversight will allow them to feel safer and be able to attend future protests. *See* Reply Declarations of Diana Barbadillo ¶¶ 3-5; Keyanna Bean ¶¶ 4-7; Grace Bryant ¶¶ 3-6; Noelani Del Rosario-Sabet ¶¶ 3-6;

12

Loan Hoang ¶¶ 3-6; Serena Militane ¶¶ 3-7; Joe Mischo ¶¶ 4-6; Jillian O'Neil ¶¶ 3-5; Shakeer Rahman ¶¶ 4-5; Vishal Singh ¶¶ 3-6, Austin Tharpe ¶¶ 3-5. Several Plaintiffs have indicated that despite this apprehension, they still plan to attend future protests. *See* Barbadillo Reply Decl. ¶ 3, O'Neil Reply Decl. ¶ 3; Rahman Reply Decl. ¶¶ 3-4.

To be clear, while the full scope of Plaintiffs' requested permanent injunction will be decided after trial and the presentation of evidence, the gravamen of the injunctive relief being sought is similar to that in the current PI: namely to ensure that the LASD respects the rights of non-violent persons to attend protests by curtailing the use of chemical agents and projectiles to situations in which such force is necessary.[4]

Plaintiffs have certainly established the requirements for standing in light of the LASD's actions which chill their First Amendment rights. *See Libertarian Party of Los Angeles, supra*, 709 F.3d at 870 ("First Amendment challenges present unique standing considerations such that the inquiry tilts dramatically toward a finding of standing. . . . because . . . a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.") (internal citations and quotations omitted).[5]   As the Ninth Circuit stated in *Armstrong v. Davis*, 275 F.3d

---

[4] A further issue for future consideration, after trial, is whether injunctive relief can and should be fashioned to prevent the LASD from engaging in retaliatory arrests at future protests. In addition, in the event that the evidence shows that the mass arrest of persons on June 3, 2020 was unlawful and retaliatory, Plaintiffs seek expungement of those arrest records as an equitable remedy should the arrest class be certified. *See* Third Amended Complaint (Dkt.165) at ¶ 172.

[5] Defendants' reliance on *Hernandez v. City of San Jose*, 2019 U.S. DIST. LEXIS 159293 (N.D. Cal. Sept. 17, 2019), a case which is not binding on this Court, is misplaced. *Hernandez* involved claims that the defendants directed pro-Trump demonstrators towards violent anti-Trump demonstrators where they were attacked. The plaintiffs asserted a state-created danger claim, a claim very different than the claims in this case, based on injuries arising from separate altercations with different private individuals, not based on long-standing policies or practices. There was no

849, 860–61 (9th Cir. 2001), "where the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to satisfy the 'realistic repetition' requirement. . . . When a named plaintiff asserts injuries that have been inflicted upon a class of plaintiffs, we may consider those injuries in the context of the harm asserted by the class as a whole, to determine whether a credible threat that the named plaintiff's injury will recur has been established."

In this case, Plaintiffs have presented compelling evidence that the LASD's past unlawful treatment of peaceful protesters is likely to occur at future protests. *See* Dkt. 167 at pp. 4-9 (discussing LASD's response to June 2025 protests). In light of the political climate in the nation, it is highly likely that there will be future mass protests where the LASD will respond. Given the LASD's response to the most recent protests, it is far from speculative to assert that absent Court oversight, the LASD will continue to act in a manner that violates the rights of peace protest attendees. Accordingly, Plaintiffs have demonstrated standing.

### 1. The Cases Cited by Defendants Do Not Support Their Position on Standing.

None of the cases relied on by Defendants undermines Plaintiffs' standing in this case. In *Bates v. UPS*, 511 F.3d 974, 987-88 (9th Cir. 2007), the Court actually upheld standing where at least one class member had suffered an injury that could be redressed. Notably, *Clapper v. Amnesty International USA*, 568 U.S. 398, 414 (2013), in which the plaintiffs challenged a federal statute allowing the government to intercept foreign communications, is clearly distinguishable in that the plaintiffs' claims were speculative since they could not show that their communications would be monitored in the future. Likewise, the plaintiffs in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992), who were not directly harmed by the

showing that the unique circumstances of the 2016 demonstration would likely recur.

defendant's conduct, lacked standing to challenge regulations aimed at third-party conduct. *See id.* ("When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed.") (emphasis in original). *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) is also distinguishable as the evidence in that case showed that the plaintiffs hand only been stopped by the Border Patrol only once in 10 years, which is a far cry from the evidence of repeated misconduct by the LASD at protests as recently as June 2025.

**B.    Plaintiffs' Proposed Injunctive Class Satisfies the Elements of FRCP 23(b)(2).**

As shown herein, contrary to Defendants' assertions, all of the elements for certification of an injunctive relief class under FRCP 23(b)(2) have been met.[6]

**1.    Plaintiffs Have Established Common Issues for the Injunctive Class.**

As noted above, the crux of the injunctive class claim is to enjoin the LASD from violating the rights of non-violent persons to attend protests in Los Angeles County so that such persons are not subjected to the use of excessive force by the LASD in a manner that interferes with the right to peaceably assemble. The question of whether the LASD has a policy and practice that condones the use of chemical agents and projectiles against non-violent persons at protests is a common question that applies to all the putative injunctive relief class members.[7]

---

[6] In their opposition to Plaintiffs' initial motion for class certification, Defendants did not assert that Plaintiffs had failed to establish the elements of FRCP 23(b)(2). *See* Dkt. 121 at p. 9, lines 7-9.

[7] Likewise, whether the LASD has a policy or practice of not providing lawful dispersal orders is another issue common to the injunctive class. Additionally, whether the LASD has a policy and practice of engaging in retaliatory arrests of protesters is also an issue common to the injunctive class.

Answering this question, which involves evidence common to the putative class, will resolve an issue "central to the validity" of the class injunctive claims "in one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).[8] The fact that there may be individual issues does not defeat certification in a Rule 23(b)(2) class. *See UFW v. Noem*, 2025 U.S. Dist. LEXIS 81317 at p. 136 (E.D. Cal. April 29, 2025) ("Even if the class members were not all affected by Border Patrol practices in the same manner—because some were not taken into custody following the detentive stops, while others were arrested and then released—Plaintiffs identify Border Patrol's practices that they contend violated their constitutional rights. This is sufficient to satisfy Rule 23(b)(2), because relief from these practices is requested by all class members.") (certifying FRCP 23(b)(2) class based on stops and arrests by U.S. Border Patrol agents); *Arevalo Millan v. Trump,* 785 F. Supp. 3d 644, 669 (C.D. Cal. 2025) ("commonality does not require the merits of every class member's claim to be identical nor for those claims be resolved with a single class-wide outcome.") (certifying injunctive relief class under FRCP 23(b)(2)); *M.A.P.S. v. Garite*, 349 F.R.D. 631, 637 (W.D. Tex. 2025) ("The presence of individual fact issues does not defeat commonality.") (certifying FRCP 23(b)(2) class in habeas case despite presence of many individualized issues); *Kingdom v. Trump,* 2025 U.S. Dist. LEXIS 105237 at p. 45-46 (D.D.C. June 3, 2025) (certifying FRCP 23(b)(2) class of federal transgender inmates despite presence of individual issues).

In *Parsons v. Ryan,* 754 F.3d 657, 662 (9th Cir. 2014), the Ninth Circuit affirmed an order certifying a Rule 23(b)(2) class of thousands of inmates incarcerated by the Arizona Department of Corrections ("ADC") based on common evidence that the ADC promulgated unconstitutional policies and practices

---

[8] Not every question must be common to the class; rather, "a single significant question of law or fact" satisfies the commonality requirement. *See Abdullah v U.S. Security Associates*, 731 F.3d 952, 957 (9th Cir. 2013).

affecting the health care and conditions of confinement of the class members. Notably, the Court rejected the defendants' argument that "a systemic constitutional violation of the sort alleged here is a collection of individual constitutional violations, each of which hinges on the particular facts and circumstances of each case." *Id.* at 675 (internal quotations omitted). The Court noted that the plaintiffs do "not allege that the care provided on any particular occasion to any particular inmate (or group of inmates) was insufficient . . . but rather that ADC policies and practices of statewide and systemic application expose all inmates in ADC custody to a substantial risk of serious harm." *Id.* at 676. As the Court noted: "What all members of the putative class and subclass have in common is their alleged exposure, as a result of specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent." *Id.* at 678.

As in *Parsons*, the putative injunctive class members in this case are all subject to the LASD's common customs practices in responding to mass protests. The common evidence in this case is based on the LASD's failure to train and discipline its deputies about the proper use of force during protests in the face of compelling evidence that the LASD continues to violate the rights of persons attending protests. The common evidence, which applies class-wide, reveals that the LASD and has failed to discipline, investigate or retrain a single deputy and continues to assert that all of its actions during the protests have been proper and within policy. *See* Dkt. 100-1 at pp. 4, 85, 92, 102, 108, 167-68, 172-75, 180-81 and 184 and Dkt. 160-2 at pp. 34, 45, 87-88, 115-119, 123-24. The LASD's practice and custom of condoning the use projectiles and chemical agents against non-violent persons attending protests has a chilling effect on the rights of the putative

17

injunctive relief class members.   Accordingly, Plaintiffs have presented common issues on behalf of the injunctive class.[9]

### 2.     Plaintiffs Have Shown Typicality and Adequacy.

Contrary to Defendants' assertions, Plaintiffs have shown typicality. Plaintiffs have attended protests where the LASD used force against non-violent protesters and have indicated that the LASD's actions have had a chilling effect on their First Amendment activities.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").  Accordingly, typicality has been established for the injunctive relief class.[10]

Defendants' half-hearted challenge to adequacy should be rejected.[11] There are no conflicts between Plaintiffs and the proposed class and it is clear that Plaintiffs and their counsel have and will prosecute this action vigorously.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?').  *See* Declarations of proposed class representatives at Dkt. 100-5.[12]   Therefore, adequacy has been satisfied.

---

[9] In the *BLM* case, the Court explicitly noted that, unlike this case, the injunctive claims in that case were not based on *Monell* policies. 113 F.4th at 1265.

[10] Defendants note that the LASD in theory has statewide jurisdiction. (Op. at 20:6-9).  If necessary the scope of the class can be limited to Los Angeles County.

[11] Contrary to Defendants' statement, the class definition does not include "non-peaceful protesters" as the injunctive class is defined as person present at protests "in the exercise of their rights of free speech, assembly and petition in general."

[12]Young Decl. ¶¶ 13-28; Rahman Decl. ¶¶ 14-29; Jiang Decl. ¶¶ 8-23; Meyer Decl. ¶¶ 12-27; Singh Decl. ¶¶ 20-35; Rogers Decl. ¶¶ 16-31; Ramirez Decl. ¶¶ 20-35;

### 3. Class-wide Injunctive Relief Is Proper.

Contrary to Defendants' assertions, Plaintiffs are not seeing separate injunctive relief for different plaintiffs or class members. (Op. at pp. 20-21). Plaintiffs are seeking a class-wide permanent injunction, similar to the PI, to restrain the LASD's conduct towards all non-violent persons present at protests. Defendants incorrectly claim that Plaintiffs have not pointed to any specific LASD policies that apply to the putative class and there is no evidence that individual decisions by deputies were pursuant to LASD policies. (Op. at p. 21).

Defendants have fundamentally misconstrued Plaintiffs' evidence which shows that the LASD's failure to train and discipline its deputies was the moving force behind the LASD's violation of their rights. *See* Dkt. 54 at p. 20 ("On the evidence in the record, the Court concludes that five uses of excessive force in one month, for which no officers were disciplined, presents serious questions going to the merits of the *Monell* claim that the LASD has an unofficial custom or policy of indiscriminately using less-lethal projectiles and chemical agents on crowds of peaceful protesters, legal observers, and journalists.").

Here, Plaintiffs have presented compelling evidence that the LASD has found all of its uses of force against non-violent protesters to be within policy and has failed to discipline a single deputy. The injunctive relief being sought, which seeks to restrain the LASD's use of chemical agents and projectiles against non-violent protesters is aimed at the *entire* LASD and is designed to protect the rights of *all* non-violent persons attending protests. *See B.K. v Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (cited by Defendants at p. 21) ("The plaintiffs have not brought a concatenation of individual claims that must be redressed through individual

---

O'Neil Decl. ¶¶ 23-38; Barbadillo Decl. ¶¶ 39-51; Mischo Decl. ¶¶ 10-25;; Del Rosario-Sabet Decl. ¶¶ 16-31; Bryant Decl. ¶¶ 17-32; Tharpe Decl. ¶¶ 14-29; Bean Decl. ¶¶ 11-26; Militante Decl. ¶¶ 14-29; Berg Decl. ¶¶ 19-34; Monroe Decl. ¶¶ 12-27;

injunctions; they have brought unified claims that a specified set of centralized [DCS] policies and practices of uniform and statewide application have placed them at a substantial risk of harm. . . A single, indivisible injunction ordering state officials to abate those policies and practices would provide relief to each member of the class thus satisfying Rule 23(b)(2).") (internal citations and quotations omitted).

This Court has previously recognized that Plaintiffs have presented compelling evidence that the LASD has a widespread practice of using excessive force against non-violent persons attending protests. *See* Dkt. 54 and 167. The LASD's uniform response to protests is the basis for the injunctive relief the proposed class seeks.[13] As noted before, the main injunctive relief being sought is, as set forth in the PI, to curtail the LASD's use of force against non-violent persons at protests and to protect the rights of persons attending such protests by establishing limits on the use of force and the manner in which unlawful assemblies are declared

---

[13] Defendants rely on two District Court opinions, *Anti-Police Terror Project v. City of Oakland*, No. 20-cv-03866-JCS, 2021 U.S. Dist. LEXIS 200363, (N.D. Cal. Oct. 18, 2021) and *Don't Shoot Portland v. City of Portland* (D. Or. July 12, 2022), which are not binding on this Court. Notably, the Court in the *Anti-Police Terror Project* case denied the motion for class certification *without* prejudice due to concerns about the class being overly broad. *Id.* at p. 24. In fact, the case subsequently resulted in a settlement of the Rule 23(b)(2) class in which the Oakland Police Department agreed a permanent injunction implementing changes to its policies in response to protests. *See Anti-Police Terror Project v. City of Oakland,* 2022 U.S. Dist. LEXIS 227954 at pp. 6-7 (N.D. Cal. December 19, 2022). In *Don't Shoot Portland*, the proposed class included "individuals who were engaged in active aggression" as well as persons injured by other law enforcement agencies. *Id.* at p. 34. In contrast, the proposed injunctive class in this case is limited to persons engaged in "in the exercise of their rights of free speech, assembly and petition" and is directed only towards the LASD and no other agencies. If the Court finds any ambiguity in the proposed class definition, it is Plaintiffs' intention that the proposed class only includes persons engaging in lawful conduct who were or will be impacted by the actions of the LASD.

20

and enforced by the LASD.  Accordingly, the injunctive relief sought in this case applies to all potential class members and is therefore proper.[14]

## V.       CONCLUSION

For the reasons stated above, Plaintiffs' renewed motion for class certification should be granted.

DATED: November 7, 2025         Respectfully submitted,

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

By:_____
        Michael D. Seplow

*Attorneys for Plaintiffs.*

---

[14] As noted above, the request to purge arrest records is a remedy that is being sought only on behalf of the Arrest Class in the event that there is a finding that the mass arrest was improper and retaliatory.  It is not the basis for Plaintiffs' main injunctive relief claim which seeks to protect the rights of peaceful persons to attend protests.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs hereby certifies that this brief contains 6,968 words, which complies with the word limit of Local Rule 11-6.1.


DATED: November 7, 2025          Respectfully submitted,

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

By: _____
Michael D. Seplow

*Attorneys for Plaintiffs.*